**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DAVID CHUA and JOEL DEUTSCH, individually
and on behalf of all others similarly situated,

                    Plaintiff,

          v.

CIVIC TECHNOLOGIES, INC., VINNY
LINGHAM, and JONATHAN SMITH,

                    Defendants.

Case No. 1:20-cv-02811-AT

Honorable Analisa Torres

**JURY DEMANDED**

## AMENDED CLASS ACTION COMPLAINT

# <u>TABLE OF CONTENTS</u>

<u>Pages</u>

I.    INTRODUCTION ................................................................... 1

II.   PARTIES ............................................................................ 5

    A.    Plaintiffs ................................................................ 5

    B.    Defendants ............................................................. 6

III.  JURISDICTION AND VENUE ............................................... 6

IV.  FACTUAL ALLEGATIONS .................................................. 7

    A.    The First Cryptocurrency: Bitcoin ............................... 7

    B.    Ethereum ............................................................... 8

    C.    ERC-20 Tokens..................................................... 10

    D.    The Advent Of The "ICO"....................................... 10

    E.    Civic Solicited And Sold The CVC Token Through Both An ICO And Through Subsequent Sales On Cryptocurrency Exchanges................................... 13

    F.    Investors Would Not Reasonably Have Understood Prior To April 3, 2019, At The Earliest, That CVC Was A Security ................................ 15

    G.    The CVC Tokens Are Securities................................. 17

        a.    CVC Token Purchasers Invested Money ...................................19

        b.    CVC Token Investors Participated In A Common Enterprise.................20

        c.    CVC Token Investors Purchased The Tokens With A Reasonable Expectation Of Profit From Owning Them ...............................21

        d.    Investors Expected Profits From The CVC Tokens To Be Derived From The Managerial Efforts Of Issuers ...................................24

    H.    The SEC Has Concluded That Tokens Such As CVC Are Securities................. 31

    I.    The Class Has Suffered Significant Damages From Defendants' Actions........... 32

V.   CLASS ALLEGATIONS ...................................................... 33

FIRST CAUSE OF ACTION (SECURITIES ACT – PRIMARY LIABILITY)......................... 35

SECOND CAUSE OF ACTION (SECURITIES ACT – ADDITIONAL LIABILITY) ............. 36

THIRD CAUSE OF ACTION (ALABAMA STATE LAW – PRIMARY LIABILITY) ........... 37

FOURTH CAUSE OF ACTION (ALABAMA STATE LAW – ADDITIONAL LIABILITY) ................................................................ 39

FIFTH CAUSE OF ACTION (ALASKA STATE LAW – PRIMARY LIABILITY)................. 41

SIXTH CAUSE OF ACTION (ALASKA STATE LAW – ADDITIONAL LIABILITY) ......... 42

SEVENTH CAUSE OF ACTION (ARKANSAS STATE LAW – PRIMARY
LIABILITY) ........................................................................................ 44

EIGHTH CAUSE OF ACTION (ARKANSAS STATE LAW – ADDITIONAL
LIABILITY) ........................................................................................ 46

NINTH CAUSE OF ACTION (CALIFORNIA STATE LAW – PRIMARY LIABILITY) ....... 48

TENTH CAUSE OF ACTION (CALIFORNIA STATE LAW – ADDITIONAL
LIABILITY) ........................................................................................ 49

ELEVENTH CAUSE OF ACTION (COLORADO STATE LAW – PRIMARY
LIABILITY) ........................................................................................ 51

TWELFTH CAUSE OF ACTION (COLORADO STATE LAW – ADDITIONAL
LIABILITY) ........................................................................................ 53

THIRTEENTH CAUSE OF ACTION (CONNECTICUT STATE LAW – PRIMARY
LIABILITY) ........................................................................................ 54

FOURTEENTH CAUSE OF ACTION (CONNECTICUT STATE LAW –
ADDITIONAL LIABILITY) .................................................................. 56

FIFTEENTH CAUSE OF ACTION (FLORIDA STATE LAW – PRIMARY
LIABILITY) ........................................................................................ 58

SIXTEENTH CAUSE OF ACTION (FLORIDA STATE LAW – ADDITIONAL
LIABILITY) ........................................................................................ 59

SEVENTEENTH CAUSE OF ACTION (GEORGIA STATE LAW – PRIMARY
LIABILITY) ........................................................................................ 61

EIGHTEENTH CAUSE OF ACTION (GEORGIA STATE LAW – ADDITIONAL
LIABILITY) ........................................................................................ 63

NINETEENTH CAUSE OF ACTION (ILLINOIS STATE LAW – PRIMARY
LIABILITY) ........................................................................................ 65

TWENTIETH CAUSE OF ACTION (ILLINOIS STATE LAW – ADDITIONAL
LIABILITY) ........................................................................................ 68

TWENTY-FIRST CAUSE OF ACTION (INDIANA STATE LAW – PRIMARY
LIABILITY) ........................................................................................ 70

TWENTY-SECOND CAUSE OF ACTION (INDIANA STATE LAW – ADDITIONAL
LIABILITY) ........................................................................................ 72

TWENTY-THIRD CAUSE OF ACTION (KANSAS STATE LAW – PRIMARY
LIABILITY) ........................................................................................ 74

TWENTY-FOURTH CAUSE OF ACTION (KANSAS STATE LAW – ADDITIONAL
LIABILITY) ........................................................................................ 76

TWENTY-FIFTH CAUSE OF ACTION (KENTUCKY STATE LAW – PRIMARY
LIABILITY) ........................................................................................ 78

TWENTY-SIXTH CAUSE OF ACTION (KENTUCKY STATE LAW – SECONDARY
LIABILITY) ........................................................................................ 80

TWENTY-SEVENTH CAUSE OF ACTION (LOUISIANA STATE LAW – PRIMARY LIABILITY) ............................................................................................ 82

TWENTY-EIGHTH CAUSE OF ACTION (LOUISIANA STATE LAW – ADDITIONAL LIABILITY) ............................................................................... 84

TWENTY-NINTH CAUSE OF ACTION (MAINE STATE LAW – PRIMARY LIABILITY) ............................................................................................ 86

THIRTIETH CAUSE OF ACTION (MAINE STATE LAW – ADDITIONAL LIABILITY) ............................................................................................ 88

THIRTY-FIRST CAUSE OF ACTION (MASSACHUSETTS STATE LAW – PRIMARY LIABILITY) ........................................................................... 90

THIRTY-SECOND CAUSE OF ACTION (MASSACHUSETTS STATE LAW – ADDITIONAL LIABILITY) ............................................................... 92

THIRTY-THIRD CAUSE OF ACTION (MONTANA STATE LAW – PRIMARY LIABILITY) ............................................................................................ 94

THIRTY-FOURTH CAUSE OF ACTION (MONTANA STATE LAW – ADDITIONAL LIABILITY) ............................................................................... 95

THIRTY-FIFTH CAUSE OF ACTION (NEBRASKA STATE LAW – PRIMARY LIABILITY) ............................................................................................ 97

THIRTY-SIXTH CAUSE OF ACTION (NEBRASKA STATE LAW – ADDITIONAL LIABILITY) ............................................................................... 99

THIRTY-SEVENTH CAUSE OF ACTION (NEVADA STATE LAW – PRIMARY LIABILITY) ............................................................................................ 101

THIRTY-EIGHTH CAUSE OF ACTION (NEVADA STATE LAW – ADDITIONAL LIABILITY) ............................................................................... 102

THIRTY-NINTH CAUSE OF ACTION (NEW HAMPSHIRE STATE LAW – PRIMARY LIABILITY) ........................................................................... 103

FORTIETH CAUSE OF ACTION (NEW HAMPSHIRE STATE LAW – ADDITIONAL LIABILITY) ............................................................................... 105

FORTY-FIRST CAUSE OF ACTION (NEW JERSEY STATE LAW – PRIMARY LIABILITY) ............................................................................................ 108

FORTY-SECOND CAUSE OF ACTION (NEW JERSEY STATE LAW – ADDITIONAL LIABILITY) ............................................................................... 110

FORTY-THIRD CAUSE OF ACTION (NEW MEXICO STATE LAW – PRIMARY LIABILITY) ............................................................................................ 112

FORTY-FOURTH CAUSE OF ACTION (NEW MEXICO STATE LAW – ADDITIONAL LIABILITY) ............................................................................... 113

FORTY-FIFTH CAUSE OF ACTION (NORTH CAROLINA STATE LAW – PRIMARY LIABILITY) ........................................................................... 115

FORTY-SIXTH CAUSE OF ACTION (NORTH CAROLINA STATE LAW – ADDITIONAL LIABILITY) ............................................................... 117

FORTY-SEVENTH CAUSE OF ACTION (NORTH DAKOTA STATE LAW – PRIMARY LIABILITY) ................................................................................. 119

FORTY-EIGHTH CAUSE OF ACTION (NORTH DAKOTA STATE LAW – ADDITIONAL LIABILITY) ........................................................................ 121

FORTY-NINTH CAUSE OF ACTION (OHIO STATE LAW – PRIMARY LIABILITY) ..... 123

FIFTIETH CAUSE OF ACTION (OHIO STATE LAW – ADDITIONAL LIABILITY) ........ 125

FIFTY-FIRST CAUSE OF ACTION (OREGON STATE LAW – PRIMARY LIABILITY) ................................................................................................... 126

FIFTY-SECOND CAUSE OF ACTION (OREGON STATE LAW – ADDITIONAL LIABILITY) ................................................................................................... 128

FIFTY-THIRD CAUSE OF ACTION (PUERTO RICO LAW – PRIMARY LIABILITY) ..... 130

FIFTY-FOURTH CAUSE OF ACTION (PUERTO RICO LAW – ADDITIONAL LIABILITY) ................................................................................................... 132

FIFTY-FIFTH CAUSE OF ACTION (PENNSYLVANIA STATE LAW – PRIMARY LIABILITY) ................................................................................................... 134

FIFTY-SIXTH CAUSE OF ACTION (PENNSYLVANIA STATE LAW – ADDITIONAL LIABILITY) ............................................................................ 136

FIFTY-SEVENTH CAUSE OF ACTION (RHODE ISLAND STATE LAW – PRIMARY LIABILITY) ................................................................................... 137

FIFTY-EIGHTH CAUSE OF ACTION (RHODE ISLAND STATE LAW – ADDITIONAL LIABILITY) ............................................................................ 140

FIFTY-NINTH CAUSE OF ACTION (SOUTH CAROLINA STATE LAW – PRIMARY LIABILITY) ................................................................................... 142

SIXTIETH CAUSE OF ACTION (SOUTH CAROLINA STATE LAW – ADDITIONAL LIABILITY) ............................................................................ 144

SIXTY-FIRST CAUSE OF ACTION (TEXAS STATE LAW – PRIMARY LIABILITY) ..... 146

SIXTY-SECOND CAUSE OF ACTION (TEXAS STATE LAW – ADDITIONAL LIABILITY) ................................................................................................... 148

SIXTY-THIRD CAUSE OF ACTION (TENNESSEE STATE LAW – PRIMARY LIABILITY) ................................................................................................... 150

SIXTY-FOURTH CAUSE OF ACTION (TENNESSEE STATE LAW – ADDITIONAL LIABILITY) ................................................................................................... 151

SIXTY-FIFTH CAUSE OF ACTION (UTAH STATE LAW – PRIMARY LIABILITY) ....... 153

SIXTY-SIXTH CAUSE OF ACTION (UTAH STATE LAW – ADDITIONAL LIABILITY) ................................................................................................... 154

SIXTY-SEVENTH CAUSE OF ACTION (VIRGINIA STATE LAW – PRIMARY LIABILITY) ................................................................................................... 156

SIXTY-EIGHTH CAUSE OF ACTION (VIRGINIA STATE LAW – ADDITIONAL LIABILITY) ................................................................................................... 158

SIXTY-NINTH CAUSE OF ACTION (WASHINGTON STATE LAW – PRIMARY
    LIABILITY) ................................................................................................ 160

SEVENTIETH CAUSE OF ACTION (WASHINGTON STATE LAW – ADDITIONAL
    LIABILITY) ................................................................................................ 161

SEVENTY-FIRST CAUSE OF ACTION (WEST VIRGINIA STATE LAW –
    PRIMARY LIABILITY) ............................................................................... 163

SEVENTY-SECOND CAUSE OF ACTION (WEST VIRGINIA STATE LAW –
    ADDITIONAL LIABILITY) .......................................................................... 165

PRAYER FOR RELIEF ..................................................................................... 167

JURY TRIAL ..................................................................................................... 167

Plaintiffs David Chua and Joel Deutsch, individually and on behalf of all others similarly situated, bring this action against Defendants Civic Technologies, Inc. ("Civic"), Vinny Lingham, and Jonathan Smith. Plaintiffs' allegations are based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of whitepapers of the digital assets at issue, press releases, media reports, and other publicly disclosed reports and information about Defendants. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein, after a reasonable opportunity for discovery. Plaintiffs hereby allege as follows:

I. **INTRODUCTION**

1.      Within the Class Period, which is from June 20, 2017 through the present, Civic, as well as Vinny Lingham and Jonathan Smith (the "Individual Defendants"), promoted, offered, and sold Civic's securities, called CVC tokens, throughout the United States, in violation of federal and state securities laws. Plaintiffs individually and on behalf of investors who purchased CVC in the United States (the "Class") bring claims to recover the consideration paid for the CVC tokens, together with interest thereon, as well as attorneys' fees and costs.

2.      A digital token is a type of digital asset that exists on what is called a "blockchain," which is essentially a decentralized digital ledger that records transactions. Various digital assets can reside on blockchains, including cryptocurrencies, such as Bitcoin and Ethereum (both discussed in greater detail below), as well as so-called "smart contracts" that operate under a set of predetermined conditions agreed to by users. With smart contracts, the terms of the contract are automatically carried out by the software underlying the digital tokens (which, as relevant here, are referred to as "ERC-20 tokens" and exist on the Ethereum blockchain) when the agreed conditions are met.

3.      Certain of these digital tokens are classified as "utility tokens" and are associated with particular projects.  Their primary purpose is to allow the holder to use or access the associated project.   For example, one private-jet company issues utility tokens to participants in its membership program, who can then use them to charter flights on the company's planes.  A utility token presumes a functional network on which the token can be used.

4.      Other tokens are more speculative, and are referred to as "security tokens," and like a traditional security essentially represent one's investment in a project.  Although they take value from the startup behind the project, they do not give the holder actual ownership in that startup.  Rather, investors purchase these tokens with the idea that their value will increase in the future as the network in which the token can be used is expanded based upon the managerial efforts of the issuer and those developing the project.  Because such "security tokens" are properly classified as securities under federal and state law, the issuers of these tokens, including Civic, were required to file registration statements with the U.S. Securities and Exchange Commission ("SEC").  Civic, however, and other issuers failed to do so.  By selling these unregistered tokens to investors, Civic reaped millions of dollars in profits.

5.      The scheme worked as follows:  First, Civic issued a "whitepaper" to investors that described in highly technical terms the supposed utility to which CVC would be placed.  The whitepaper, however, omitted the disclosures that securities laws and the SEC have long deemed essential to investor protections in initial public offerings, including use of "plain English" to describe the offering; a required list of key risk factors; a description of key information and incentives concerning management; warnings about relying on forward-looking statements; an explanation of how the proceeds from the offering would be used; and a standardized format that

investors could readily follow.  Without these critical disclosures, investors in CVC tokens were thus left to fend for themselves—precisely the opposite of what the securities laws require.

6.     Civic then sold the CVC tokens to investors through an "initial coin offering" (or "ICO").  Civic kept 33 percent of the CVC tokens for itself and solicited online exchanges of digital assets (known as "cryptocurrency exchanges") to list CVC tokens on their platforms and encourage purchases by a wide universe of investors.  Although CVC was a security, Civic did not register it as a security with the SEC and did not qualify for an exemption from registration requirements.

7.     Civic did not disclose at issuance that CVC was a security.  In fact, the Civic Token Purchase Agreement (the "Purchase Agreement") stated that CVC tokens "are not intended to be a digital currency, security, commodity, or any kind of financial instrument."  Despite these assertions, in a section entitled "Risks Associated with Uncertain Regulations and Enforcement Actions," the Purchase Agreement contemplated *future* regulations that could make transactions of the CVC tokens illegal:

*8.  **Risks Associated with Uncertain Regulations and Enforcement Actions***

The regulatory status of the Tokens and distributed ledger technology is unclear or unsettled in many jurisdictions.  It is difficult to predict how or whether regulatory agencies may apply existing regulation with respect to such technology and its applications, including the Ecosystem and the Tokens.  It is likewise difficult to predict how or whether legislatures or regulatory agencies may implement changes to law and regulation affecting distributed ledger technology and its applications, including the Ecosystem and the Tokens.  Regulatory actions could negatively impact the Ecosystem and the Tokens in various ways, including, for purposes of illustration only, through a determination that the purchase, sale and delivery of the Tokens constitutes unlawful activity or that the Tokens are a regulated instrument that require registration or licensing of those instruments or some or all of the parties involved in the purchase, sale and delivery thereof.  The Company may cease operations in a jurisdiction in the event that regulatory actions, or changes to law or regulation, make it illegal to operate in such jurisdiction, or commercially undesirable to obtain the necessary regulatory approval(s) to operate in such jurisdiction.

Investors thus reasonably understood that CVC was not subject, at the time of issuance, to U.S. securities laws, since Civic was offering these tokens in the United States at the time of its ICO. In addition, Civic further confirmed to investors at issuance that CVC was not a security by failing to file a registration statement for it with the SEC.

8.      Civic promoted, offered, and sold CVC through generalized solicitations using statements posted on the Internet and distributed throughout the United States and the rest of the world, such that Civic offered and sold the securities to Plaintiffs and the general public in the United States.  Although Civic described the CVC tokens as something other than securities, they were securities.  This was not clear to a reasonable investor at purchase, however, and would not have been reasonably apparent until, at the earliest, April 3, 2019, when the SEC released a detailed "Framework" to analyze digital assets, indicating that CVC and other similar digital tokens are "investment contracts" and therefore securities under Section 2 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C § 77b(a)(1).[1]  Prior to that time, based on statements of Civic and the SEC, a reasonable investor would not have concluded that such tokens were securities under federal and state law.  But CVC *was* a security under the applicable SEC Framework.  Civic thus engaged in transactions that consisted of the solicitation, offer, and sale of securities without registering them as federal and state laws require for the protection of investors.

9.      On September 30, 2019, nearly six months after releasing its Framework, the SEC found that another major issuer of digital tokens, Block.one, which had issued a token called EOS between June 2017 and June 2018, had likewise violated the Securities Act by selling unregistered securities to the public.  The EOS token was functionally identical to CVC—both tokens were not

---

[1] *Framework for "Investment Contract" Analysis of Digital Assets*, SEC (April 3, 2019), https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-assets#_ednref1.

described as securities to investors, but are securities under the SEC's Framework. As a result of an SEC enforcement action, Block.one was required to pay a $24 million fine.[2] The SEC's determination that EOS is a security applies with equal force to CVC.

10.     Plaintiffs and the Class are entitled to recover the consideration they paid for the CVC tokens with interest thereon at the legal rate, or the equivalent in monetary damages plus interest at the legal rate from the date of purchase.

11.     In addition, numerous Class members resided, and were present at the time they traded in CVC tokens, in States that provide their own "Blue Sky" protections for investors.[3] Under these laws, investors in these States who purchased unregistered CVC securities are entitled to rescission, and generally interest thereon, attorneys' fees, and costs.

12.     Accordingly, Plaintiffs individually and on behalf the Class bring claims to recover the consideration paid for the CVC tokens, together with interest thereon, as well as attorneys' fees and costs.

## II.   PARTIES

### A. Plaintiffs

13.     Plaintiff David Chua presently resides in Singapore. During the Class Period, Chua and members of the Class purchased CVC, an unregistered security, from Defendant Civic in California, where Civic offered CVC tokens and operated the CVC ICO.

---

[2] Press Release, *SEC Orders Blockchain Company to Pay $24 Million Penalty for Unregistered ICO* (Sept. 30, 2019), https://www.sec.gov/news/press-release/2019-202; Block.one, Exchange Act Release No. 10714, 2019 WL 4793292 (Sept. 30, 2019).

[3] These "Blue Sky" statutes are so named because they are designed to protect investors from "speculative schemes which have no more basis than so many feet of blue sky." *Hall v. Geiger-Jones Co.*, 242 U.S. 539, 550 (1917) (internal citations omitted). Blue Sky statutes typically define "securities" to include "investment contracts," and the term "investment contracts" has been interpreted by State courts commensurate with the standard set forth by the Supreme Court in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946).

14.     Plaintiff Joel Deutsch presently resides in Miami, Florida.  During the Class Period, Deutsch and members of the Class purchased CVC, an unregistered security, in Florida.

**B.  Defendants**

15.     Defendant Civic Technologies, Inc. is an entity formed under the laws of Delaware with offices in California and Cape Town, South Africa.  Civic is a blockchain-focused software-development company that is developing and promoting the Civic blockchain protocol.

16.     Defendant Vinny Lingham is an internet entrepreneur and the co-founder and CEO of Civic.  On information and belief, he resides in San Francisco, California.

17.     Defendant Jonathan Smith is a banking and technological advisor and the co-founder and CTO of Civic.  On information and belief, he resides in San Francisco, California.

## III.   <u>JURISDICTION AND VENUE</u>

18.     Jurisdiction of this Court is founded upon 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds the value of $5,000,000, exclusive of interests and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant.

19.     Jurisdiction of this Court is further founded upon 28 U.S.C. § 1331 because the Complaint asserts claims under Sections 5, 12(a)(1), and 15 of the Securities Act, 15 U.S.C. §§ 77e, 77*l*(a)(1), 77o.  This Court further has jurisdiction over the Securities Act claims pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v.

20.     This Court has jurisdiction over the violations of Blue Sky statutes pursuant to this Court's supplemental jurisdiction under 28 U.S.C. §1367(a).

21.     This Court has personal jurisdiction over Defendants as a result of acts of Defendants occurring in or aimed at the State of New York in connection with Defendants' offer or sale of unregistered securities.

22.     Venue is proper pursuant to 15 U.S.C. § 77v(a) in that this is a district wherein one or more defendants is found or transacts business and where the offer or sale of CVC tokens took place.  In 2017 and 2018, CVC representatives, including Vinny Lingham and Jonathan Smith, attended and spoke at conferences in which they touted CVC, including in this district.  Lingham and Smith announced the launch of the CVC token ICO on May 23, 2017 at Consensus, one of the biggest crypto-asset conferences of the year, in New York City.

## IV.   FACTUAL ALLEGATIONS

### A.  The First Cryptocurrency: Bitcoin

23.     A cryptocurrency is a digital asset designed to work as a medium of exchange or a store of value or both.  Cryptocurrencies leverage a variety of cryptographic principles to secure transactions, control the creation of additional units, and verify the transfer of the underlying digital assets.

24.     Bitcoin was the world's first decentralized cryptocurrency.  It is also the largest and most popular cryptocurrency, with a market capitalization of approximately $170 billion.  Bitcoin spawned a market of other cryptocurrencies that, together with Bitcoin, have a current market capitalization of approximately $264 billion.  (The term "bitcoin" can refer to both a computer protocol and a unit of exchange. Accepted practice is to use the term "Bitcoin" to label the protocol and software, and the term "bitcoin" to label the units of exchange.)

25.     At its core, Bitcoin is a ledger that tracks the ownership and transfer of every bitcoin in existence.  This ledger is called the blockchain.

26.     Blockchains act as the central technical commonality across most cryptocurrencies.  While each blockchain may be subject to different technical rules and permissions based on the preferences of its creators, they are typically designed to achieve the similar goal of decentralization.

27.     Accordingly, blockchains are generally designed as a framework of incentives that encourages some people to do the work of validating transactions while allowing others to take advantage of the network.  In order to ensure successful validation, those completing the validation are also required to solve a "Proof of Work" problem by expending computational resources, which has the effect of making the blockchain more accurate and secure.  For Bitcoin, those who validate the blockchain transactions and solve the "Proof of Work" program are rewarded with newly minted bitcoin.  This process is colloquially referred to as "mining."

28.     Mining is one method by which an individual can acquire cryptocurrencies like bitcoin.  A second and more common manner is to obtain cryptocurrencies from someone else.  This is often accomplished by acquiring it through an online "cryptocurrency exchange." Online cryptocurrency exchanges are one place to purchase Bitcoin and other cryptocurrencies. These exchanges are similar to traditional exchanges in that they provide a convenient marketplace to match buyers and sellers of virtual currencies.

29.     In April 2013, there were only seven cryptocurrencies listed on coinmarketcap.com, a popular website that tracks the cryptocurrency markets.  As of this filing, the site monitors more than 5,000 cryptocurrencies.

30.     For a time, Bitcoin was the only cryptocurrency available on exchanges.  As cryptocurrencies grew in popularity, exchanges began listing other cryptocurrencies as well, and trading volumes expanded.  In early 2013, daily Bitcoin trading volumes hovered between $1 million and $25 million.  By the end of 2017, daily Bitcoin trading volumes ranged between $200 million and $3.8 billion.

**B.  Ethereum**

31.     Ethereum is the second-most popular cryptocurrency, with a market capitalization of approximately $26 billion.  The Ethereum blockchain functions similarly to the Bitcoin

blockchain insofar as its miners act as the validators of the network.  Miners of the Ethereum blockchain are paid for their services in the form of newly minted ether.  (The term "Ethereum" refers to the open software platform built on top of the Ethereum blockchain, while the term "ether" is the unit of account used to exchange value within the Ethereum "ecosystem," *i.e.*, the overall network of individuals using Ethereum or participating in the development of its network.)

32.     Unlike Bitcoin's blockchain, Ethereum was designed to enable "smart contract" functionality.  A smart contract is a program that verifies and enforces the negotiation or performance of a contract.  Smart contracts can be self-executing and self-enforcing, which theoretically reduces the transaction costs associated with traditional contracting.

33.     As an example of how a smart contract works, consider a situation where two people want to execute a hedging contract.  They each put up $1,000 worth of ether.  They agree that, after a month, one of them will receive back $1,000 worth of ether at the dollar exchange rate at that time, while the other receives the rest of the ether.  The rest of the ether may or may not be worth more than it was at the beginning of the month.

34.     A smart contract enables these two people to submit the ether to a secure destination and automatically distribute the ether at the end of the month without any third-party action.  The smart contract self-executes with instructions written in its code which get executed when the specified conditions are met.

35.     In order to enable widespread adoption and standardized protocols for smart contracts, the Ethereum community has created certain out-of-the box smart contracts called Ethereum Request for Comments ("ERCs").

36.     An ERC is an application standard for a smart contract.  Anyone can create an ERC and then seek support for that standard.  Once an ERC is accepted by the Ethereum community, it

benefits Ethereum users because it provides for uniform transactions, reduced risk, and efficient processes.  The most widespread use of ERCs is to allow individuals to easily launch and create new digital tokens.

### C.  ERC-20 Tokens

37.     ERC-20 is a standardized application standard that the creator of Ethereum, Vitalik Buterin, first proposed in 2015.  ERC-20 is a standard that allows for the creation of smart-contract tokens on the Ethereum blockchain, known as "ERC-20 tokens."

38.     ERC-20 tokens are built on the Ethereum blockchain, and therefore they must transact on it.  Accordingly, ERC-20 tokens are functionally different than cryptocurrencies like Bitcoin and Ethereum because they do not operate on an independent blockchain.

39.     ERC-20 tokens all function similarly by design—that is, they are compliant with the ERC-20 application standard.  Some properties related to ERC-20 tokens are customizable, such as the total supply of tokens, the token's ticker symbol, and the token's name.  All ERC-20 tokens transactions, however, occur over the Ethereum blockchain; none of them operates over its own blockchain.

40.     ERC-20 tokens are simple and easy to deploy.  Anyone with a basic understanding of Ethereum can use the ERC-20 protocol to create her own ERC-20 tokens, which she can then distribute and make available for purchase.  Even people without any technical expertise can have their own ERC-20 token created for them, which can then be marketed to investors.

### D.  The Advent Of The "ICO"

41.     Between 2014 and 2016, Bitcoin's price fluctuated between $200 and $800.  During this same time frame, ether's price fluctuated between roughly $1 and $10.

42.     By the end of 2016, interest in cryptocurrencies began to accelerate, with prices growing at a rate historically unprecedented for any asset class.  Over the course of 2017 alone,

bitcoin's price increased from approximately $1,000 to approximately $20,000. Ethereum's growth was even more startling. On January 1, 2017, Ethereum was trading at approximately $8 per ether. Approximately one year later, it was trading at over $1,400 per ether—a return of approximately 17,000 percent over that period.

43.     Seeking to capitalize on the growing enthusiasm for cryptocurrencies, many entrepreneurs sought to raise funds through initial coin offerings, or ICOs, including ICOs for newly created ERC-20 tokens, such as the CVC token. Many of these issuers improperly chose not to register their securities offerings with the SEC in order to save money and not "open their books" to the SEC, even though investors thereby were denied access to critical information they would have received from an SEC-registered offering. As a result, investors, including investors in CVC, were denied access to important information before making their investment decision.

44.     In the case of CVC, the initial offering occurred over a two-day period, with 333 million (or 33 percent of the total supply) of CVC tokens sold, raising approximately $33 million. Investors would explore the various cryptocurrency exchanges and social media sites that published active and upcoming ICOs. Many of these postings encouraged trading in CVC for profit. Indeed, one poster referred to CVC token as a "**multi billion dollar opportunity**":

### My case for CVC being in the $billion club

DAPP-TECHNICALS

Hey everyone, I've been in crypto since last December, and worked in finance for 12 years before that. I've spent the past few months immersing myself with blockchain technology. Before diving in and buying coins, I decided to learn about the most promising use cases. One of the most promising use cases of blockchain is, undoubtedly, identity. **This is a multi billion dollar opportunity.** I think Civic ($CVC) is primed to win this market, here's why:

- Vinny Lingham is one of the most accomplished tech entrepreneurs in the space. He's had multiple exits and knows how to get shit done (which can't be said about 99% of ICO teams).
- CVC token economics incentivize user onboarding. Both people and verifiers can earn CVC by onboarding users onto the Civic platform.
- Practically speaking, signing up for services sucks. Have you ever tried signing up for multiple services and forgetting your password? Or signing up for services that do KYC... even worse. With Civic you just use your camera and a QR code.

45.     Over 2017 and 2018, nearly $20 billion was raised through ICOs, none of which was registered with the SEC.  Of the approximately 800 ICOs launched between 2017 and 2018, the vast majority were issued using the ERC-20 protocol.

46.     Like most ICOs, ERC-20 ICOs were typically announced and promoted through public online channels.  Issuers, including CVC, typically released a "whitepaper" describing the project and terms of the ICO.  These whitepapers advertised the sale of tokens or coins through the ICO.  They typically advertised the creation of a "new blockchain architecture."

47.     The whitepapers typically contained vastly less information than a registration statement filed with the SEC would have included.  For example, whitepapers often did not include a "plain English" description of the offering; a required list of key risk factors; a description of important information and incentives concerning management; warnings about relying on forward-looking statements; an explanation of how the proceeds from the offering would be used; or a standardized format that investors could readily follow.

48.     When tokens were sold through an ERC-20 ICO, the issuer usually asserted that such tokens entitled their holders to certain rights related to a venture underlying the ICO, such as the right to use certain services provided by the issuer.  In almost all cases, these tokens could also be traded, thereby giving investors a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others (that is, the people operating the issuer whose efforts will impact the value of those tokens on the secondary market).

49.     These tokens were frequently listed on cryptocurrency exchanges, where they were bought and sold using other cryptocurrencies (such as Bitcoin or Ethereum) or traditional currencies such as the U.S. dollar.

### E.  Civic Solicited And Sold The CVC Token Through Both An ICO And Through Subsequent Sales On Cryptocurrency Exchanges

50.    In May 2017, Lingham and Smith announced the CVC ICO in Manhattan, New York at a cryptocurrency conference called Consensus.

51.    A few weeks later, in June 2017, Civic published the first version of the "Civic whitepaper."  In its whitepaper, Civic stated that it was "building an ecosystem that is designed to facilitate on-demand, secure and low-cost access to identity verification ('IDV') services via the blockchain, such that background and personal information verification checks will no longer need to be undertaken from the ground up every time."  It also introduced, for the first time, the CVC token "that participants in the ecosystem will use to transact in IDV-related services."

52.    CVC was launched through use of the ERC-20 protocol.  At launch, 1 billion tokens were created through use of the ERC-20 protocol.

53.    Civic retained 33 percent of those tokens and allocated an additional 33 percent "for distribution to incentivize participation in the ecosystem."



54.     The remaining 33 percent of the tokens were sold during CVC's ICO, which Civic organized and ran.  Over its 2-day ICO, from June 20 to June 21, 2017, Civic raised approximately $33 million in proceeds.

55.     The CVC token was promoted on unregistered cryptocurrency exchanges, including Binance:

# Binance Lists Civic (CVC)

 Binance
2 years ago

**Fellow Binancians,**

Binance will open trading for CVC/BNB, CVC/BTC and CVC/ETH trading pairs at 2018/05/28 09:00 AM (UTC). Users can now start depositing CVC in preparation for trading.

Details:

1. About Civic (CVC)
2. Fees
3. Rules

56.     Civic promoted and advertised CVC tokens in the United States.  In 2017 and 2018, CVC representatives, including Lingham and Smith, attended and spoke at conferences in which they touted CVC, including in this district.  Lingham and Smith announced the launch of the CVC token ICO in May of 2017 at Consensus, an annual cryptocurrency conference taking place in Manhattan.

### F.   Investors Would Not Reasonably Have Understood Prior To April 3, 2019, At The Earliest, That CVC Was A Security

57.   Civic and its promoters made numerous statements that would have led a reasonable investor to conclude that the tokens sold in its ICO were not securities.

58.   As an initial matter, the CVC whitepaper was silent as to the legal nature of the CVC tokens.  Instead, Civic described the CVC token as a "utility token."

59.   The Purchase Agreement, which was not made available to those who purchased CVC tokens in secondary markets such as Binance, stated that "[CVC] Tokens are not intended to be a digital currency, security, commodity, or any kind of financial instrument" and that "[CVC] Tokens do not represent or confer any ownership right or stake, share, security, or equivalent rights, or any right to receive future revenue shares, intellectual property rights or any other form of participation in or relating to the Ecosystem and/or Company and its corporate affiliates." Further, CVC failed to register its offering of CVC with the SEC, thus further confirming to investors that CVC was not a security.

60.   Civic promoted their top-tier U.S. legal team from Perkins Coie who helped them prepare the token sale documentation.  This reasonably led investors to believe that security law experts were confident that the sale of CVC tokens did constitute the sale of a security.  In a September 2017 blog post, Lingham touted Perkins Coie's involvement in their token sale:

Perkins Coie : Critical part of conducting the sale was having excellent legal advice and Perkins is one of the most reputable firms in this space. We worked with Lior Zorea & Jacob Farber, both of them are excellent and understand this space intimately.

61.   Misleadingly, CVC also promoted itself as being similar to Bitcoin, which is not a security nor required to be registered with the SEC.  In an effort to capture upon the enthusiasm

for cryptocurrencies like Bitcoin and Ethereum, the Civic whitepaper touted the history and development of those two cryptocurrencies. It then asserted that "it is now possible to extend the blockchain's functionality to software, creating decentralized applications or 'dApps'" and that "[o]nce uploaded to the blockchain, these [dApps] are stored immutably and run when the required conditions are met."

62.     Civic asserted that its "Ecosystem [will] have the same security as the Bitcoin network."

63.     At the time of the CVC ICO, Civic took advantage of the market's lack of understanding and awareness concerning how cryptocurrencies worked. In the face of promises that CVC would be similar to Bitcoin, and considering the new technology at issue and Civic's other statements, many investors were understandably unaware that CVC tokens had fundamentally different features than other cryptocurrencies, which the SEC has determined are not securities. Moreover, the Civic whitepaper was silent about how Civic would use the proceeds. In a blog post just weeks before the ICO, Lingham said: "We're creating a fixed supply of 1 billion tokens. We are pricing them at $0.10 each. We felt that we needed enough tokens to power the smart contracting system for years to come and we could go to 2 decimal places for fractional smart contract execution. 1bn felt like the right number — no crazy scientific reason here."

64.     Prior to April 3, 2019, when the SEC released its Framework, it was therefore unclear to a reasonable investor that CVC was a security. On June 14, 2018, the Director of the Corporation Finance Division, William H. Hinman, explained that "the ICOs I am seeing, strictly speaking, the token—or coin or whatever the digital information packet is called—all by itself is not a security." On May 2, 2018, Commissioner Hester Peirce similarly expressed her view that not "all ICOs must be deemed securities offerings." Commissioner Peirce identified numerous

open questions that issuers like CVC emphasized when arguing ERC-20 tokens are not securities, such as the utility of the CVC token in an incomplete or partially complete network.

65.     Other thought leaders in the space, such as the lawfully registered broker-dealer Coinbase, opined in late 2016 that "we have considered the question of whether issuance of a Blockchain Token prior to the existence of a system would constitute a security.  We have not found conclusive law on the subject, but believe that the better view is that a non-security Blockchain Token does not become a security merely because the system as to which it has rights has not yet been created or completed."

66.     In sum, before the SEC issued its Framework on April 3, 2019, a reasonable investor would not have concluded that ERC-20 tokens like the CVC token were generally securities subject to the securities laws.  On the contrary, they were confronted with representations both from token issuers and from cryptocurrency discussions that would have led them reasonably to conclude they were not investing in securities.

### G.  The CVC Tokens Are Securities

67.     CVC tokens are properly classified as securities because they constituted an investment of money in a common enterprise with a reasonable expectation of profits to be derived from the efforts of others.  At issuance, as described above, it was not clear that the CVC tokens were securities as defined under federal and state securities laws.  Civic acted as if the CVC tokens were *not* securities, for example, by not ensuring that a registration statement was filed with the SEC, which would have provided important disclosures to investors of the risks inherent in these investments, including their speculative nature.

68.     Moreover, CVC misleadingly compared CVC to Bitcoin in its whitepaper.  The distinction between Bitcoin and Ethereum, on the one hand, and digital tokens, such as CVC, on the other, was material to investors, including in evaluating whether CVC is a security.  When the

Bitcoin and Ethereum systems were created, only a tiny fraction of the underlying cryptocurrency units was in existence.  As a result, increases in bitcoin and ether could occur at a fixed rate over time, such as from mining.  The growth of Bitcoin and Ethereum thus occurs through a decentralized process as numerous users engage in mining and other efforts to build the ecosystem.

69.     By contrast, Civic issued nearly all of the CVC tokens at issuance, at very little economic cost to Civic's founders.  The creation of CVC tokens thus occurred through a *centralized* process, in contrast to Bitcoin and Ethereum.  This would not have been apparent at issuance, however, to a reasonable investor.  Rather, it was only after the passage of time and disclosure of additional information about the issuer's intent, process of management, and success in allowing decentralization to arise that a reasonable purchaser could know that he or she had acquired a security.  Purchasers were thereby misled into believing that CVC was something other than a security, when it *was* a security.

70.     In 2019, the SEC clarified, pursuant to its statutorily delegated authority, and with the benefit of labor-intensive research and investigations, that many ERC-20 tokens, including CVC, were securities.  On April 3, 2019, as noted above, the SEC published a "Framework for 'Investment Contract' Analysis of Digital Assets," in which it "provided a framework for analyzing whether a digital asset is an investment contract and whether offers and sales of a digital asset are securities transactions."  Among the most significant statements therein is the SEC's description of how to analyze the various facts surrounding ICOs in determining whether a given digital asset, like CVC, is a security.  Under application of the Framework, the Tokens were securities at issuance.

71.     In the Framework, the SEC cautioned potential issuers:  "If you are considering an Initial Coin Offering, sometimes referred to as an 'ICO,' or otherwise engaging in the offer, sale,

or distribution of a digital asset, you need to consider whether the U.S. federal securities laws apply." The SEC explained the basics of the *Howey* test:

> The U.S. Supreme Court's *Howey* case and subsequent case law have found that an "investment contract" exists when there is the investment of money in a common enterprise with a reasonable expectation of profits to be derived from the efforts of others. The so-called "*Howey* test" applies to any contract, scheme, or transaction, regardless of whether it has any of the characteristics of typical securities. The focus of the *Howey* analysis is not only on the form and terms of the instrument itself (in this case, the digital asset) but also on the circumstances surrounding the digital asset and the manner in which it is offered, sold, or resold (which includes secondary market sales). Therefore, issuers and other persons and entities engaged in the marketing, offer, sale, resale, or distribution of any digital asset will need to analyze the relevant transactions to determine if the federal securities laws apply.

Investors who bought CVC tokens invested money or other valuable consideration, such as bitcoin and ether, in a common enterprise—Civic. Investors had a reasonable expectation of profit based upon Civic's efforts, including, among other things, Civic obtaining listing of CVC tokens on various cryptocurrency exchanges.

### a. CVC Token Purchasers Invested Money

72. Investors in CVC tokens made an investment of money or other valuable consideration for purposes of *Howey*. The SEC Framework states: "The first prong of the *Howey* test is typically satisfied in an offer and sale of a digital asset because the digital asset is purchased or otherwise acquired in exchange for value, whether in the form of traditional (or fiat) currency, another digital asset, or other type of consideration."

73. Investors invested traditional and other digital currencies, such as bitcoin and ether, to purchase the CVC tokens. CVC tokens were listed on many cryptocurrency exchanges, and those cryptocurrency exchanges permitted investors to purchase CVC with bitcoin and ether.

**b.  CVC Token Investors Participated In A Common Enterprise**

74.     The SEC Framework states:  "In evaluating digital assets, we have found that a 'common enterprise' typically exists."  This is "because the fortunes of digital asset purchasers have been linked to each other or to the success of the promoter's efforts."

75.     The CVC tokens are no different.  Investors were passive participants in the CVC token ICO and the profits of each investor were intertwined with those of both Civic and of other investors.  Civic was responsible for supporting CVC, pooled investors' assets, and controlled those assets.  Civic also retained a significant stake in CVC, thus sharing in the profits and risk of the venture.

76.     To this effect, Civic prominently promoted its team on its token sale page:





Accordingly, investors in CVC participated in a common enterprise by purchasing the token.

### c. CVC Token Investors Purchased The Tokens With A Reasonable Expectation Of Profit From Owning Them

77.     As to "reasonable expectation of profits," the SEC Framework states: "A purchaser may expect to realize a return through participating in distributions or through other methods of realizing appreciation on the asset, such as selling at a gain in a secondary market."

78.     Investors in the CVC tokens, including Plaintiffs and the Class, made their investment with a reasonable expectation of profits. The CVC token was sold to investors prior to a network or "ecosystem" on which it could be used being fully developed.

79.     Alluding to the "AP" (the "Active Participant"), which is the promoter, sponsor, or other third party that "provides essential managerial efforts that affect the success of the enterprise," the Framework identifies a series of factually intense questions underscoring both the time the SEC had spent considering these issues and the challenges a layperson would face in analyzing whether a digital asset constitutes a security. In particular, the Framework lays out a number of characteristics to assess whether the "reasonable expectation of profits" element is met with respect to whether digital assets (such as CVC tokens) thereby satisfy the *Howey* test:

> The more the following characteristics are present, the more likely it is that there is a reasonable expectation of profit:
>
> - The digital asset gives the holder rights to share in the enterprise's income or profits or to realize gain from capital appreciation of the digital asset.
>
>   o   The opportunity may result from appreciation in the value of the digital asset that comes, at least in part, from the operation, promotion, improvement, or other positive developments in the network, particularly if there is a secondary trading market that enables digital asset holders to resell their digital assets and realize gains.
>
>   o   This also can be the case where the digital asset gives the holder rights to dividends or distributions.

- The digital asset is transferable or traded on or through a secondary market or platform, or is expected to be in the future.

- Purchasers reasonably would expect that an AP's efforts will result in capital appreciation of the digital asset and therefore be able to earn a return on their purchase.

- The digital asset is offered broadly to potential purchasers as compared to being targeted to expected users of the goods or services or those who have a need for the functionality of the network.

  o The digital asset is offered and purchased in quantities indicative of investment intent instead of quantities indicative of a user of the network. For example, it is offered and purchased in quantities significantly greater than any likely user would reasonably need, or so small as to make actual use of the asset in the network impractical.

- There is little apparent correlation between the purchase/offering price of the digital asset and the market price of the particular goods or services that can be acquired in exchange for the digital asset.

- There is little apparent correlation between quantities the digital asset typically trades in (or the amounts that purchasers typically purchase) and the amount of the underlying goods or services a typical consumer would purchase for use or consumption.

- The AP has raised an amount of funds in excess of what may be needed to establish a functional network or digital asset.

- The AP is able to benefit from its efforts as a result of holding the same class of digital assets as those being distributed to the public.

- The AP continues to expend funds from proceeds or operations to enhance the functionality or value of the network or digital asset.

- The digital asset is marketed, directly or indirectly, using any of the following:

  o The expertise of an AP or its ability to build or grow the value of the network or digital asset.

  o The digital asset is marketed in terms that indicate it is an investment or that the solicited holders are investors.

  o The intended use of the proceeds from the sale of the digital asset is to develop the network or digital asset.

22

  o  The future (and not present) functionality of the network or digital asset, and the prospect that an AP will deliver that functionality.

  o  The promise (implied or explicit) to build a business or operation as opposed to delivering currently available goods or services for use on an existing network.

  o  The ready transferability of the digital asset is a key selling feature.

  o  The potential profitability of the operations of the network, or the potential appreciation in the value of the digital asset, is emphasized in marketing or other promotional materials.

  o  The availability of a market for the trading of the digital asset, particularly where the AP implicitly or explicitly promises to create or otherwise support a trading market for the digital asset.

80.  The SEC Framework clarifies that investors purchased the CVC tokens with a reasonable expectation of profits.

81.  Indeed, many investors in CVC tokens believed they would be able to make a profit through their investment, with some commentators believing that CVC was a "**multi billion dollar opportunity**":

## My case for CVC being in the $billion club

DAPP-TECHNICALS

Hey everyone, I've been in crypto since last December, and worked in finance for 12 years before that. I've spent the past few months immersing myself with blockchain technology. Before diving in and buying coins, I decided to learn about the most promising use cases. One of the most promising use cases of blockchain is, undoubtedly, identity. **This is a multi billion dollar opportunity.** I think Civic ($CVC) is primed to win this market, here's why:

- Vinny Lingham is one of the most accomplished tech entrepreneurs in the space. He's had multiple exits and knows how to get shit done (which can't be said about 99% of ICO teams).
- CVC token economics incentivize user onboarding. Both people and verifiers can earn CVC by onboarding users onto the Civic platform.
- Practically speaking, signing up for services sucks. Have you ever tried signing up for multiple services and forgetting your password? Or signing up for services that do KYC... even worse. With Civic you just use your camera and a QR code.

82.     On the "news" section of its website, Civic featured articles that predicted the increase in value of the CVC token:



83.     In a July 2017 blog post, Lingham himself boasted about the potential increase in value of the CVC token:

> Civic has created 1 billion utility tokens that provide access to identity verification-related services in a decentralized, token-based ecosystem. These tokens represent a unit of account for the network. The bigger the network grows, the more utility in the token — and because the number of tokens are fixed (no inflation in the total supply, although they will be released over time). **As the size of the network and transaction volumes within it grows, this will create demand for the tokens.**

(emphasis added).  Accordingly, investors in the CVC token had a reasonable expectation of profit.

### d.  Investors Expected Profits From The CVC Tokens To Be Derived From The Managerial Efforts Of Issuers

84.     The SEC Framework provides that the "inquiry into whether a purchaser is relying on the efforts of others focuses on two key issues: Does the purchaser reasonably expect to rely on the efforts of an [Active Participant]? Are those efforts 'the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise,' as opposed to efforts that are more ministerial in nature?"

85.     The SEC explained, further underlining the depth of study the agency had devoted to the matter over the years and the complexity of such legal analysis from the perspective of a reasonable investor, that the more of the following characteristics that are present, "the more likely it is that a purchaser of a digital asset is relying on the 'efforts of others'":

- An ["Active Participant" or "AP"] is responsible for the development, improvement (or enhancement), operation, or promotion of the network, particularly if purchasers of the digital asset expect an AP to be performing or overseeing tasks that are necessary for the network or digital asset to achieve or retain its intended purpose or functionality.

  o   Where the network or the digital asset is still in development and the network or digital asset is not fully functional at the time of the offer or sale, purchasers would reasonably expect an AP to further develop the functionality of the network or digital asset (directly or indirectly). This particularly would be the case where an AP promises further developmental efforts in order for the digital asset to attain or grow in value.

- There are essential tasks or responsibilities performed and expected to be performed by an AP, rather than an unaffiliated, dispersed community of network users (commonly known as a "decentralized" network).

- An AP creates or supports a market for, or the price of, the digital asset. This can include, for example, an AP that: (1) controls the creation and issuance of the digital asset; or (2) takes other actions to support a market price of the digital asset, such as by limiting supply or ensuring scarcity, through, for example, buybacks, "burning," or other activities.

- An AP has a lead or central role in the direction of the ongoing development of the network or the digital asset. In particular, an AP plays a lead or central role in deciding governance issues, code updates, or how third parties participate in the validation of transactions that occur with respect to the digital asset.

- An AP has a continuing managerial role in making decisions about or exercising judgment concerning the network or the characteristics or rights the digital asset represents including, for example:

  o   Determining whether and how to compensate persons providing services to the network or to the entity or entities charged with oversight of the network.

  o   Determining whether and where the digital asset will trade. For example, purchasers may reasonably rely on an AP for liquidity, such as where the AP has arranged, or promised to

arrange for, the trading of the digital asset on a secondary market or platform.

o   Determining who will receive additional digital assets and under what conditions.

o   Making or contributing to managerial level business decisions, such as how to deploy funds raised from sales of the digital asset.

o   Playing a leading role in the validation or confirmation of transactions on the network, or in some other way having responsibility for the ongoing security of the network.

o   Making other managerial judgements or decisions that will directly or indirectly impact the success of the network or the value of the digital asset generally.

•   Purchasers would reasonably expect the AP to undertake efforts to promote its own interests and enhance the value of the network or digital asset, such as where:

o   The AP has the ability to realize capital appreciation from the value of the digital asset. This can be demonstrated, for example, if the AP retains a stake or interest in the digital asset. In these instances, purchasers would reasonably expect the AP to undertake efforts to promote its own interests and enhance the value of the network or digital asset.

o   The AP distributes the digital asset as compensation to management or the AP's compensation is tied to the price of the digital asset in the secondary market. To the extent these facts are present, the compensated individuals can be expected to take steps to build the value of the digital asset.

o   The AP owns or controls ownership of intellectual property rights of the network or digital asset, directly or indirectly.

o   The AP monetizes the value of the digital asset, especially where the digital asset has limited functionality.

86.   Shifting its focus to the numerous facts bearing on the nature of the digital asset at issue, the SEC explained still further:

Although no one of the following characteristics of use or consumption is necessarily determinative, the stronger their presence, the less likely the *Howey* test is met:

•   The distributed ledger network and digital asset are fully developed and operational.

26

- Holders of the digital asset are immediately able to use it for its intended functionality on the network, particularly where there are built-in incentives to encourage such use.

- The digital assets' creation and structure is designed and implemented to meet the needs of its users, rather than to feed speculation as to its value or development of its network.  For example, the digital asset can only be used on the network and generally can be held or transferred only in amounts that correspond to a purchaser's expected use.

- Prospects for appreciation in the value of the digital asset are limited.  For example, the design of the digital asset provides that its value will remain constant or even degrade over time, and, therefore, a reasonable purchaser would not be expected to hold the digital asset for extended periods as an investment.

- With respect to a digital asset referred to as a virtual currency, it can immediately be used to make payments in a wide variety of contexts, or acts as a substitute for real (or fiat) currency.

  - o   This means that it is possible to pay for goods or services with the digital asset without first having to convert it to another digital asset or real currency.

  - o   If it is characterized as a virtual currency, the digital asset actually operates as a store of value that can be saved, retrieved, and exchanged for something of value at a later time.

- With respect to a digital asset that represents rights to a good or service, it currently can be redeemed within a developed network or platform to acquire or otherwise use those goods or services.  Relevant factors may include:

  - o   There is a correlation between the purchase price of the digital asset and a market price of the particular good or service for which it may be redeemed or exchanged.

  - o   The digital asset is available in increments that correlate with a consumptive intent versus an investment or speculative purpose.

  - o   An intent to consume the digital asset may also be more evident if the good or service underlying the digital asset can only be acquired, or more efficiently acquired, through the use of the digital asset on the network.

- Any economic benefit that may be derived from appreciation in the value of the digital asset is incidental to obtaining the right to use it for its intended functionality.

27

- The digital asset is marketed in a manner that emphasizes the functionality of the digital asset, and not the potential for the increase in market value of the digital asset.

- Potential purchasers have the ability to use the network and use (or have used) the digital asset for its intended functionality.

- Restrictions on the transferability of the digital asset are consistent with the asset's use and not facilitating a speculative market.

- If the AP facilitates the creation of a secondary market, transfers of the digital asset may only be made by and among users of the platform.

87.     Purchasers of pre-functional tokens, such as CVC, necessarily rely on the managerial efforts of others to realize value from their investments. The success of these managerial efforts in developing the networks on which these tokens will operate is the primary factor in their price, that is, until such tokens transition into being functional utility tokens. The CVC token was a security at issuance because profits from CVC would be derived primarily from the managerial efforts of Civic in developing the associated network on which CVC would function, rather than having its profit derived from market forces of supply and demand, such as might affect the price of a commodity such as gold (or Bitcoin).

88.     This dependency, however, on the managerial efforts of Civic was not apparent at issuance to a reasonable investor. Considering the limited available information about how CVC was designed and intended to operate, if such an investor were even able to interpret the relevant law at the time, a reasonable investor lacked sufficient bases to assess whether CVC was a security until the platform at issue, and its relevant "ecosystem," had been given time to develop. In the interim, the investor lacked the facts necessary to assess—let alone formally allege in court—that the token she had acquired was a security. It was only after the passage of some significant amount of time, and only with more information about Civic's intent, process of management, and lack of

28

success in allowing decentralization to arise, that an investor could reasonably determine that a token that was advertised as something other than a security was a security all along.

89.    Investors' profits in CVC tokens were to be derived from the managerial efforts of others, specifically Civic and its co-founders and development teams.  CVC token investors relied on the managerial and entrepreneurial efforts of Civic and their executive and development teams to manage and develop the projects funded by the CVC ICO.

90.    Indeed, the CVC token sale website prominently displayed the biographies of the co-founders:



91.    The CVC token sale website also prominently displayed the technical advisors involved in the project:

# Technical Advisors



### Matt Roszak

Co-founder and chairman
of Bloq



### Jeff Garzik

Co-founder and CEO of
Bloq



### Juan Benet

Juan Benet Founder, CEO
at Protocol Labs, Inc.



### Diego Gutiérrez
Zaldívar

CEO & Co-founder at RSK
Labs



### Anthony Di Iorio

CEO & Founder at Jaxx and
Decentral, Founder at
Ethereum



### Jeffrey Paul

Hacker, Researcher,
Speaker, Entrepreneur,
EEQJ, Inc.

92.     In announcing the token sale, Lingham and Smith promoted future CVC token holders' ability to be part of a system that would not just upend cryptocurrency but also would "have the capacity to be used as a digital replacement for passports, driver's licenses and voter ID, among other utilities."

93.     One year after the CVC ICO, Smith described all the progress Civic made toward building out the CVC ecosystem:

Since we completed the Civic Token Sale in June 2017, we have made significant progress towards our vision of building a truly decentralized identity ecosystem.

A few highlights from the past year include:

- a successful, widely-distributed Token Sale with over 10,000 participants;
- an expansion of Civic's digital identity platform, including Reusable Know Your Customer (KYC), ID Codes; and
- a rapidly expanding partner ecosystem that is showcasing how blockchain technology can translate to the real world, like the world's first crypto beer vending machine in partnership with the world's largest brewer, Anheuser-Busch InBev.

94.    Under this Framework, however complex the resolution of the issue would strike a reasonable investor, CVC satisfies most if not all of the factors the SEC described as relevant to its determination that a digital asset is a security.  Civic created CVC tokens from thin air.  Civic represented that it would develop an ecosystem (*i.e.*, the overall network of individuals using CVC or participating in the development of its network) that would increase the value of CVC tokens. Plaintiffs and the Class reasonably expected Civic to provide significant managerial efforts, to develop and improve the CVC ecosystem, to develop and sustain a supportive network, and to secure listings at exchanges through which CVC tokens could be traded or liquidated.  And Civic represented that it would provide significant managerial efforts to achieve these objectives and make the issued ERC-20 token a success.

**H.  The SEC Has Concluded That Tokens Such As CVC Are Securities**

95.    On September 30, 2019, the SEC found that another issuer of a similar digital token, Block.one, had violated the Securities Act through its unregistered sale to U.S. investors of a token called EOS.  EOS, like CVC, was a digital token that was not marketed to investors as a security, but—by application of the SEC's Framework—*was* a security in that it constituted an investment of money in a common enterprise with a reasonable expectation of profits to be derived from the

efforts of others.  This enforcement action occurred over two years after Block.one began selling

EOS to the public, further underscoring the complexity of these issues for lay investors.

96.     In arriving at its determination that the EOS token was a security, the SEC reached

the following conclusions:

- "Companies that offer or sell securities to US investors must comply with the securities laws, irrespective of the industry they operate in or the labels they place on the investment products they offer."

- "Block.one did not provide ICO investors the information they were entitled to as participants in a securities offering."

- "[EOS] Tokens were securities under the federal securities laws"

- "A purchaser in the offering of [EOS] Tokens would have had a reasonable expectation of obtaining a future profit based upon Block.one's efforts, including its development of the EOSIO software and its promotion of the adoption and success of EOSIO and the launch of the anticipated EOSIO blockchains."

- "Block.one violated Sections 5(a) and 5(c) of the Securities Act by offering and selling these securities without having a registration statement filed or in effect with the Commission or qualifying for an exemption from registration."

As a result of the SEC's enforcement action, Block.one consented to a settlement whereby it would

pay $24 million to the SEC.  The SEC's recent conclusion—that EOS was a security—applies

with equal force to CVC.

I.    **The Class Has Suffered Significant Damages From Defendants' Actions**

97.     As a direct result of Defendants' issuance, promotion, and sale of unregistered

securities, Plaintiffs and the Class—many of whom are retail investors who lack the technical and

financial sophistication necessary to have evaluated the risks associated with their investments in

the CVC token—have suffered significant damages in an amount to be proven at trial.

98.     The CVC tokens today are worth far less than the price Plaintiffs and the Class paid

for them.  Indeed, it is now down approximately 98 percent from its all-time high.  To the extent

Plaintiffs and the Class still hold any CVC tokens, they demanded rescission at the initiation of this action and made any necessary tender of the CVC tokens.

## V.   CLASS ALLEGATIONS

99.   Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23 and seek certification of the following Class:  All persons who purchased CVC Tokens which were first sold on or about June 20, 2017.  The Class Period is thus June 20, 2017 through the present.

100.   The Class excludes individuals subject to any enforceable arbitration clause contained in any of the purchase agreements executed in connection with the CVC ICO.  The Class includes all other individuals who purchased CVC tokens, including those individuals who purchased CVC tokens in sales made through online cryptocurrency exchanges.

101.   Excluded from the Class are Defendants, their officers and directors, and members of their immediate families or their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

102.   Plaintiffs reserve the right to amend the Class definition if investigation or discovery indicate that the definition should be narrowed, expanded, or otherwise modified.

103.   The members of the Class are so numerous that joinder of all members is impracticable.  The precise number of Class members is unknown to Plaintiffs at this time, but it is believed to be in the tens of thousands.

104.   Members of the Class are readily ascertainable and identifiable.  Members of the Class may be identified by publicly accessible blockchain ledger information and records maintained by Defendants or their agents.  They may be notified of the pendency of this action by electronic mail using a form of notice customarily used in securities class actions.

105.   Plaintiffs' claims are typical of the claims of the Class members as all Class members are similarly affected by Defendants' respective wrongful conduct in violation of the

laws complained of herein.  Plaintiffs do not have any interest that is in conflict with the interests of the members of the Class.

106.    Plaintiffs and members of the Class sustained damages from Defendants' common course of unlawful conduct based upon the loss in market value of the CVC token.

107.    Plaintiffs have fairly and adequately protected, and will continue to fairly and adequately protect, the interests of the members of the Class and have retained counsel competent and experienced in class actions and securities litigation.  Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

108.    Common questions and answers of law and fact exist as to all Class members and predominate over any questions solely affecting individual members of the Class, including but not limited to the following:

- Whether CVC is a security under federal and state law;

- Whether Civic failed to register CVC as a security under applicable federal and state law;

- Whether Civic offered or sold CVC to members of the Class;

- Whether the members of the Class suffered damages as a result of Defendants' conduct in violation of federal and state law; and

- Whether the Class members are entitled to recover the monies they paid thereunder.

109.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by some of the individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.

110.     There will be no difficulty in the management of this action as a class action.

**FIRST CAUSE OF ACTION**
**(SECURITIES ACT – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Sections 5 and 12(a)(1) of the Securities Act**
**(Civic)**

111.     Plaintiffs reallege the allegations above.

112.     Section 5(a) of the Securities Act states: "Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."  15 U.S.C. § 77e(a).

113.     Section 5(c) of the Securities Act states:  "It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title."  *Id.* § 77e(c).

114.     When issued, the CVC tokens were securities within the meaning of Section 2(a)(1) of the Securities Act.  *Id.* § 77b(a)(1).  Civic promoted, solicited or sold CVC tokens to Plaintiffs and members of the Class.  Civic thus directly or indirectly made use of means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate

commerce for the purpose of sale or for delivery after sale.  No registration statements have been filed with the SEC or have been in effect with respect to any of the offerings alleged herein.

115.    Section 12(a)(1) of the Securities Act provides in relevant part:  "Any person who offers or sells a security in violation of section 77e of this title … shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."  *Id.* § 77*l*(a)(1).

116.    Accordingly, Civic has violated Sections 5(a), 5(c), and 12(a)(1) of the Securities Act, *id.* §§ 77e(a), 77e(c), and 77*l*(a)(1).

117.    Plaintiffs and the Class who own the CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for CVC tokens purchased in the period three years prior to the initiation of this action, which was initiated within one year of when an investor could adequately have pleaded that a CVC token is a security.  *Id.* § 77m.

118.    Plaintiffs and the Class seek rescissory damages on purchases of CVC tokens in the period commencing three years prior to the initiation of this action, which was initiated within one year of when an investor could adequately have pleaded that a CVC token is a security.  *Id.* § 77m.

**SECOND CAUSE OF ACTION**
**(SECURITIES ACT – ADDITIONAL LIABILITY)**
**Control Person Liability for Violations of**
**Sections 5 and 12(a)(1) of the Securities Act**
**(Lingham and Smith)**

119.    Plaintiffs reallege the allegations above.

120.    This Count is asserted against the Individual Defendants for violations of Section 15 of the Securities Act, 15 U.S.C. § 77o.

121.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts was, at the time of the wrongs alleged herein, and as set forth herein, had the power and authority to direct the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful solicitation of purchases of CVC tokens.

122.    The Individual Defendants had and have the power to direct or cause the direction of the management and policies of Civic.

123.    The Individual Defendants, separately or together, had sufficient influence to have caused Civic to solicit transactions of securities.

124.    The Individual Defendants, separately or together, jointly participated in, and/or aided and abetted, Civic's solicitation of securities.

125.    By virtue of the conduct alleged herein, the Individual Defendants are liable for the wrongful conduct complained of herein and are liable to Plaintiffs and the Class for rescission and/or damages suffered.

### THIRD CAUSE OF ACTION
### (ALABAMA STATE LAW – PRIMARY LIABILITY)
### Unregistered Offer and Sale of Securities
### Ala. Code § 8-6-19
### (Civic)

126.    Plaintiffs reallege the allegations above.

127.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Alabama.

128.    The Alabama Securities Act forbids the offer or sale of unregistered securities.  Ala. Code § 8-6-19.  Any person who unlawfully offers or sells an unregistered security "is liable to

the person buying the security, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at six percent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security." *Id.* § 36b-29(a).

129.    When issued, the CVC tokens were securities within the meaning of Ala. Code § 8-6-19.  Civic sold or solicited purchases of the CVC tokens to members of the Class in Alabama. The CVC tokens were neither registered as required under the Alabama Securities Act nor subject to any exemption from registration.

130.    The CVC tokens were offered or sold within the State of Alabama, including without limitation through solicitations directed by Civic to Alabama and received in Alabama.

131.    Accordingly, Civic has violated the Alabama Securities Act through Civic's sale of unregistered securities.

132.    On information and belief, no Class member received a written rescission offer to refund the consideration paid together with interest at six percent per year from the date of payment, less the amount of any income received on the security.

133.    Class members who own the CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for CVC tokens purchased in the period commencing two years prior to the initiation of this action, together with interest at six percent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, and all other remedies available to them.

134.    Class members who no longer own the CVC tokens seek rescissory damages for CVC tokens purchased in the period commencing two years prior to the initiation of this action,

together with interest at six percent per year from the date of payment, costs and reasonable attorneys' fees, and all other remedies available to them.

**FOURTH CAUSE OF ACTION**
**(ALABAMA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for**
**Unregistered Offer and Sale of Securities**
**Ala. Code § 8-6-19**
**(Lingham and Smith)**

135.    Plaintiffs reallege the allegations above.

136.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Alabama.

137.    Every person who directly or indirectly controls a seller liable under the Alabama Securities Act for unlawfully selling unregistered securities, as well as "every partner, officer, or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the conduct giving rise to the liability, and every dealer or agent who materially aids in such conduct" is jointly and severally liable "with and to the same extent" as the seller, unless the non-seller "is able to sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist."  Ala. Code § 8-6-19(c).

138.    When issued, the Tokens were securities within the meaning of Ala. Code § 8-6-19.  Civic sold or solicited purchases of the CVC tokens to members of the Class in Alabama.  The CVC tokens were neither registered as required under the Alabama Securities Act nor subject to any exemption from registration.

139.    The CVC tokens were offered or sold within the State of Alabama, including without limitation through solicitations directed by Civic to Alabama and received in Alabama.

140.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

141.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Alabama Securities Act through Civic's offer and sale of unregistered securities.

142.    On information and belief, no Class member received a written rescission offer to refund the consideration paid together with interest at six percent per year from the date of payment, less the amount of any income received on the security.

143.    Class members who own the CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for CVC tokens purchased in the period commencing two years prior to the initiation of this action, together with interest at six percent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, and all other remedies available to them.

144.    Class members who no longer own the CVC tokens seek rescissory damages for CVC tokens purchased in the period commencing two years prior to the initiation of this action, together with interest at six percent per year from the date of payment, costs and reasonable attorneys' fees, and all other remedies available to them.

## FIFTH CAUSE OF ACTION
## <u>(ALASKA STATE LAW – PRIMARY LIABILITY)</u>
### Unregistered Sale of Securities
### AS § 45.56.710
### (Civic)

145.    Plaintiffs reallege the allegations above.

146.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Alaska.

147.    The Alaska Securities Act forbids the sale of unregistered securities. AS § 45.56.100.   Any person who unlawfully sells an unregistered security is liable to the purchaser for "the consideration paid for the security, less the amount of any income received on the security," plus interest at the rate established for interest on judgments for the same period pursuant to AS § 09.30.070, "or eight percent a year, whichever is greater, from the date of the purchase, costs, and attorney fees as determined by the court, upon the tender of the security, or for actual damages."  AS § 45.56.710(b).

148.    When issued, the CVC tokens were securities within the meaning of AS § 45.56.100.  Civic sold CVC tokens to members of the Class in Alaska.  The CVC tokens were neither registered as required under the Alaska Securities Act nor subject to any exemption from registration.

149.    The CVC tokens were sold in the State of Alaska, including without limitation through solicitations directed by Civic to Alaska and received in Alaska.

150.    Accordingly, Civic has violated the Alaska Securities Act through Civic's sale of unregistered securities.

151.    On information and belief, no Class member received, at a time when they owned any CVC tokens, a written offer to refund the consideration paid, together with interest from the date of payment, less the amount of any income received on the security.

152.     Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing three years prior to the initiation of this action, together with interest set at the rate established for interest on judgments for the same period pursuant to AS § 09.30.070, or eight percent a year, whichever is greater, from the date of payment of the consideration for the CVC tokens, and costs, less the amount of any income received on the security; together with all other remedies available to them.

153.     Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing three years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it, together with interest at the rate established for interest on judgments for the same period pursuant to AS § 09.30.070, or eight percent a year, whichever is greater, from the date of disposition, and costs, and all other remedies available to them.

**SIXTH CAUSE OF ACTION**
**(ALASKA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Sale of Securities**
**AS § 45.56.710**
**(Lingham and Smith)**

154.     Plaintiffs reallege the allegations above.

155.     This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Alaska.

156.     Every person who directly or indirectly controls a seller liable under the Alaska Securities Act for unlawfully selling unregistered securities, as well as every "managing partner, executive officer, or director, … individual having a similar status or performing similar functions, … employee of or associated with" such a seller "who materially aids in conduct giving rise to the liability," and "broker-dealer, agent, investment adviser, or investment adviser

42

representative that materially aids in conduct giving rise to liability" is jointly and severally liable with and to the same extent as the seller unless the non-seller "sustains the burden of proof that the individual did not know and, in the exercise of reasonable care, could not have known of the existence of conduct because of which liability is alleged to exist."  AS § 45.56.710(g)(1)–(4).

157.   When issued, the CVC tokens were securities within the meaning of AS § 45.56.100.  Civic sold CVC tokens to members of the Class in Alaska.  The CVC tokens were neither registered as required under the Alaska Securities Act nor subject to any exemption from registration.

158.   The CVC tokens were sold in the State of Alaska, including without limitation through solicitations directed by Civic to Alaska and received in Alaska.

159.   Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

160.   Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Alaska Securities Act through Civic's sale of unregistered securities.

161.   On information and belief, no Class member received, at a time when they owned any CVC tokens, a written offer to refund the consideration paid, together with interest from the date of payment, less the amount of any income received on the security.

162.     Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing three years prior to the initiation of this action, together with interest set at the rate established for interest on judgments for the same period pursuant to AS § 09.30.070, or eight percent a year, whichever is greater, from the date of payment of the consideration for the CVC tokens, and costs, less the amount of any income received on the security; together with all other remedies available to them.

163.     Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing three years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it, together with interest at the rate established for interest on judgments for the same period pursuant to AS § 09.30.070, or eight percent a year, whichever is greater, from the date of disposition, and costs, and all other remedies available to them.

### SEVENTH CAUSE OF ACTION
### (ARKANSAS STATE LAW – PRIMARY LIABILITY)
**Unregistered Offer and Sale of Securities**
**Ar. St. § 23-42-106**
**(Civic)**

164.     Plaintiffs reallege the allegations above.

165.     This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Arkansas.

166.     The Arkansas Securities Act forbids the offer or sale of unregistered securities.  Ar. St. § 23-42-501.  Any person who unlawfully offers or sells an unregistered security is liable to the purchaser "[u]pon tender of the security, [for] the consideration paid for the security and interest at six percent (6%) per year from the date of payment, less the amount of any income received from owning the security," or, if the purchaser no longer owns the security, damages in

"the amount that would be recoverable upon a tender of the security less the value of the security when the buyer disposed of the security plus interest at six percent (6%) per year from the date of disposition of the security." Ar. St. § 23-42-106(a)(2).

167.    When issued, the CVC tokens were securities within the meaning of Ar. St. § 23-42-501.  Civic sold or solicited purchases of the CVC tokens to members of the Class in Arkansas. The CVC tokens were neither registered as required under the Arkansas Securities Act nor subject to any exemption from registration.

168.    The CVC tokens were offered or sold in the State of Arkansas, including without limitation through solicitations directed by Civic to Arkansas and received in Arkansas.

169.    Accordingly, Civic has violated the Arkansas Securities Act through Civic's offer and sale of unregistered securities.

170.    On information and belief, no Class member received, at a time when they owned any CVC tokens, a written offer to refund the consideration paid, together with interest at six percent a year, from the date of payment, less the amount of any income received on the security.

171.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing three years prior to the initiation of this action, together with interest from the date of payment of the consideration for the CVC tokens, and costs, less the amount of any income received on the security; together with all other remedies available to them.

172.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing three years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the buyer

disposed of it, together with interest from the date of disposition, and costs, and all other remedies available to them.

## EIGHTH CAUSE OF ACTION
## (ARKANSAS STATE LAW – ADDITIONAL LIABILITY)
## Control Person Liability for Unregistered Offer and Sale of Securities
## Ar. St. § 23-42-106
## (Lingham and Smith)

173.    Plaintiffs reallege the allegations above.

174.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Arkansas.

175.    Every person who directly or indirectly controls a seller liable under the Arkansas Securities Act for unlawfully selling unregistered securities, as well as every "partner, officer, or director of a primary offender and any other person occupying a similar status or performing a similar function with respect to the primary offender," "[a]n employee of a primary offender who materially aids in the actions of a primary offender that give rise to liability," or "[a] broker-dealer, agent, investment adviser, or investment adviser representative that materially aids in the actions of a primary offender that give rise to liability" is jointly and severally liable with and to the same extent as the seller unless the non-seller "satisfies the burden of proving that the secondary offender did not know, and in the exercise of reasonable care could not have known, of the existence of the actions of the primary offender that give rise to liability." Ar. St. § 23-42-106(d).

176.    When issued, the CVC tokens were securities within the meaning of Ar. St. § 23-42-501. Civic sold or solicited purchases of the CVC tokens to members of the Class in Arkansas. The CVC tokens were neither registered as required under the Arkansas Securities Act nor subject to any exemption from registration.

177.    The CVC tokens were offered or sold in the State of Arkansas, including without limitation through solicitations directed by Civic to Arkansas and received in Arkansas.

178.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

179.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Arkansas Securities Act through Civic's offer and sale of unregistered securities.

180.    On information and belief, no Class member received, at a time when they owned any CVC tokens, a written offer to refund the consideration paid, together with interest at six percent a year, from the date of payment, less the amount of any income received on the security.

181.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing three years prior to the initiation of this action, together with interest from the date of payment of the consideration for the CVC tokens, and costs, less the amount of any income received on the security; together with all other remedies available to them.

182.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing three years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it, together with interest from the date of disposition, and costs, and all other remedies available to them.

## NINTH CAUSE OF ACTION
## (CALIFORNIA STATE LAW – PRIMARY LIABILITY)
### Unregistered Sale of Securities
### Cal. Corp. Code § 25503
### (Civic)

183.    Plaintiffs reallege the allegations above.

184.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of California.

185.    The California Corporate Securities Law forbids the sale of unregistered securities. Cal. Corp. Code § 25503.  Any person who unlawfully sells an unregistered security is liable to the purchaser "who may sue to recover the consideration he paid for such security with interest thereon at the legal rate, less the amount of any income received therefrom, upon the tender of such security, or for damages, if he no longer owns the security, or if the consideration given for the security is not capable of being returned."  Cal. Corp. Code § 25503.

186.    When issued, the CVC tokens were securities within the meaning of Cal. Corp. Code § 25503.  Civic sold the CVC tokens to members of the Class in California.  The CVC tokens were neither registered as required under the California Corporate Securities Law nor subject to any exemption from registration.

187.    The CVC tokens were sold in the State of California, including without limitation through solicitations directed by Civic to California and received in California.

188.    Accordingly, Civic has violated the California Corporate Securities Law through Civic's sale of unregistered securities.

189.    On information and belief, no Class member received, at a time when they owned any CVC tokens, a written offer to refund the consideration paid, together with interest at six percent a year, from the date of payment, less the amount of any income received on the security.

190.     Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action, which was initiated within one year of when an investor could adequately have pleaded that a CVC token is a security, together with interest from the date of payment of the consideration for the CVC tokens, and costs, less the amount of any income received on the security; together with all other remedies available to them.

191.     Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, which was initiated within one year of when an investor could adequately have pleaded that a CVC token is a security, in the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it, together with interest from the date of disposition, and costs, and all other remedies available to them.

### TENTH CAUSE OF ACTION
### (CALIFORNIA STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability for Unregistered Sale of Securities**
**Cal. Corp. Code § 25504**
**(Lingham and Smith)**

192.     Plaintiffs reallege the allegations above.

193.     This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of California.

194.     "Every person who directly or indirectly controls a person liable" for the sale of unregistered securities, and "every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same

extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist." Cal. Corp. Code § 25504.

195.    When issued, the CVC tokens were securities within the meaning of Cal. Corp. Code § 25503.  Civic sold the CVC tokens to members of the Class in California.  The CVC tokens were neither registered as required under the California Corporate Securities Law nor subject to any exemption from registration.

196.    The CVC tokens were sold in the State of California, including without limitation through solicitations directed by Civic to California and received in California.

197.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

198.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the California Corporate Securities Law through Civic's sale of unregistered securities.

199.    On information and belief, no Class member received, at a time when they owned any CVC tokens, a written offer to refund the consideration paid, together with interest at six percent a year, from the date of payment, less the amount of any income received on the security.

200.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the

period commencing two years prior to the initiation of this action, which was initiated within one year of when an investor could adequately have pleaded that a CVC token is a security, together with interest from the date of payment of the consideration for the CVC tokens, and costs, less the amount of any income received on the security; together with all other remedies available to them.

201.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, which was initiated within one year of when an investor could adequately have pleaded that a CVC token is a security, in the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it, together with interest from the date of disposition, and costs, and all other remedies available to them.

**ELEVENTH CAUSE OF ACTION**
**(COLORADO STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Colo. Rev. Stat. § 11-51-604**
**(Civic)**

202.    Plaintiffs reallege the allegations above.

203.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Colorado.

204.    The Colorado Securities Act forbids the sale of unregistered securities.  Colo. Rev. Stat. § 11-51-604.  Any person who unlawfully sells an unregistered security is liable to the purchaser "for the consideration paid for the security, together with interest at the statutory rate from the date of payment, costs, and reasonable attorney fees, less the amount of any income received on the security, upon the tender of the security, or is liable for damages if the buyer no longer owns the security.  Damages are deemed to be the amount that would be recoverable upon a tender, less the value of the security when the buyer disposed of it, and interest at the statutory rate from the date of disposition." *Id.*

205.    When issued, the CVC tokens were securities within the meaning of Colo. Rev. Stat. § 11-51-201(17).  Civic sold the CVC tokens to members of the Class in Colorado.  The CVC tokens were neither registered as required under the Colorado Securities Act nor subject to any exemption from registration.

206.    The CVC tokens were sold in the State of Colorado, including without limitation through solicitations directed by Civic to Colorado and received in Colorado.

207.    Accordingly, Civic has violated the Colorado Securities Act through Civic's sale of unregistered securities.

208.    On information and belief, no Class member received, at a time when they owned any CVC tokens, a written offer to refund the consideration paid, together with interest at six percent a year, from the date of payment, less the amount of any income received on the security.

209.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action, together with interest from the date of payment of the consideration for the CVC tokens, and costs, less the amount of any income received on the security; together with all other remedies available to them.

210.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it, together with interest from the date of disposition, and costs, and all other remedies available to them.

**TWELFTH CAUSE OF ACTION**
**(COLORADO STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Sale of Securities**
**Colo. Rev. Stat. § 11-51-604**
**(Lingham and Smith)**

211.     Plaintiffs reallege the allegations above.

212.     This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Colorado.

213.     "Every person who directly or indirectly controls a person liable" for the sale of unregistered securities, and "is liable jointly and severally with and to the same extent as such controlled person, unless the controlling person sustains the burden of proof that such person did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." Colo. Rev. Stat. § 11-51-604(5).

214.     When issued, the CVC tokens were securities within the meaning of Colo. Rev. Stat. § 11-51-201(17). Civic sold the CVC tokens to members of the Class in Colorado. The CVC tokens were neither registered as required under the Colorado Securities Act nor subject to any exemption from registration.

215.     The CVC tokens were sold in the State of Colorado, including without limitation through solicitations directed by Civic to Colorado and received in Colorado.

216.     Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein. Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

217. Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Colorado Securities Act through Civic's sale of unregistered securities.

218. On information and belief, no Class member received, at a time when they owned any CVC tokens, a written offer to refund the consideration paid, together with interest at six percent a year, from the date of payment, less the amount of any income received on the security.

219. Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action, together with interest from the date of payment of the consideration for the CVC tokens, and costs, less the amount of any income received on the security; together with all other remedies available to them.

220. Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it, together with interest from the date of disposition, and costs, and all other remedies available to them.

**THIRTEENTH CAUSE OF ACTION**
**(CONNECTICUT STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Conn. Gen. Stat. § 36b-29**
**(Civic)**

221. Plaintiffs reallege the allegations above.

222. This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Connecticut.

223. The Connecticut Uniform Securities Act forbids the offer or sale of unregistered securities. Conn. Gen. Stat. § 36b-16. Any person who unlawfully offers or sells an unregistered

54

security "is liable to the person buying the security, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight percent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security." *Id.* § 36b-29(a).

224.    When issued, the CVC tokens were securities within the meaning of Conn. Gen. Stat. Ann. § 36b-3(19).  Civic sold or solicited purchases of the CVC tokens to members of the Class in Connecticut.  The CVC tokens were neither registered as required under the Connecticut Uniform Securities Act nor subject to any exemption from registration.

225.    The CVC tokens were offered or sold within the State of Connecticut, including without limitation through solicitations directed by Civic to Connecticut and received in Connecticut.

226.    Accordingly, Civic has violated the Connecticut Uniform Securities Act through Civic's sale of unregistered securities.

227.    On information and belief,  no Class member has received a written rescission offer to refund the consideration paid together with interest at six percent per year from the date of payment, less the amount of any income received on the security.

228.    Class members who currently own the CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for CVC tokens purchased in the period commencing two years prior to the initiation of this action, together with interest at eight percent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, and all other remedies available to them.

229.    Class members who no longer own the CVC tokens seek damages for purchases of CVC tokens purchased in the period commencing two years prior to the initiation of this action, together with interest at eight percent per year from the date of payment, costs and reasonable attorneys' fees, and all other remedies available to them.

**FOURTEENTH CAUSE OF ACTION**
**(CONNECTICUT STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Offer and Sale of Securities**
**Conn. Gen. Stat. § 36b-29**
**(Lingham and Smith)**

230.    Plaintiffs reallege the allegations above.

231.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Connecticut.

232.    Every person who directly or indirectly controls a seller liable under the Connecticut Uniform Securities Act for unlawfully selling unregistered securities, as well as "every partner, officer or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the act or transaction constituting the violation and every broker-dealer or agent who materially aids in the act or transaction constituting the violation" is jointly and severally liable "with and to the same extent" as the seller, unless the non-seller "sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist."  Conn. Gen. Stat. § 36b-29(c).

233.    When issued, the CVC tokens were securities within the meaning of Conn. Gen. Stat. Ann. § 36b-3(19).  Civic sold or solicited purchases of the CVC tokens to members of the Class in Connecticut.  The CVC tokens were neither registered as required under the Connecticut Uniform Securities Act nor subject to any exemption from registration.

234.    The CVC tokens were offered or sold within the State of Connecticut, including without limitation through solicitations directed by Civic to Connecticut and received in Connecticut.

235.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.   Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

236.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Connecticut Uniform Securities Act through Civic's offer and sale of unregistered securities.

237.    On information and belief,  no Class member has received a written rescission offer to refund the consideration paid together with interest at six percent per year from the date of payment, less the amount of any income received on the security.

238.    Class members who currently own the CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for CVC tokens purchased in the period commencing two years prior to the initiation of this action, together with interest at eight percent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, and all other remedies available to them.

239.    Class members who no longer own the CVC tokens seek rescissory damages for Tokens purchased in the period commencing two years prior to the initiation of this action, together

with interest at eight percent per year from the date of payment, costs and reasonable attorneys' fees, and all other remedies available to them.

### FIFTEENTH CAUSE OF ACTION
### (FLORIDA STATE LAW – PRIMARY LIABILITY)
### Unregistered Offer and Sale of Securities
### Fla. Stat. § 517.211
### (Civic)

240.    Plaintiffs reallege the allegations above.

241.    This Cause of Action is brought on behalf of Plaintiffs and Class members who purchased or were offered CVC tokens in the State of Florida.

242.    The Florida Securities and Investor Protection Act forbids the offer or sale of unregistered securities.  Fla. Stat. § 517.07(1).  Any person who unlawfully offers or sells an unregistered security is liable to the purchaser for "the consideration paid for the security or investment, plus interest thereon at the legal rate, less the amount of any income received by the purchaser on the security or investment upon tender of the security or investment," as well as reasonable attorneys' fees.  *Id*. §§ 517.211(3)(a)(6).

243.    When issued, the CVC tokens were securities within the meaning of Fla. Stat. § 517.021(22).  Civic sold or solicited purchases of the CVC tokens to Plaintiffs and members of the Class in Florida.  The CVC tokens were neither registered as required under the Florida Securities and Investor Protection Act nor subject to any exemption from registration.

244.    The CVC tokens were offered or sold in the State of Florida, including without limitation through solicitations directed by Civic to Florida and received in Florida.

245.    Accordingly, Civic has violated the Florida Securities and Investor Protection Act through Civic's offer and sale of unregistered securities.

246.    Neither Plaintiffs nor, on information and belief, any Class member received, at a time when they owned any CVC tokens, a written offer to refund the consideration paid, together

with interest on the full amount paid for the security by the purchaser at the legal rate for the period from the date of payment by the purchaser to the date of repayment, less the amount of any income received by the purchaser on the security, and failed to accept the offer within 30 days of its receipt. Neither Plaintiffs nor, on information and belief, any Class member received such an offer at a time when they did not own the security and failed to reject the offer in writing within 30 days of its receipt.

247.    Plaintiffs and Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing five years prior to the initiation of this action, plus interest thereon at the legal rate and reasonable attorneys' fees, less the amount of any income received by the purchaser on the security or investment, together with reasonable attorneys' fees and all other remedies available to them.

248.    Plaintiffs and Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing five years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, plus interest on the full amount paid for the security by the purchaser at the legal rate for the period from the date of payment by the purchaser to the date of repayment, together with reasonable attorneys' fees and all other remedies available to them.

**SIXTEENTH CAUSE OF ACTION**
**(FLORIDA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Offer and Sale of Securities**
**Fla. Stat. § 517.211**
**(Lingham and Smith)**

249.    Plaintiffs reallege the allegations above.

250.    This Cause of Action is brought on behalf of Plaintiffs and Class members who purchased or were offered CVC tokens in the State of Florida.

251.     Every person who directly or indirectly controls a seller liable under the Florida Securities and Investor Protection Act for unlawfully selling unregistered securities, as well as "every director, officer, partner, or agent of or for the seller, if the director, officer, partner, or agent has personally participated or aided in making the sale, is jointly and severally liable to the purchaser in an action for rescission, if the purchaser still owns the security, or for damages, if the purchaser has sold the security." Fla. Stat. § 517.211(1).

252.     When issued, the CVC tokens were securities within the meaning of Fla. Stat. § 517.021(22). Civic sold or solicited purchases of the CVC tokens to Plaintiffs and members of the Class in Florida. The CVC tokens were neither registered as required under the Florida Securities and Investor Protection Act nor subject to any exemption from registration.

253.     The CVC tokens were offered or sold in the State of Florida, including without limitation through solicitations directed by Civic to Florida and received in Florida.

254.     Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein. Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

255.     Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Florida Securities and Investor Protection Act through Civic's offer and sale of unregistered securities.

256.     Neither Plaintiffs nor, on information and belief, any Class member received, at a time when they owned any CVC tokens, a written offer to refund the consideration paid, together

with interest on the full amount paid for the security by the purchaser at the legal rate for the period from the date of payment by the purchaser to the date of repayment, less the amount of any income received by the purchaser on the security, less the amount of any income received on the security, and failed to accept the offer within 30 days of its receipt.  Neither Plaintiffs nor, on information and belief, any Class member received such an offer at a time when they did not own the security and failed to reject the offer in writing within 30 days of its receipt.

257.   Plaintiffs and Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing five years prior to the initiation of this action, plus interest on the full amount paid for the security by the purchaser at the legal rate for the period from the date of payment by the purchaser to the date of repayment, and costs, less the amount of any income received on the security, together with reasonable attorneys' fees and all other remedies available to them.

258.   Plaintiffs and Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing five years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, together with plus interest on the full amount paid for the security by the purchaser at the legal rate for the period from the date of payment by the purchaser to the date of repayment, less the amount of any income received by the purchaser on the security, together with reasonable attorneys' fees and all other remedies available to them.

**SEVENTEENTH CAUSE OF ACTION**
**(GEORGIA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Ga. Code Ann. § 10-5-58**
**(Civic)**

259.   Plaintiffs reallege the allegations above.

260.     This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Georgia.

261.     The Georgia Uniform Securities Act forbids the offer or sale of unregistered securities. Ga. Code Ann. § 10-5-20.  Any person who sells an unregistered security is "liable to the purchaser," who may "maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at the legal rate of interest from the date of purchase, costs, and reasonable attorney fees determined by the Court upon the tender of the security or for actual damages." *Id*. § 10-5-58(b)(1).

262.     When issued, the CVC tokens were securities within the meaning of Ga. Code Ann. § 10-5-2.  Civic sold the CVC tokens to members of the Class in Georgia.  The CVC tokens were neither registered as required under the Georgia Uniform Securities Act nor subject to any exemption from registration.

263.     The CVC tokens were sold in the State of Georgia, including without limitation through solicitations directed by Civic to Georgia and received in Georgia.

264.     Accordingly, Civic has violated the Georgia Uniform Securities Act through Civic's sale of unregistered securities.

265.     On information and belief, no Class member received an offer to repurchase any CVC tokens for cash, payable on delivery of the security, equal to the consideration paid and interest from the date of the purchase, less the amount of any income received on the security; or an offer to pay the purchaser upon acceptance of the offer damages in an amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and interest from the date of the purchase in cash.  On information and belief, no Class member

received such an offer at a time when they did not own the security and failed to reject the offer in writing within 30 days of its receipt.

266.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action, plus interest from the date of the purchase of the CVC tokens in cash, less the value of the security when the purchaser disposed of it, together with costs, reasonable attorney fees, and all other remedies available to them.

267.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, together with interest at the legal rate of interest, costs, reasonable attorney fees, and all other remedies available to them.

**EIGHTEENTH CAUSE OF ACTION**
**(GEORGIA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Sale of Securities**
**Ga. Code Ann. § 10-5-58**
**(Lingham and Smith)**

268.    Plaintiffs reallege the allegations above.

269.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Georgia.

270.    Every person who directly or indirectly controls a seller liable under the Georgia Uniform Securities Act for unlawfully selling unregistered securities, as well as "[a]n individual who is a managing partner, executive officer, or director of a person liable" including "an individual having similar status or performing similar functions," "[a]n individual who is an employee of or associated with the person liable, and who materially aids the conduct giving rise to the liability," and "[a] person who is a broker-dealer, agent, investment adviser, or investment

adviser representative that materially aids the conduct giving rise to the liability," is jointly and severally liable with and to the same extent as the seller, unless the non-seller "sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist."  Ga. Code Ann. §§ 10-5-58(g)(1), (2).

271.    When issued, the CVC tokens were securities within the meaning of Ga. Code Ann. § 10-5-2.  Civic sold the CVC tokens to members of the Class in Georgia.  The CVC tokens were neither registered as required under the Georgia Uniform Securities Act nor subject to any exemption from registration.

272.    The CVC tokens were sold in the State of Georgia, including without limitation through solicitations directed by Civic to Georgia and received in Georgia.

273.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

274.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Georgia Uniform Securities Act through Civic's sale of unregistered securities.

275.    On information and belief, no Class member received, at a time when they owned any CVC tokens, an offer to refund for cash, payable on delivery of the security, equal to the consideration paid and interest from the date of the purchase, less the amount of any income

received on the security; or an offer to pay the purchaser upon acceptance of the offer damages in an amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and interest from the date of the purchase in cash.  On information and belief, no Class member received such an offer at a time when they did not own the security and failed to reject the offer in writing within 30 days of its receipt.

276.     Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action, plus interest from the date of the purchase of the CVC tokens in cash, less the value of the security when the purchaser disposed of it, together with costs, reasonable attorney fees, and all other remedies available to them.

277.     Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, together with interest at the legal rate of interest, costs, reasonable attorney fees, and all other remedies available to them.

**NINETEENTH CAUSE OF ACTION**
**(ILLINOIS STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**815 Ill. Comp. Stat. Ann. 5/13**
**(Civic)**

278.     Plaintiffs reallege the allegations above.

279.     This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Illinois.

280.     The Illinois Securities Law of 1953 requires securities to be registered prior to their sale in Illinois.  815 Ill. Comp. Stat. Ann. 5/5.  "Every sale of a security made in violation of the

provisions" of the Illinois Securities Law of 1953 is "voidable at the election of the purchaser," who may recover "the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10% per annum) less any income or other amounts received by the purchaser on the securities, upon offer to tender to the seller or tender into court of the securities sold," as well as "reasonable fees and expenses." *Id.* 5/13(A).

281.    When issued, the CVC tokens were securities within the meaning of 815 Ill. Comp. Stat. Ann. 5/2.1.  Civic was the issuer of the CVC tokens sold to members of the Class in Illinois. The CVC tokens were neither registered as required under the Illinois Securities Law of 1953 nor subject to any exemption from registration.

282.    The CVC tokens were sold in the State of Illinois, including without limitation through solicitations directed by Civic to Illinois and received in Illinois.

283.    Accordingly, Civic, as the issuer of unregistered securities that were sold in Illinois, has violated the Illinois Securities Law of 1953.

284.    On information and belief,  no Class member has failed, within 15 days from the date of receipt thereof, to accept an offer to repurchase any CVC tokens purchased by them for a price for the full amount paid together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10 percent per annum) less any income or other amounts received by the purchaser on the securities.  On information and belief, no Class member received such an offer at a time when they did not own the security and failed to reject the offer in writing within 15 days of its receipt.

285.    Plaintiffs learned that the sale was voidable under Illinois law within six months prior to the filing of this Complaint.  Prior to filing this Complaint, Plaintiffs have provided to Civic, by certified mail in a properly addressed envelope with adequate postage affixed and deposited in the mail, notice of their election to rescind, on behalf of themselves and the Class, the purchase of any CVC tokens they hold, which thereby satisfies the statutory requirement that notice of the election to rescind "shall be given by the purchaser within 6 months after the purchaser shall have knowledge that the sale of the securities to him or her is voidable, to each person from whom recovery will be sought, by registered mail or certified mail, return receipt requested, addressed to the person to be notified at his or her last known address with proper postage affixed, or by personal service." *Id.* 5/13(B).

286.    Class members who own the CVC tokens have made any necessary tender at the initiation of this action and seek the full amount paid for any CVC tokens issued by Civic in the period commencing three years prior to the initiation of this action, plus interest from the date of payment for the CVC tokens at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10 percent per annum) less any income or other amounts received by the purchaser on the securities, together with costs, reasonable attorneys' fees and expenses, and all other remedies available to them.

287.    Class members who no longer own the CVC tokens seek equivalent rescissory damages for any CVC tokens issued by Civic in the period commencing three years prior to the initiation of this action, plus interest from the date of payment for the CVC tokens at the rate of interest or dividend stipulated in the securities (or if no rate is stipulated, then at the rate of 10 percent per annum) less any amounts received by the purchaser for or on account of the disposition

of such tokens, together with costs, reasonable attorneys' fees and expenses, and all other remedies available to them.

**TWENTIETH CAUSE OF ACTION**
**(ILLINOIS STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Sale of Securities**
**815 Ill. Comp. Stat. Ann. 5/13**
**(Lingham and Smith)**

288.    Plaintiffs reallege the allegations above.

289.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Illinois.

290.    The Illinois Securities Law of 1953 provides that every "issuer, controlling person, underwriter, dealer or other person by or on behalf of whom" a sale of unregistered securities "was made, and each underwriter, dealer, internet portal, or salesperson who shall have participated or aided in any way in making the sale, and in case the issuer, controlling person, underwriter, dealer, or internet portal is a corporation or unincorporated association or organization, each of its officers and directors (or persons performing similar functions) who shall have participated or aided in making the sale, shall be jointly and severally liable" with the seller.  815 Ill. Comp. Stat. Ann. 5/13(A)(1)-(2).

291.    When issued, the CVC tokens were securities within the meaning of 815 Ill. Comp. Stat. Ann. 5/2.1.  Civic sold the CVC tokens to members of the Class in Illinois.  The CVC tokens were neither registered as required under the Illinois Securities Law of 1953 nor subject to any exemption from registration.

292.    The CVC tokens were sold in the State of Illinois, including without limitation through solicitations directed by Civic to Illinois and received in Illinois.

293.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts were, at the time of the wrongs alleged

herein, controlling persons on behalf of whom the sale of the unregistered tokens issued by Civic was made, or officers or directors (or persons performing similar functions) who shall have participated or aided in making the sale of the unregistered tokens issued by Civic.

294.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Illinois Securities Law of 1953 through Civic's sale of unregistered securities.

295.    On information and belief, no Class member has failed, within 15 days from the date of receipt thereof, to accept an offer to repurchase any CVC tokens purchased by them for a price for the full amount paid together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10 percent per annum) less any income or other amounts received by the purchaser on the securities.  On information and belief, no Class member received such an offer at a time when they did not own the security and failed to reject the offer in writing within 15 days of its receipt.

296.    Plaintiffs learned that the sale was voidable under Illinois law within six months prior to the filing of this Complaint.  Prior to filing this Complaint, Plaintiffs have provided to the Individual Defendants, by certified mail in a properly addressed envelope with adequate postage affixed and deposited in the mail, notice of their election to rescind, on behalf of themselves and the Class, the purchase of any CVC tokens they hold, which thereby satisfies the statutory requirement that notice of the election to rescind "shall be given by the purchaser within 6 months after the purchaser shall have knowledge that the sale of the securities to him or her is voidable, to each person from whom recovery will be sought, by registered mail or certified mail, return receipt

requested, addressed to the person to be notified at his or her last known address with proper postage affixed, or by personal service." *Id*. 5/13(B).

297.    Class members who own the CVC tokens have made any necessary tender at the initiation of this action and seek the full amount paid for any CVC tokens issued by Civic in the period commencing three years prior to the initiation of this action, plus interest from the date of payment for the CVC tokens at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10 percent per annum) less any income or other amounts received by the purchaser on the securities, together with costs, reasonable attorneys' fees and expenses, and all other remedies available to them.

298.    Class members who no longer own the CVC tokens seek equivalent rescissory damages for any CVC tokens issued by Civic in the period commencing three years prior to the initiation of this action, plus interest from the date of payment for the CVC tokens at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10 percent per annum) less any amounts received by the purchaser for or on account of the disposition of such tokens, together with costs, reasonable attorneys' fees and expenses, and all other remedies available to them.

**TWENTY-FIRST CAUSE OF ACTION**
**(INDIANA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Ind. Code Ann. § 23-19-5-9**
**(Civic)**

299.    Plaintiffs reallege the allegations above.

300.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Indiana.

301.    The Indiana Uniform Securities Act forbids the offer or sale of unregistered securities.  Ind. Code Ann. § 23-19-3-1.  Any person who sells an unregistered security is "liable

70

to the purchaser," who may "recover the consideration paid for the security, less the amount of any income received on the security, and interest at the greater of eight percent (8%) per annum or the rate provided for in the security from the date of the purchase, costs, and reasonable attorneys' fees determined by the court or arbitrator," unless "the person selling the security sustains the burden of proof that either the person did not know, and in the exercise of reasonable care could not have known, of the violation or the purchaser knowingly participated in the violation." *Id.* § 23-19-5-9(a).

302. When issued, the CVC tokens were securities within the meaning of Ind. Code Ann. § 23-19-1-2(28). Civic sold CVC tokens to members of the Class in Indiana. The CVC tokens were neither registered as required under the Uniform Securities Act nor subject to any exemption from registration.

303. The CVC tokens were sold in the State of Indiana, including without limitation through solicitations directed by Civic to Indiana and received in Indiana.

304. Accordingly, Civic has violated the Indiana Uniform Securities Act through Civic's sale of unregistered securities.

305. Upon information and belief, no Class member received an offer before filing suit to refund the consideration paid for the CVC tokens, together with interest at the rate of eight percent per annum from the date of the purchase, less the amount of any income received on the security, and failed to accept the offer within 30 days of its receipt. Upon information and belief, no Class member received such an offer at a time when they did not own the security and failed to reject the offer in writing within 30 days of its receipt.

306. Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the

period commencing three years prior to the initiation of this action, plus interest at the rate of eight percent per annum from the date of the purchase, less the amount of any income received on the security, together with costs, reasonable attorneys' fees, and all other remedies available to them.

307.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing three years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, together with interest at the rate of eight percent per annum from the date of the purchase, and costs, and all other remedies available to them.

**TWENTY-SECOND CAUSE OF ACTION**
**(INDIANA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Sale of Securities**
**Ind. Code Ann. § 23-19-5-9**
**(Lingham and Smith)**

308.    Plaintiffs reallege the allegations above.

309.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Indiana.

310.    Every person who directly or indirectly controls a seller liable under the Indiana Uniform Securities Act for unlawfully selling unregistered securities, as well as every "managing partner, executive officer, or director of a person liable," every "individual who is an employee of or associated with a person liable," and every "person that is a broker-dealer, agent, investment adviser, or investment adviser representative that materially aids the conduct giving rise to the liability" are "liable jointly and severally with and to the same extent as persons liable" for selling unregistered securities, unless the individual "did not know, and in the exercise of reasonable care could not have known, of the existence of the conduct by reason of which the liability is alleged to exist."  Ind. Code Ann. § 23-19-5-9(d).

311.    When issued, the CVC tokens were securities within the meaning of Ind. Code Ann. § 23-19-1-2(28).  Civic sold the CVC tokens to members of the Class in Indiana.  The CVC tokens were neither registered as required under the Indiana Uniform Securities Act nor subject to any exemption from registration.

312.    The CVC tokens were sold in the State of Indiana, including without limitation through solicitations directed by Civic to Indiana and received in Indiana.

313.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

314.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Indiana Uniform Securities Act through Civic's sale of unregistered securities.

315.    On information and belief, no Class member received an offer before filing suit to refund the consideration paid for the CVC tokens, together with interest at the rate of eight percent per annum from the date of the purchase, less the amount of any income received on the security, and failed to accept the offer within 30 days of its receipt.  On information and belief, no Class member received such an offer at a time when they did not own the security and failed to reject the offer in writing within 30 days of its receipt.

316.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the

period commencing three years prior to the initiation of this action, plus interest at the rate of eight percent per annum from the date of the purchase, less the amount of any income received on the security, together with costs, reasonable attorneys' fees, and all other remedies available to them.

317.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing three years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, plus interest at the rate of eight percent per annum from the date of the purchase, together with costs, reasonable attorneys' fees, and all other remedies available to them.

**TWENTY-THIRD CAUSE OF ACTION**
**(KANSAS STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Kan. Stat. Ann. § 17-12a509**
**(Civic)**

318.    Plaintiffs reallege the allegations above.

319.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Kansas.

320.    The Kansas Uniform Securities Act forbids the offer or sale of unregistered securities.  Kan. Stat. Ann. § 17-12a301.  Any person who sells a security in violation of Section 17-12a301 is "liable to the purchaser," who "may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest from the date of the purchase … costs, and reasonable attorneys' fees determined by the court, upon the tender of the security," or if the purchaser no longer owns the security, "[a]ctual damages" in "the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest from the date of the purchase … costs, and reasonable attorneys' fees determined by the court."  *Id.* § 17-12a509(b).

321.     When issued, the CVC tokens were securities within the meaning of the Kansas Uniform Securities Act.  *Id.* § 17-12a102(28).  Civic sold the CVC tokens to members of the Class in Kansas.   The CVC tokens were neither registered under, nor subject to exemption from registration under the Kansas Uniform Securities Act.  *Id.* § 17-12a301.

322.     The CVC tokens were offered or sold in the State of Kansas, including without limitation through solicitations directed by Civic to the State of Kansas and received in the State of Kansas.

323.     Accordingly, Civic has violated the Kansas Uniform Securities Act through Civic's sale of unregistered securities.

324.     On information and belief,  no Class member has received, before this action was instituted, an offer stating the respect in which liability under Kan. Stat. Ann. § 17-12a509 may have arisen and fairly advising the purchaser of that person's rights in connection with the offer, and offering to repurchase the security for cash equal to the consideration paid, and interest from the date of the purchase, less the amount of any income received on the security, or, if the purchaser no longer owns the security, an offer to pay the purchaser upon acceptance of the offer damages in an amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it, and interest from the date of the purchase, in cash.

325.     Class members who own the CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing five years prior to the initiation of this action, less the amount of any income received on the security, and interest from the date of the purchase, costs, and reasonable attorneys' fees, together with all other remedies available to them.

326.    Class members who no longer own the CVC tokens seek damages for any CVC tokens purchased in the period commencing five years prior to the initiation of this action in the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, together with all other remedies available to them.

**TWENTY-FOURTH CAUSE OF ACTION**
**(KANSAS STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Sale of Securities**
**Kan. Stat. Ann. § 17-12a509**
**(Lingham and Smith)**

327.    Plaintiffs reallege the allegations above.

328.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Kansas.

329.    Every person who directly or indirectly controls a seller liable under the Kansas Uniform Securities Act for unlawfully selling unregistered securities, as well as any "individual who is a managing partner, executive officer, or director" of such a seller, "including an individual having a similar status or performing similar functions," and any "individual who is an employee of or associated with" such a seller "and who materially aids the conduct giving rise to the liability," is jointly and severally liable with and to the same extent as the seller, unless the non-seller "sustains the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist."  Kan. Stat. Ann. § 17-12a509(g).

330.    When issued, the CVC tokens were securities within the meaning of the Kansas Uniform Securities Act.  *Id.* § 17-12a102(28).  Civic sold the CVC tokens to members of the Class in Kansas.  The CVC tokens were neither registered under, nor subject to exemption from registration under the Kansas Uniform Securities Act.  *Id.* § 17-12a301.

331.    The CVC tokens were offered or sold in the State of Kansas, including without limitation through solicitations directed by Civic to the State of Kansas and received in the State of Kansas.

332.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.   Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

333.    Accordingly, the Individual Defendants, who directly or indirectly controlled Civic, have violated the Kansas Uniform Securities Act through Civic's sale of unregistered securities.

334.    On information and belief,  no Class member has received, before this action was instituted, an offer stating the respect in which liability under Kan. Stat. Ann. § 17-12a509 may have arisen and fairly advising the purchaser of that person's rights in connection with the offer, and offering to repurchase the security for cash equal to the consideration paid, and interest from the date of the purchase, less the amount of any income received on the security, or, if the purchaser no longer owns the security, an offer to pay the purchaser upon acceptance of the offer damages in an amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it, and interest from the date of the purchase, in cash.

335.    Class members who own the CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing five years prior to the initiation of this action, less the amount of any income received

on the security, and interest from the date of the purchase, costs, and reasonable attorneys' fees, together with all other remedies available to them.

336.    Class members who no longer own the CVC tokens seek damages for any CVC tokens purchased in the period commencing five years prior to the initiation of this action in the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, together with all other remedies available to them.

**TWENTY-FIFTH CAUSE OF ACTION**
**(KENTUCKY STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Ky. Rev. Stat. Ann. § 292.480**
**(Civic)**

337.    Plaintiffs reallege the allegations above.

338.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the Commonwealth of Kentucky.

339.    The Securities Act of Kentucky forbids the offer or sale of unregistered securities. Ky. Rev. Stat. Ann. § 292.340.  Any person who offers or sells a security in violation of Section 292.340 is "liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security," or if the purchaser no longer owns the security, for damages in the "amount that would be recoverable upon a tender less … [t]he value of the security when the buyer is disposed of it; and … [i]nterest at the legal rate per annum from the date of disposition." *Id.* § 292.480(1).

340.    When issued, the CVC tokens were securities within the meaning of the Securities Act of Kentucky.  *Id.* § 292.310(19).  Civic offered or sold the CVC tokens to members of the

Class in Kentucky.  The CVC tokens were neither registered under, nor subject to exemption from registration under the Securities Act of Kentucky.  *Id.* § 292.340.

341.    The CVC tokens were offered or sold in the Commonwealth of Kentucky, including without limitation through solicitations directed by Civic to the Commonwealth of Kentucky and received in the Commonwealth of Kentucky.

342.    Accordingly, Civic has violated the Securities Act of Kentucky through Civic's offer or sale of unregistered securities.

343.    On information and belief,  no Class member has received a written offer before suit and at a time when they owned the security, to refund the consideration paid for the CVC tokens together with interest at the legal rate from the date of payment, less the amount of any income received on the security, or an offer before suit and at a time when they did not own the security.

344.    Class members who own the CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing three years prior to the initiation of this action, together with interest at the legal rate from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, together with all other remedies available to them.

345.    Class members who no longer own the CVC tokens seek damages for any CVC tokens purchased in the period commencing three years prior to the initiation of this action in the amount that would be recoverable upon a tender, less the value of the security when the buyer disposed of it, and interest at the legal rate per annum from the date of disposition, together with all other remedies available to them.

**TWENTY-SIXTH CAUSE OF ACTION**
**(KENTUCKY STATE LAW – SECONDARY LIABILITY)**
**Control Person Liability for Unregistered Offer and Sale of Securities**
**Ky. Rev. Stat. Ann. § 292.480**
**(Lingham and Smith)**

346.    Plaintiffs reallege the allegations above.

347.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the Commonwealth of Kentucky.

348.    Every person who directly or indirectly controls a seller liable under the Securities Act of Kentucky for unlawfully offering or selling unregistered securities, as well as "every partner, officer, or director (or person occupying a similar status or performing similar functions) or employee of a seller or purchaser who materially aids in the sale or purchase, and every broker-dealer or agent who materially aids in the sale or purchase is also liable jointly and severally with and to the same extent as the seller or purchaser, unless the non-seller or nonpurchaser who is so liable sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.  Ky. Rev. Stat. Ann. § 292.480(4).

349.    When issued, the CVC tokens were securities within the meaning of the Securities Act of Kentucky.  *Id.* § 292.310(19).  Civic offered or sold the CVC tokens to members of the Class in Kentucky.  The CVC tokens were neither registered under, nor subject to exemption from registration under the Securities Act of Kentucky.  *Id.* § 292.340.

350.    The CVC tokens were offered or sold in the Commonwealth of Kentucky, including without limitation through solicitations directed by Civic to the Commonwealth of Kentucky and received in the Commonwealth of Kentucky.

351.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged

herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

352.    Accordingly, the Individual Defendants, who directly or indirectly controlled Civic, have violated the Securities Act of Kentucky through Civic's offer or sale of unregistered securities.

353.    On information and belief,  no Class member has received a written offer before suit and at a time when they owned the security, to refund the consideration paid for the CVC tokens together with interest at the legal rate from the date of payment, less the amount of any income received on the security, or an offer before suit and at a time when they did not own the security.

354.    Class members who own the CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing three years prior to the initiation of this action, together with interest at the legal rate from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, together with all other remedies available to them.

355.    Class members who no longer own the CVC tokens seek damages for any CVC tokens purchased in the period commencing three years prior to the initiation of this action in the amount that would be recoverable upon a tender, less the value of the security when the buyer disposed of it, and interest at the legal rate per annum from the date of disposition, together with all other remedies available to them.

**TWENTY-SEVENTH CAUSE OF ACTION**
**(LOUISIANA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**La. Stat. Ann. § 51:714**
**(Civic)**

356.    Plaintiffs reallege the allegations above.

357.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Louisiana.

358.    The Louisiana Securities Law forbids the offer or sale of unregistered securities. La. Stat. Ann. § 51:705.  Any person who offers or sells a security in violation of Section 51:705 is "liable to the person buying such security, and such buyer may sue in any court to recover the consideration paid in cash or, if such consideration was not paid in cash, the fair value thereof at the time such consideration was paid for the security with interest thereon from the date of payment down to the date of repayment … less the amount of any income received thereon, together with all taxable court costs and reasonable attorneys' fees, upon the tender, where practicable, of the security at any time before the entry of judgment, or for damages if he no longer owns the security" in the amount "which equals the difference between the fair value of the consideration the buyer gave for the security and the fair value of the security at the time the buyer disposed of it, plus interest thereon from the date of payment to the date of repayment." *Id.* §§ 51:714(A); 51:712(A)(1).

359.    When issued, the CVC tokens were securities within the meaning of the Louisiana Securities Law.  *Id.* § 51:702(15)(b).  Civic offered or sold the CVC tokens to members of the Class in Louisiana.  The CVC tokens were neither registered under, nor subject to exemption from registration under the Louisiana Securities Law.  *Id.* § 51:705.

360.    The CVC tokens were offered or sold in the State of Louisiana, including without limitation through solicitations directed by Civic to the State of Louisiana and received in the State of Louisiana.

361.    Accordingly, Civic has violated the Louisiana Securities Law through Civic's offer or sale of unregistered securities.

362.    On information and belief,  no Class member has received a written offer, before suit and at a time when they owned the security, to repay in cash or by certified or official bank check, within thirty days from the date of acceptance of such offer in exchange for the securities, the fair value of the consideration paid for the CVC tokens, determined as of the date such payment was originally paid by the buyer, together with interest on such amount for the period from the date of payment to the date of repayment, less the amount of any income received on the security, or a written offer before suit and at a time when they did not own the security to repay in cash or by certified or official bank check, within thirty days from the date of acceptance of such offer, an amount equal to the difference between the fair value of the consideration the buyer gave for the CVC tokens and the fair value of the security at the time the buyer disposed of it, together with interest on such amount for the period from the date of payment down to the date of repayment, less the amount of any income received on the security.

363.    Class members who own the CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid in cash for any CVC tokens purchased in the period commencing two years prior to the initiation of this action or, if such consideration was not paid in cash, the fair value thereof at the time such consideration was paid for the security with interest thereon from the date of payment down to the date of repayment, less the amount of any

income received thereon, together with all taxable court costs and reasonable attorneys' fees, together with all other remedies available to them.

364.    Class members who no longer own the CVC tokens seek damages for any CVC tokens purchased in the period commencing two years prior to the initiation of this action in the amount which equals the difference between the fair value of the consideration the buyer gave for the security and the fair value of the security at the time the buyer disposed of it, plus interest thereon from the date of payment to the date of repayment, together with all other remedies available to them.

**TWENTY-EIGHTH CAUSE OF ACTION**
**(LOUISIANA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Offer and Sale of Securities**
**La. Stat. Ann. § 51:714**
**(Lingham and Smith)**

365.    Plaintiffs reallege the allegations above.

366.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Louisiana.

367.    Every person who directly or indirectly controls a seller liable under the Louisiana Securities Law for unlawfully offering or selling unregistered securities, as well as "every general partner, executive officer, or director of such [seller], every person occupying a similar status or performing similar functions, and every dealer or salesman who participates in any material way in the sale is liable jointly and severally with and to the same extent as the [seller] unless the person whose liability arises under this Subsection sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which liability is alleged to exist."  La. Stat. Ann. § 51:714(B).

368.    When issued, the CVC tokens were securities within the meaning of the Louisiana Securities Law.  *Id.* § 51:702(15)(b).  Civic offered or sold the CVC tokens to members of the

Class in Louisiana. The CVC tokens were neither registered under, nor subject to exemption from registration under the Louisiana Securities Law. *Id.* § 51:705.

369. The CVC tokens were offered or sold in the State of Louisiana, including without limitation through solicitations directed by Civic to the State of Louisiana and received in the State of Louisiana.

370. Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein. Each Individual Defendant caused the unlawful offers and sales of unregistered securities as described herein.

371. Accordingly, the Individual Defendants, who directly or indirectly controlled Civic, have violated the Louisiana Securities Law through Civic's offer or sale of unregistered securities.

372. On information and belief, no Class member has received a written offer, before suit and at a time when they owned the security, to repay in cash or by certified or official bank check, within thirty days from the date of acceptance of such offer in exchange for the securities, the fair value of the consideration paid for the CVC tokens, determined as of the date such payment was originally paid by the buyer, together with interest on such amount for the period from the date of payment to the date of repayment, less the amount of any income received on the security, or a written offer before suit and at a time when they did not own the security to repay in cash or by certified or official bank check, within thirty days from the date of acceptance of such offer, an amount equal to the difference between the fair value of the consideration the buyer gave for the CVC tokens and the fair value of the security at the time the buyer disposed of it, together with

interest on such amount for the period from the date of payment down to the date of repayment, less the amount of any income received on the security

373.    Class members who own the CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid in cash for any CVC tokens purchased in the period commencing two years prior to the initiation of this action or, if such consideration was not paid in cash, the fair value thereof at the time such consideration was paid for the security with interest thereon from the date of payment down to the date of repayment, less the amount of any income received thereon, together with all taxable court costs and reasonable attorneys' fees, together with all other remedies available to them.

374.    Class members who no longer own the CVC tokens seek damages for any CVC tokens purchased in the period commencing two years prior to the initiation of this action in the amount which equals the difference between the fair value of the consideration the buyer gave for the security and the fair value of the security at the time the buyer disposed of it, plus interest thereon from the date of payment to the date of repayment, together with all other remedies available to them.

**TWENTY-NINTH CAUSE OF ACTION**
**(MAINE STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Me. Rev. Stat. tit. 32, § 16509**
**(Civic)**

375.    Plaintiffs reallege the allegations above.

376.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Maine.

377.    The Maine Uniform Securities Act forbids the offer or sale of unregistered securities.  Me. Rev. Stat. tit. 32, § 16301.  Any person who sells a security in violation of Section 16301 is "liable to the purchaser," who "may maintain an action to recover the consideration paid

for the security, less the amount of any income received on the security, and the interest at the legal rate of interest from the date of the purchase, costs and reasonable attorneys' fees determined by the court, upon the tender of the security, or for actual damages" in the "amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it and the interest at the legal rate of interest from the date of the purchase, costs and reasonable attorneys' fees determined by the court." *Id.* § 16509(2).

378.    When issued, the CVC tokens were securities within the meaning of the Maine Uniform Securities Act. *Id.* § 16102(28).  Civic sold the CVC tokens to members of the Class in Maine.  The CVC tokens were neither registered under, nor subject to exemption from registration under the Maine Uniform Securities Act. *Id.* § 16301.

379.    The CVC tokens were offered and sold in the State of Maine, including without limitation through solicitations directed by Civic to the State of Maine and received in the State of Maine.

380.    Accordingly, Civic has violated the Maine Uniform Securities Act through Civic's offer or sale of unregistered securities.

381.    On information and belief,  no Class member has received, before this action was instituted, an offer stating the respect in which liability under section 16509 may have arisen and fairly advising the purchaser of that person's rights in connection with the offer, and offering to repurchase the CVC tokens for cash, payable on delivery of the security, equal to the consideration paid and interest at the legal rate of interest from the date of the purchase, less the amount of any income received on the security, or, if the purchaser no longer owns the security, an offer to pay the purchaser upon acceptance of the offer damages in an amount that would be recoverable upon

a tender, less the value of the security when the purchaser disposed of it and interest at the legal rate of interest from the date of the purchase in cash.

382.    Class members who own the CVC tokens have made any necessary tender at the initiation of this action and seek consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action, less the amount of any income received on the security, and interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, together with all other remedies available to them.

383.    Class members who no longer own the CVC tokens seek damages for any CVC tokens purchased in the period commencing two years prior to the initiation of this action in the amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it, and interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, together with all other remedies available to them.

**THIRTIETH CAUSE OF ACTION**
**(MAINE STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Sale of Securities**
**Me. Rev. Stat. tit. 32, § 16509**
**(Lingham and Smith)**

384.    Plaintiffs reallege the allegations above.

385.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Maine.

386.    Every person who directly or indirectly controls a seller liable under the Maine Uniform Securities Act for unlawfully selling unregistered securities, as well as any "managing partner, executive officer or director" of such a seller, "including an individual having a similar status or performing similar functions," any "individual who is an employee of or associated with"

such a seller "and who materially aids the conduct giving rise to the liability," and any "broker-dealer, agent, investment adviser or investment adviser representative that materially aids the conduct giving rise to the liability," is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist.  Me. Rev. Stat. tit. 32, § 16509(7).

387.    When issued, the CVC tokens were securities within the meaning of the Maine Uniform Securities Act.  *Id.* § 16102(28).  Civic sold the CVC tokens to members of the Class in Maine.  The CVC tokens were neither registered under, nor subject to exemption from registration under the Maine Uniform Securities Act.  *Id.* § 16301.

388.    The CVC tokens were offered and sold in the State of Maine, including without limitation through solicitations directed by Civic to the State of Maine and received in the State of Maine.

389.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.   Each Individual Defendant caused the unlawful sales of unregistered securities as described herein.

390.    Accordingly, the Individual Defendants, who directly or indirectly controlled Civic, have violated the Maine Uniform Securities Act through Civic's sale of unregistered securities.

391.    On information and belief,  no Class member has received, before this action was instituted, an offer stating the respect in which liability under section 16509 may have arisen and

fairly advising the purchaser of that person's rights in connection with the offer, and offering to repurchase the CVC tokens for cash, payable on delivery of the security, equal to the consideration paid and interest at the legal rate of interest from the date of the purchase, less the amount of any income received on the security, or, if the purchaser no longer owns the security, an offer to pay the purchaser upon acceptance of the offer damages in an amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and interest at the legal rate of interest from the date of the purchase in cash.

392.    Class members who own the CVC tokens have made any necessary tender at the initiation of this action and seek consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action, less the amount of any income received on the security, and interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, together with all other remedies available to them.

393.    Class members who no longer own the CVC tokens seek damages for any CVC tokens purchased in the period commencing two years prior to the initiation of this action in the amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it, and interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees determined by the court, together with all other remedies available to them.

### THIRTY-FIRST CAUSE OF ACTION
### (MASSACHUSETTS STATE LAW – PRIMARY LIABILITY)
### Unregistered Offer and Sale of Securities
### Mass. Gen. Laws Ann. ch. 110A, § 410
### (Civic)

394.    Plaintiffs reallege the allegations above.

395.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the Commonwealth of Massachusetts.

396.    The Massachusetts Securities Act forbids the offer or sale of unregistered securities. Mass. Gen. Laws Ann. ch. 110A, § 301.  Any person who offers or sells a security in violation of Section 301 is "liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security together with interest at 6 percent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security." *Id.* § 410(a)(2).

397.    When issued, the CVC tokens were securities within the meaning of the Massachusetts Securities Act.  *Id.* § 401(f).  Civic offered or sold the CVC tokens to members of the Class in Massachusetts.  The CVC tokens were neither registered under, nor subject to exemption from registration under the Massachusetts Securities Act.  *Id.* § 402.

398.    The CVC tokens were offered or sold in the Commonwealth of Massachusetts, including without limitation through solicitations directed by Civic to the Commonwealth of Massachusetts and received in the Commonwealth of Massachusetts.

399.    Accordingly, Civic has violated the Massachusetts Securities Act through Civic's sale of unregistered securities.

400.    On information and belief,  no Class member has received a written rescission offer to refund the consideration paid for the CVC tokens together with interest at 6 percent per annum from the date of payment.

401.    Class members who own the CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period

commencing four years prior to the initiation of this action, together with interest at 6 percent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, together with all other remedies available to them.

402.    Class members who no longer own the CVC tokens seek damages for any CVC tokens purchased in the period commencing four years prior to the initiation of this action in the amount that would be recoverable upon a tender, together with interest at 6 percent per year from the date of payment, costs, and reasonable attorneys' fees, less the value of such tokens when the buyer disposed of them and interest at 6 percent per year from the date of disposition, together with all other remedies available to them.

### THIRTY-SECOND CAUSE OF ACTION
### (MASSACHUSETTS STATE LAW – ADDITIONAL LIABILITY)
### Control Person Liability for Unregistered Offer and Sale of Securities
### Mass. Gen. Laws Ann. ch. 110A, § 410
### (Lingham and Smith)

403.    Plaintiffs reallege the allegations above.

404.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the Commonwealth of Massachusetts.

405.    Every person who directly or indirectly controls a seller liable under the Massachusetts Securities Act for unlawfully selling unregistered securities, as well as "every partner, officer, or director of such seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale" is jointly and severally liable with and to the same extent as the seller, unless the non-seller sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which liability is alleged to exist.  Mass. Gen. Laws Ann. ch. 110A, § 410(b)

406.    When issued, the CVC tokens were securities within the meaning of the Massachusetts Securities Act.  *Id.* § 401(f).  Civic offered and sold the CVC tokens to members of the Class in Massachusetts.  The CVC tokens were neither registered under, nor subject to exemption from registration under the Massachusetts Securities Act.  *Id.* § 402.

407.    Civic offered and sold the CVC tokens in the Commonwealth of Massachusetts, including without limitation through solicitations directed by Civic to the Commonwealth of Massachusetts and received in the Commonwealth of Massachusetts.

408.    Each of the Individual Defendants, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant caused the unlawful offers or sales of unregistered securities as described herein.

409.    Accordingly, the Individual Defendants, who directly or indirectly controlled Civic, have violated the Massachusetts Securities Act through Civic's offer or sale of unregistered securities.

410.    On information and belief,  no Class member has received a written rescission offer to refund the consideration paid for the CVC tokens together with interest at 6 percent per annum from the date of payment.

411.    Class members who own the CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens in the period commencing four years prior to the initiation of this action, together with interest at 6 percent per

year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, together with all other remedies available to them.

412.     Class members who no longer own the CVC tokens seek damages for any CVC tokens purchased in the period commencing four years prior to the initiation of this action in the amount that would be recoverable upon a tender, together with interest at 6 percent per year from the date of payment, costs, and reasonable attorneys' fees, less the value of such tokens when the buyer disposed of them and interest at 6 percent per year from the date of disposition, together with all other remedies available to them.

**THIRTY-THIRD CAUSE OF ACTION**
**(MONTANA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Mont. Code Ann. § 30-10-307**
**(Civic)**

413.     Plaintiffs reallege the allegations above.

414.     This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Montana.

415.     Montana law forbids the offer or sale of unregistered securities.  Mont. Code Ann. § 30-10-202.  "Any person who offers or sells a security in violation of" Mont. Code Ann. § 30-10-202 "is liable to the person buying the security from the offeror or seller, who may sue either at law or in equity."  Mont. Code Ann. § 30-10-307(1).

416.     When issued, the CVC tokens were securities within the meaning of Mont. Code Ann. § 30-10-103(24).  Civic sold the CVC tokens to, or solicited purchases of the CVC tokens from, members of the Class in Montana.  The CVC tokens were neither registered as required under Montana law nor subject to any exemption from registration.

417.    The CVC tokens were offered or sold in the State of Montana, including without limitation through offers by Civic originating from Montana or offers directed by Civic to Montana and received at the place to which they were directed.

418.    Accordingly, Civic has violated Mont. Code Ann. § 30-10-202 and is liable to members of the Class pursuant to Mont. Code Ann. § 30-10-307(1).

419.    On information and belief, no Class member has received a rescission offer from any Defendant pursuant to Mont. Code Ann. § 30-10-307(3).

420.    The members of the Class who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action plus interest thereon at the legal rate of 10 percent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the CVC tokens; together with all other remedies available to them.

421.    The members of the Class who do not currently own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount of the consideration paid for any such CVC tokens plus interest thereon at the legal rate of 10 percent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the CVC tokens, the value of the CVC tokens when the members disposed of them, and interest at 10 percent per year from the date of disposition; together with all other remedies available to them.

### THIRTY-FOURTH CAUSE OF ACTION
### (MONTANA STATE LAW – ADDITIONAL LIABILITY)
### Control Person Liability for Unregistered Offer and Sale of Securities
### Mont. Code Ann. § 30-10-307(2)
### (Lingham and Smith)

422.    Plaintiffs reallege the allegations above.

423.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Montana.

424.    "Every person who directly or indirectly controls a seller liable under [Mont. Code Ann. § 30-10-307(1)], every partner, officer, or director (or person occupying a similar status or performing similar functions) or employee of the seller, and every broker-dealer or salesperson who participates or materially aids in the sale is liable jointly and severally with and to the same extent as the seller if the non-seller knew, or in the exercise of reasonable care could have known, of the existence of the facts by reason of which the liability is alleged to exist."  Mont. Code Ann. § 30-10-307(2).

425.    When issued, the CVC tokens were securities within the meaning of Mont. Code Ann. § 30-10-103(24).  Civic sold the CVC tokens to, or solicited purchases of the CVC tokens from, members of the Class in Montana.  The CVC tokens were neither registered as required under Montana law nor subject to any exemption from registration.

426.    The CVC tokens were offered or sold in the State of Montana, including without limitation through offers by Civic originating from Montana or offers directed by Civic to Montana and received at the place to which they were directed.

427.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreement or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

428.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated Montana law through Civic's sale of unregistered securities.

429.    On information and belief, no Class member has received a rescission offer from any Defendant pursuant to Mont. Code Ann. § 30-10-307(3).

430.    The members of the Class who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action plus interest thereon at the legal rate of 10 percent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the CVC tokens; together with all other remedies available to them.

431.    The members of the Class who do not currently own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount of the consideration paid for any such CVC tokens plus interest thereon at the legal rate of 10 percent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the CVC tokens, the value of the CVC tokens when the members disposed of them, and interest at 10 percent per year from the date of disposition; together with all other remedies available to them.

**THIRTY-FIFTH CAUSE OF ACTION**
**(NEBRASKA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Neb. Rev. Stat. § 8-1118**
**(Civic)**

432.    Plaintiffs reallege the allegations above.

433.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Nebraska.

434.    Nebraska law forbids the offer or sale of unregistered securities.  Neb. Rev. Stat. § 8-1104.  "Any person who offers or sells a security in violation" Neb. Rev. Stat. § 8-1104 "shall be liable to the person buying the security from him or her, who may sue either at law or in equity." Neb. Rev. Stat. § 8-1118(1).

435.    When issued, the CVC tokens were securities within the meaning of Neb. Rev. Stat. § 8-1101(15).  Civic sold the CVC tokens to, or solicited purchases of the CVC tokens from, members of the Class in Nebraska.  The CVC tokens were neither registered as required under Nebraska law nor subject to any exemption from registration.

436.    The CVC tokens were offered, sold, and/or purchased in the State of Nebraska.

437.    Accordingly, Civic has violated Neb. Rev. Stat. § 8-1104 and is liable to members of the Class pursuant to Neb. Rev. Stat. § 8-1118(1).

438.    On information and belief, no Class member has received a rescission offer from any Defendant pursuant to Neb. Rev. Stat. § 8-1118(4).

439.    The members of the Class who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing three years prior to the initiation of this action plus interest thereon at the legal rate of six percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the CVC tokens; together with all other remedies available to them.

440.    The members of the Class who do not currently own CVC tokens seek damages for purchases of CVC tokens in the period commencing three years prior to the initiation of this action, in the amount of the consideration paid for such CVC tokens plus interest thereon at the legal rate of six percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the

amount of any income received on the CVC tokens, the value of the CVC tokens when the Class members disposed of them, and interest at six percent per annum from the date of disposition; together with all other remedies available to them.

### THIRTY-SIXTH CAUSE OF ACTION
### (NEBRASKA STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability for Unregistered Offer and Sale of Securities**
**Neb. Rev. Stat. § 8-1118(3)**
**(Lingham and Smith)**

441.    Plaintiffs reallege the allegations above.

442.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Nebraska.

443.    "Every person who directly or indirectly controls a person liable under [Neb. Rev. Stat. § 8-1118(1)], including every partner, limited liability company member, officer, director, or person occupying a similar status or performing similar functions of a partner, limited liability company member, officer, or director, or employee of such person who materially aids in the conduct giving rise to liability, and every broker-dealer, issuer-dealer, agent, investment adviser, or investment adviser representative who materially aids in such conduct shall be liable jointly and severally with and to the same extent as such person, unless able to sustain the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist."  Neb. Rev. Stat. § 8-1118(3).

444.    When issued, the CVC tokens were securities within the meaning of Neb. Rev. Stat. § 8-1101(15).  Civic sold the CVC tokens to, or solicited purchases of the CVC tokens from, members of the Class in Nebraska.  The CVC tokens were neither registered as required under Nebraska law nor subject to any exemption from registration.

445.    The CVC tokens were offered, sold, and/or purchased in the State of Nebraska.

446.     Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreement or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

447.     Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated Nebraska law through Civic's sale of unregistered securities.

448.     On information and belief, no Class member has received a rescission offer from any Defendant pursuant to Neb. Rev. Stat. § 8-1118(4).

449.     The members of the Class who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing three years prior to the initiation of this action plus interest thereon at the legal rate of six percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the CVC tokens; together with all other remedies available to them.

450.     The members of the Class who do not currently own CVC tokens seek damages for purchases of CVC tokens in the period commencing three years prior to the initiation of this action, in the amount of the consideration paid for such CVC tokens plus interest thereon at the legal rate of six percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the CVC tokens, the value of the CVC tokens when the Class members disposed of them, and interest at six percent per annum from the date of disposition; together with all other remedies available to them.

**THIRTY-SEVENTH CAUSE OF ACTION**
**(NEVADA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Nev. Rev. Stat. § 90.660**
**(Civic)**

451.    Plaintiffs reallege the allegations above.

452.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Nevada.

453.    Nevada law forbids the offer or sale of unregistered securities.  Nev. Rev. Stat. § 90.460.  "A person who offers or sells a security in violation of" Nev. Rev. Stat. § 90.460 "is liable to the person purchasing the security."  Nev. Rev. Stat. § 90.660.1(b).

454.    When issued, the CVC tokens were securities within the meaning of Nev. Rev. Stat. § 90.295.  Civic sold the CVC tokens to, or solicited purchases of the CVC tokens from, members of the Class in Nevada.  The CVC tokens were neither registered as required under Nevada law nor subject to any exemption from registration.

455.    The CVC tokens were offered in the State of Nevada, including without limitation through offers that originated in Nevada or were directed by Civic to Nevada and received where they were directed.

456.    Accordingly, Civic has violated Nev. Rev. Stat. § 90.460 and is liable to members of the Class pursuant to Nev. Rev. Stat. § 90.660.1(b).

457.    On information and belief, no Class member has received a rescission offer from any Defendant pursuant to Nev. Rev. Stat. § 90.680.

458.    The members of the Class who currently own CVC tokens have made any necessary tender at the initiation of this action, which commenced within the earliest of two years after the discovery of Civic's violation of Nevada law, two years after such discovery should have been made by the exercise of reasonable care, or five years after Civic's acts, omissions or transactions

constituting such violation, and seek the consideration paid for any CVC tokens, plus interest at the legal rate of Nevada from the date of payment, costs, and reasonable attorneys' fees, less the amount of income received on the CVC tokens; together with all other remedies available to them.

459.    The members of the Class who do not currently own CVC tokens seek damages for purchases of CVC tokens, in the amount of the consideration paid for such CVC tokens plus interest at the legal rate of Nevada from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the CVC tokens, the value of the CVC tokens when the Class members disposed of them, and interest at the legal rate of Nevada from the date of disposition of the security; together with all other remedies available to them.  This action was initiated within the earliest of two years after the discovery of Civic's violation of Nevada law, two years after such discovery should have been made by the exercise of reasonable care, or five years after Civic's acts, omissions or transactions constituting such violation.

**THIRTY-EIGHTH CAUSE OF ACTION**
**(NEVADA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Offer and Sale of Securities**
**Nev. Rev. Stat. § 90.660.4**
**(Lingham and Smith)**

460.    Plaintiffs reallege the allegations above.

461.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Nevada.

462.    "A person who directly or indirectly controls another person who is liable under [Nev. Rev. Stat. § 90.660.1], a partner, officer or director of the person liable, a person occupying a similar status or performing similar functions, any agent of the person liable, an employee of the person liable if the employee materially aids in the act, omission or transaction constituting the violation, and a broker-dealer or sales representative who materially aids in the act, omission or

transaction constituting the violation, are also liable jointly and severally with and to the same extent as the other person…." Nev. Rev. Stat. § 90.660.4.

463.    When issued, the CVC tokens were securities within the meaning of Nev. Rev. Stat. § 90.295. Civic sold the CVC tokens to, or solicited purchases of the CVC tokens from, members of the Class in Nevada. The CVC tokens were neither registered as required under Nevada law nor subject to any exemption from registration.

464.    The CVC tokens were offered in the State of Nevada, including without limitation through offers that originated in Nevada or were directed by Civic to Nevada and received where they were directed.

465.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreement or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein. Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

466.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated Nevada law through Civic's sale of unregistered securities.

467.    On information and belief, no Class member has received a rescission offer from any Defendant pursuant to Nev. Rev. Stat. § 90.680.

468.    The members of the Class who currently own CVC tokens have made any necessary tender at the initiation of this action, which commenced within the earliest of two years after the discovery of Civic's violation of Nevada law, two years after such discovery should have been made by the exercise of reasonable care, or five years after Civic's acts, omissions or transactions

constituting such violation, and seek the consideration paid for any CVC tokens, plus interest at the legal rate of Nevada from the date of payment, costs, and reasonable attorneys' fees, less the amount of income received on the CVC tokens; together with all other remedies available to them.

469.     The members of the Class who do not currently own CVC tokens seek damages for purchases of CVC tokens, in the amount of the consideration paid for such CVC tokens plus interest at the legal rate of Nevada from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the CVC tokens, the value of the CVC tokens when the Class members disposed of them, and interest at the legal rate of Nevada from the date of disposition of the security; together with all other remedies available to them.  This action was initiated within the earliest of two years after the discovery of Civic's violation of Nevada law, two years after such discovery should have been made by the exercise of reasonable care, or five years after Civic's acts, omissions or transactions constituting such violation.

### THIRTY-NINTH CAUSE OF ACTION
### (NEW HAMPSHIRE STATE LAW – PRIMARY LIABILITY)
### Unregistered Offer and Sale of Securities
### N.H. Rev. Stat. Ann. § 421-B:5-509
### (Civic)

470.     Plaintiffs reallege the allegations above.

471.     This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of New Hampshire.

472.     New Hampshire law forbids the offer or sale of unregistered securities.  N.H. Rev. Stat. Ann. § 421-B:3-301.  "A person is liable to the purchaser if the person sells a security in violation of" N.H. Rev. Stat. Ann. § 421-B:3-301.  N.H. Rev. Stat. Ann. § 421-B:5-509(b).

473.     When issued, the CVC tokens were securities within the meaning of N.H. Rev. Stat. Ann. § 421-B:1-102(53).  Civic sold the CVC tokens to, or solicited purchases of the CVC tokens

from, members of the Class in New Hampshire.  The CVC tokens were neither registered as required under New Hampshire law nor subject to any exemption from registration.

474.    The CVC tokens were offered in the State of New Hampshire, including without limitation through offers that originated in New Hampshire or were directed by Civic to New Hampshire and received where they were directed.

475.    Accordingly, Civic has violated N.H. Rev. Stat. Ann. § 421-B:3-301 and is liable to members of the Class pursuant to N.H. Rev. Stat. Ann. § 421-B:5-509(b).

476.    On information and belief, no Class member has received a rescission offer from any Defendant pursuant to N.H. Rev. Stat. Ann. § 421-B:5-510.

477.    The members of the Class who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action plus interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees, less the amount of income received on the CVC tokens; together with all other remedies available to them.

478.    The members of the Class who do not currently own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount of the consideration paid for such CVC tokens plus interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees, less the amount of any income received on the CVC tokens, and the value of the CVC tokens when the Class members disposed of them; together with all other remedies available to them.

## FORTIETH CAUSE OF ACTION
### (NEW HAMPSHIRE STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability for Unregistered Offer and Sale of Securities
N.H. Rev. Stat. Ann. § 421-B:5-509(g)
(Lingham and Smith)**

479.    Plaintiffs reallege the allegations above.

105

480.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of New Hampshire.

481.    "The following persons are liable jointly and severally with and to the same extent as persons liable under [N.H. Rev. Stat. Ann. § 421-B:5-509(b)]: (1) a person that directly or indirectly controls a person liable …, unless the controlling person sustains the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist"; "(2) an individual who is a managing partner, executive officer, or director of a person liable …, including an individual having a similar status or performing similar functions, unless the individual sustains the burden of proof that the individual did not know and, in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist"; "(3) an individual who is an employee of or associated with a person liable … and who materially aids the conduct giving rise to the liability, unless the individual sustains the burden of proof that the individual did not know and, in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist"; and "(4) a person that is a broker-dealer, agent, investment adviser, or investment adviser representative that materially aids the conduct giving rise to the liability …, unless the person sustains the burden of proof that the person did not know and, in the exercise of reasonable care could not have known, of the existence of conduct by reason of which liability is alleged to exist." N.H. Rev. Stat. Ann. § 421-B:5-509(g).

482.    When issued, the CVC tokens were securities within the meaning of N.H. Rev. Stat. Ann. § 421-B:1-102(53).  Civic sold the CVC tokens to, or solicited purchases of the CVC tokens from, members of the Class in New Hampshire.  The CVC tokens were neither registered as required under New Hampshire law nor subject to any exemption from registration.

483. The CVC tokens were offered in the State of New Hampshire, including without limitation through offers that originated in New Hampshire or were directed by Civic to New Hampshire and received where they were directed.

484. Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreement or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein. Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

485. Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated New Hampshire law through Civic's sale of unregistered securities.

486. On information and belief, no Class member has received a rescission offer from any Defendant pursuant to N.H. Rev. Stat. Ann. § 421-B:5-510.

487. The members of the Class who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action plus interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees, less the amount of income received on the CVC tokens; together with all other remedies available to them.

488. The members of the Class who do not currently own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount of the consideration paid for such CVC tokens plus interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees, less the amount of any income

received on the CVC tokens, and the value of the CVC tokens when the Class members disposed of them; together with all other remedies available to them.

**FORTY-FIRST CAUSE OF ACTION**
**(NEW JERSEY STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**N.J. Stat. Ann. § 49:3-71**
**(Civic)**

489.    Plaintiffs reallege the allegations above.

490.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of New Jersey.

491.    The New Jersey Uniform Securities Law forbids the offer or sale of unregistered securities.  N.J. Stat. Ann. § 49:3-60.  Any person who unlawfully offers or sells an unregistered security is liable to the purchaser for "the consideration paid for the security …, together with interest set at the rate established for interest on judgments for the same period by the Rules Governing the Courts of the State of New Jersey from the date of payment of the consideration for the … security, and costs, less the amount of any income received on the security, upon the tender of the security and any income received from … the security, or for damages if he no longer owns the security."  *Id.* § 49:3-71(a)(1), (c).

492.    When issued, the CVC tokens were securities within the meaning of N.J. Stat. Ann. § 49:3-49(m).  Civic sold or solicited purchases of the CVC tokens to members of the Class in New Jersey.  The CVC tokens were neither registered as required under the New Jersey Uniform Securities Law nor subject to any exemption from registration.

493.    The CVC tokens were offered or sold in the State of New Jersey, including without limitation through solicitations directed by Civic to New Jersey and received in New Jersey.

494.    Accordingly, Civic has violated the New Jersey Uniform Securities Law through Civic's sale of unregistered securities.

495. On information and belief, no Class member has received, at a time when they owned any CVC tokens, a written offer to refund the consideration paid, together with interest at the rate established for interest on judgments for the same period by the Rules Governing the Courts of the State of New Jersey at the time the offer was made, from the date of payment, less the amount of any income received on the security, and failed to accept the offer within 30 days of its receipt. On information and belief, no Class member has received such an offer at a time when they did not own the security and failed to reject the offer in writing within 30 days of its receipt.

496. Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action, together with interest set at the rate established for interest on judgments for the same period by the Rules Governing the Courts of the State of New Jersey from the date of payment of the consideration for the CVC tokens, and costs, less the amount of any income received on the security; together with all other remedies available to them.

497. Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it, together with interest at the rate established for interest on judgments for the same period by the Rules Governing the Courts of the State of New Jersey from the date of disposition, and costs, and all other remedies available to them.

**FORTY-SECOND CAUSE OF ACTION**
**(NEW JERSEY STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Offer and Sale of Securities**
**N.J. Stat. Ann. § 49:3-71**
**(Lingham and Smith)**

498.    Plaintiffs reallege the allegations above.

499.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of New Jersey.

500.    Every person who directly or indirectly controls a seller liable under the New Jersey Uniform Securities Law for unlawfully selling unregistered securities, as well as "every partner, officer, or director of such a seller, … every person occupying a similar status or performing similar functions, every employee of such a seller … who materially aids in the sale or in the conduct giving rise to the liability, and every broker-dealer, investment adviser, investment adviser representative or agent who materially aids in the sale or conduct" is jointly and severally liable with and to the same extent as the seller, "unless the non-seller who is so liable sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts … which give rise to liability."  N.J. Stat. Ann. § 49:3-71(d).

501.    When issued, the CVC tokens were securities within the meaning of N.J. Stat. Ann. § 49:3-49(m).  Civic sold or solicited purchases of the CVC tokens to members of the Class in New Jersey.  The CVC tokens were neither registered as required under the New Jersey Uniform Securities Law nor subject to any exemption from registration.

502.    The CVC tokens were offered or sold in the State of New Jersey, including without limitation through solicitations directed by Civic to New Jersey and received in New Jersey.

503.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the

management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein. Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

504.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the New Jersey Uniform Securities Law through Civic's sale of unregistered securities.

505.    On information and belief, no Class member received, at a time when they owned any CVC tokens, a written offer to refund the consideration paid, together with interest at the rate established for interest on judgments for the same period by the Rules Governing the Courts of the State of New Jersey at the time the offer was made, from the date of payment, less the amount of any income received on the security, and failed to accept the offer within 30 days of its receipt. On information and belief, no Class member received such an offer at a time when they did not own the security and failed to reject the offer in writing within 30 days of its receipt.

506.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action, together with interest set at the rate established for interest on judgments for the same period by the Rules Governing the Courts of the State of New Jersey from the date of payment of the consideration for the CVC tokens, and costs, less the amount of any income received on the security; together with all other remedies available to them.

507.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of

it, together with interest at the rate established for interest on judgments for the same period by the Rules Governing the Courts of the State of New Jersey from the date of disposition, and costs, and all other remedies available to them.

**FORTY-THIRD CAUSE OF ACTION**
**(NEW MEXICO STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**N.M. Stat. Ann. § 58-13C-509**
**(Civic)**

508.    Plaintiffs reallege the allegations above.

509.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of New Mexico.

510.    New Mexico law forbids the offer or sale of unregistered securities.  N.M. Stat. Ann. § 58-13C-301.  "A person is liable to the purchaser if the person sells a security in violation of Section 301 of the New Mexico Uniform Securities Act…."  N.M. Stat. Ann. § 58-13C-509.B.

511.    When issued, the CVC tokens were securities within the meaning of N.M. Stat. Ann. § 58-13C-102.DD.  Civic sold the CVC tokens to, or solicited purchases of the CVC tokens from, members of the Class in New Mexico.  The CVC tokens were neither registered as required under New Mexico law nor subject to any exemption from registration.

512.    The CVC tokens were offered in the State of New Mexico, including without limitation through offers that originated in New Mexico or were directed by Civic to New Mexico and received where they were directed.

513.    Accordingly, Civic has violated N.M. Stat. Ann. § 58-13C-301 and is liable to members of the Class pursuant to N.M. Stat. Ann. § 58-13C-509.B.

514.    On information and belief, no Class member has received a rescission offer from any Defendant pursuant to N.M. Stat. Ann. § 58-13C-510.

515.     The members of the Class who currently own CVC tokens have made any necessary tender at the initiation of this action, which commenced within two years after discovery of Civic's violation of New Mexico law or after discovery should have been made by the exercise of reasonable diligence, and seek the consideration paid for any CVC tokens purchased, plus interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees, less the amount of income received on the CVC tokens; together with all other remedies available to them.

516.     The members of the Class who do not currently own CVC tokens seek damages for purchases of CVC tokens in the amount of the consideration paid for such CVC tokens plus interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees, less the amount of any income received on the CVC tokens, and the value of the CVC tokens when the Class members disposed of them; together with all other remedies available to them.  This action was initiated within two years after discovery of Civic's violation of New Mexico law or after discovery should have been made by the exercise of reasonable diligence.

**FORTY-FOURTH CAUSE OF ACTION**
**(NEW MEXICO STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Offer and Sale of Securities**
**N.M. Stat. Ann. § 58-13C-509.G**
**(Lingham and Smith)**

517.     Plaintiffs reallege the allegations above.

518.     This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of New Mexico.

519.     "The following persons are liable jointly and severally with and to the same extent as persons liable under [N.M. Stat. Ann. § 58-13C-509.B]: (1) a person that directly or indirectly controls a person liable …, unless the controlling person sustains the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the existence

113

of conduct by reason of which the liability is alleged to exist"; "(2) an individual who is a managing partner, executive officer or director of a person liable …, including an individual having a similar status or performing similar functions, unless the individual sustains the burden of proof that the individual did not know and, in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist"; "(3) an individual who is an employee of or associated with a person liable … and who materially aids the conduct giving rise to the liability, unless the individual sustains the burden of proof that the individual did not know and, in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist"; and "(4) a person that is a broker-dealer, agent, investment adviser or investment adviser representative that materially aids the conduct giving rise to the liability …, unless the person sustains the burden of proof that the person did not know and, in the exercise of reasonable care could not have known, of the existence of conduct by reason of which liability is alleged to exist."  N.M. Stat. Ann. § 58-13C-509.G.

520.    When issued, the CVC tokens were securities within the meaning of N.M. Stat. Ann. § 58-13C-102.DD.  Civic sold the CVC tokens to, or solicited purchases of the CVC tokens from, members of the Class in New Mexico.  The CVC tokens were neither registered as required under New Mexico law nor subject to any exemption from registration.

521.    The CVC tokens were offered in the State of New Mexico, including without limitation through offers that originated in New Mexico or were directed by Civic to New Mexico and received where they were directed.

522.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreement or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the

management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

523.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated New Mexico law through Civic's sale of unregistered securities.

524.    On information and belief, no Class member has received a rescission offer from any Defendant pursuant to N.M. Stat. Ann. § 58-13C-510.

525.    The members of the Class who currently own CVC tokens have made any necessary tender at the initiation of this action, which commenced within two years after discovery of Civic's violation of New Mexico law or after discovery should have been made by the exercise of reasonable diligence, and seek the consideration paid for any CVC tokens purchased, plus interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees, less the amount of income received on the CVC tokens; together with all other remedies available to them.

526.    The members of the Class who do not currently own CVC tokens seek damages for purchases of CVC tokens in the amount of the consideration paid for such CVC tokens plus interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees, less the amount of any income received on the CVC tokens, and the value of the CVC tokens when the Class members disposed of them; together with all other remedies available to them.  This action was initiated within two years after discovery of Civic's violation of New Mexico law or after discovery should have been made by the exercise of reasonable diligence.

**FORTY-FIFTH CAUSE OF ACTION**
**(NORTH CAROLINA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**N.C. Gen. Stat. Ann. § 78A-56(a)**
**(Civic)**

527.   Plaintiffs reallege the allegations above.

528.   This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of North Carolina.

529.   The North Carolina Securities Act forbids the offer or sale of unregistered securities. N.C. Gen. Stat. Ann. § 78A-24.   Any person who unlawfully offers or sells an unregistered security "is liable to the person purchasing the security" who "may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if the purchaser no longer owns the security." *Id.* § 78A-56(a)(1)–(2).

530.   When issued, the CVC tokens were securities within the meaning of N.C. Gen. Stat. Ann. § 78A-2(11).  Civic sold or solicited purchases of the CVC tokens to members of the Class in North Carolina.  The CVC tokens were neither registered as required under the North Carolina Securities Act nor subject to any exemption from registration.

531.   The CVC tokens were offered or sold in the State of North Carolina including without limitation through solicitations directed by Civic to North Carolina and received in North Carolina.

532.   Accordingly, Civic has violated the North Carolina Securities Act through Civic's offer and sale of unregistered securities.

533.   On information and belief, no Class member who owns the CVC tokens has received a written offer to repurchase the CVC tokens for cash in an amount equal to the

consideration paid for the CVC tokens, together with interest at the legal rate as provided by G.S. 24-1 from the date of payment, less the amount of any income received on the security, nor failed to accept the offer in writing within 30 days of its receipt.

534.     On information and belief, no Class member who no longer owns the CVC tokens has received a written offer to pay in cash the amount of damages computed in accordance with § 78A-56 (a), nor failed to accept the offer in writing within 30 days of its receipt.

535.     Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action, together with interest at the legal rate from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the CVC tokens, and all other remedies available to them.

536.     Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest at the legal rate as provided by G.S. 24-1, and all other remedies available to them.

## FORTY-SIXTH CAUSE OF ACTION
## (NORTH CAROLINA STATE LAW – ADDITIONAL LIABILITY)
### Control Person Liability for Unregistered Offer and Sale of Securities
### N.C. Gen. Stat. Ann. § 78A-56(c)
### (Lingham and Smith)

537.     Plaintiffs reallege the allegations above.

538.     This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of North Carolina.

539.     Every person who directly or indirectly controls a seller liable under the North Carolina Securities Act for unlawfully offering or selling unregistered securities, as well as every

"partner, officer, or director of the person," "every person occupying a similar status or performing similar functions," as well as "every dealer or salesman who materially aids in the sale" is jointly and severally liable with and to the same extent as the person, unless "able to sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist."  N.C. Gen. Stat. Ann. § 78A-56(c)(1).

540.    When issued, the CVC tokens were securities within the meaning of N.C. Gen. Stat. Ann.. § 78A-2(11).  Civic sold or solicited purchases of the CVC tokens to members of the Class in North Carolina.  The CVC tokens were neither registered as required under the North Carolina Securities Act nor subject to any exemption from registration.

541.    The CVC tokens were offered or sold in the State of North Carolina, including without limitation through solicitations directed by Civic to North Carolina and received in North Carolina.

542.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

543.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the North Carolina Securities Act through Civic's offer and sale of unregistered securities.

118

544.     On information and belief, no Class member who owns the CVC tokens has received a written offer to repurchase the CVC tokens for cash in an amount equal to the consideration paid for the CVC tokens, together with interest at the legal rate as provided by G.S. 24-1 from the date of payment, less the amount of any income received on the have on the security upon the tender of the security, nor failed to accept the offer in writing within 30 days of its receipt.

545.     On information and belief, no Class member who no longer owns the CVC tokens has received a written offer to pay in cash the amount of damages computed in accordance with § 78A-56(a), nor failed to accept the offer in writing within 30 days of its receipt.

546.     Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action together with interest at the legal rate from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the CVC tokens, and all other remedies available to them.

547.     Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest at the legal rate as provided by G.S. 24-1, and all other remedies available to them.

**FORTY-SEVENTH CAUSE OF ACTION**
**(NORTH DAKOTA STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**N.D.C.C. §10-04-17**
**(Civic)**

548.     Plaintiffs reallege the allegations above.

549.     This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of North Dakota.

550.    The North Dakota Securities Act forbids the offer or sale of unregistered securities. N.D.C.C. §10-04-04.  Any person who unlawfully contracts to sell or sells an unregistered security is liable to "such purchaser" who "may sue either at law or in equity to recover the full amount paid," together with "all taxable court costs, interest as provided in this subsection, and reasonable attorneys' fees, less the amount of any income received on the securities, upon tender to the seller, in person or in open court, of the securities sold or of the contracts made, or for damages if the purchaser no longer owns the securities.." *Id.* § 10-04-17(1).

551.    When issued, the CVC tokens were securities within the meaning of N.D.C.C. §10-04-02(19).  Civic sold the CVC tokens to members of the Class in North Dakota.  The CVC tokens were neither registered as required under the North Dakota Securities Act nor subject to any exemption from registration.

552.    The CVC tokens were offered or sold in the State of North Dakota, including without limitation through solicitations directed by Civic to North Dakota and received in North Dakota.

553.    Accordingly, Civic has violated the North Dakota Securities Act through Civic's sale of unregistered securities.

554.    On information and belief, no Class member who owns the CVC tokens has received a written offer to refund the full amount paid for the CVC tokens, together with interest on such amount for the period from the date of payment by such purchaser down to the date of repayment, nor failed to accept the offer within 30 days of its receipt.  On information and belief, no Class member received such an offer at a time when they did not own the security nor failed to accept the offer within 30 days of its receipt.

555.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action, which commenced within five years after discovery of, or after discovery should have reasonably been made of, Civic's violation of North Dakota law, and seek the consideration paid for any CVC tokens purchased less the amount of any income received on such CVC tokens, together with all taxable court costs, interest as provided in this subsection, and reasonable attorneys' fees, and all other remedies available to them.

556.    Class members who no longer own the CVC tokens seek damages for purchases of CVC tokens in the amount that would be recoverable upon a tender less the value of the securities when the purchaser disposed of them, and interest at the legal rate as provided in N.D.C.C. §10-04-17(2) from the date of disposition, and all other remedies available to them.  This action was initiated within five years after discovery of, or after discovery should have reasonably been made of, Civic's violation of North Dakota law.

**FORTY-EIGHTH CAUSE OF ACTION**
**(NORTH DAKOTA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Sale of Securities**
**N.D.C.C. §10-04-17**
**(Lingham and Smith)**

557.    Plaintiffs reallege the allegations above.

558.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of North Dakota.

559.    Every person who directly or indirectly controls a seller liable under the North Dakota Securities Act for unlawfully selling unregistered securities, as well as any person who "supervises, or serves as an officer, director, or managing partner of a person liable under this section," an individual "who is an employee of or associated with a person liable under this section and who materially aids the conduct giving rise to the liability," as well as every "person that is a broker-dealer, agent, investment adviser, or investment adviser representative that materially aids

the conduct giving rise to the liability," is jointly and severally liable with and to the same extent as the seller, unless that person or individual "did not know, and in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist."  N.D.C.C. §10-04-17(6).

560.    When issued, the CVC tokens were securities within the meaning of N.D.C.C. §10-04-02(19).  Civic sold the CVC tokens to members of the Class in North Dakota.  The CVC tokens were neither registered as required under the North Dakota Securities Act nor subject to any exemption from registration.

561.    The CVC tokens were sold in the State of North Dakota, including without limitation through solicitations directed by Civic to North Dakota and received in North Dakota.

562.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

563.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the North Dakota Securities Act through Civic's sale of unregistered securities.

564.    On information and belief,  no Class member has received a written offer to refund the full amount paid for the CVC tokens, together with interest on such amount for the period from the date of payment by such purchaser down to the date of repayment, nor failed to accept the offer within 30 days of its receipt.  On information and belief, no Class member received such an offer

at a time when they did not own the security nor failed to accept the offer within 30 days of its receipt.

565.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action, which commenced within five years after discovery of, or after discovery should have reasonably been made of, Civic's violation of North Dakota law, and seek the consideration paid for any CVC tokens purchased less the amount of any income received on such CVC tokens, together with all taxable court costs, interest as provided in this subsection, and reasonable attorneys' fees, and all other remedies available to them.

566.    Class members who no longer own the CVC tokens seek damages for purchases of CVC tokens in the amount that would be recoverable upon a tender less the value of the securities when the purchaser disposed of them, and interest at the legal rate as provided in N.D.C.C. §10-04-17(2) from the date of disposition, and all other remedies available to them.  This action was initiated within five years after discovery of, or after discovery should have reasonably been made of, Civic's violation of North Dakota law.

**FORTY-NINTH CAUSE OF ACTION**
**(OHIO STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**Ohio Rev. Code Ann. § 1707.43**
**(Civic.)**

567.    Plaintiffs reallege the allegations above.

568.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Ohio.

569.    The Ohio Securities Act forbids the sale or contract for sale of unregistered securities.  Ohio Rev. Code Ann. § 1707.09 (A) (1).  Any person who unlawfully sells or contracts to sell an unregistered security is liable to the purchaser "in an action at law in any court of

123

competent jurisdiction" for "the full amount paid by the purchaser and for all taxable costs." *Id.* § 1707.43(A).

570.    When issued, the CVC tokens were securities within the meaning of Ohio Rev. Code Ann. § 1707.01(B).  Civic sold the CVC tokens to members of the Class in Ohio.  The CVC tokens were neither registered as required under the Ohio Securities Act nor subject to any exemption from registration.

571.    The CVC tokens were sold in the State of Ohio, including without limitation through solicitations directed by Civic to Ohio and received in Ohio.

572.    On information and belief, no Class member who owns the CVC tokens has received a written offer made two weeks from the date of the contract of sale to take back and refund the full amount of consideration paid for the CVC tokens, nor failed to accept the offer within 30 days of its receipt.  On information and belief, no Class member received such an offer at a time when they did not own the security nor failed to accept the offer within 30 days of its receipt.

573.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action, which commenced within the earliest of two years after discovery of Civic's violations of Ohio law, two years after such discovery should have been made, or five years after the sale or contract for sale, and seek the consideration paid for any CVC tokens purchased, together with all taxable court costs, and all other remedies available to them.

574.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and all other remedies available to them.  This action was

initiated within the earliest of two years after discovery of Civic's violations of Ohio law, two years after such discovery should have been made, or five years after the sale or contract for sale.

### FIFTIETH CAUSE OF ACTION
### (OHIO STATE LAW – ADDITIONAL LIABILITY)
**Joint and Several Liability for Unregistered Sale of Securities**
**Ohio Rev. Code Ann. § 1707.43**
**(Lingham and Smith)**

575.    Plaintiffs reallege the allegations above.

576.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Ohio.

577.    Every person that has "participated in or aided the seller in any way in making" the sale or contract for sale, are "jointly and severally liable" to the purchaser. Ohio Rev. Code Ann. § 1707.43.

578.    When issued, the CVC tokens were securities within the meaning of Ohio Rev. Code Ann. § 1707.01(B). Civic sold the CVC tokens to members of the Class in Ohio.  The CVC tokens were neither registered as required under the Ohio Securities Act nor subject to any exemption from registration.

579.    The CVC tokens were sold in the State of Ohio, including without limitation through solicitations directed by Civic to Ohio and received in Ohio.

580.    Accordingly, the Individual Defendants, as persons who participated in or aided and abetted Civic, have violated the Ohio Securities Act through Civic's sale of unregistered securities.

581.    On information and belief, no Class member who owns the CVC tokens has received a written offer made two weeks from the date of the contract of sale to take back and refund the full amount of consideration paid for the CVC tokens nor failed to accept the offer within 30 days of its receipt.  On information and belief, no Class member received such an offer

at a time when they did not own the security nor failed to accept the offer within 30 days of its receipt.

582.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action, which commenced within the earliest of two years after discovery of Civic's violations of Ohio law, two years after such discovery should have been made, or five years after the sale or contract for sale, and seek the consideration paid for any CVC tokens purchased, together with all taxable court costs, and all other remedies available to them.

583.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and all other remedies available to them.  This action was initiated within the earliest of two years after discovery of Civic's violations of Ohio law, two years after such discovery should have been made, or five years after the sale or contract for sale.

**FIFTY-FIRST CAUSE OF ACTION**
**(OREGON STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**O.R.S. § 59:115**
**(Civic)**

584.    Plaintiffs reallege the allegations above.

585.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Oregon.

586.    The Oregon Securities Act forbids the offer or sale of unregistered securities in the State of Oregon.  O.R.S. § 59:115.  Any person who unlawfully sells an unregistered security "is liable to the purchaser," who may recover "the consideration paid for the security, and interest from the date of payment equal to the greater of the rate of interest specified in ORS 82.010 for judgements for the payment of money or the rate provided in the security if the security in an

interest bearing obligation, less any amount received on the security, or if the purchaser no longer owns the security, damages." *Id.* § 59.115 (2).

587.    When issued, the CVC tokens were securities within the meaning of O.R.S.§ 59.015 (19).  Civic sold the CVC tokens to members of the Class in Oregon.  The CVC tokens were neither registered as required under the Oregon Securities Act nor subject to any exemption from registration.

588.    The CVC tokens were sold in the State of Oregon, including without limitation through solicitations directed by Civic to Oregon and received in Oregon.

589.    On information and belief,  no Class member has received a written offer to refund the consideration paid for the CVC tokens together with interest from the date of payment equal to the greater of the rate of interest specified in ORS 82.010 for judgments for the payment of money or the rate provided in the security if the security is an interest-bearing obligation, less any amount received on the security, nor failed to accept the offer within 30 days of its receipt.  On information and belief, no Class member received such an offer at a time when they did not own the security nor failed to accept the offer in writing within 30 days of its receipt.

590.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing three years prior to the initiation of this action, with interest from the date of payment equal to the greater of the rate of interest specified in ORS 82.010 for judgments for the payment of money or the rate provided in the security if the security is an interest-bearing obligation, less any amount received on the security, together with all other remedies available to them.

591.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens from Civic in the period commencing three years prior to the initiation of this action, in the amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and less interest on such value at the rate of interest specified in ORS 82.010 for judgments for the payment of money from the date of disposition, and all other remedies available to them.

**FIFTY-SECOND CAUSE OF ACTION**
**(OREGON STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Sale of Securities**
**O.R.S. § 59:115 (3)**
**(Lingham and Smith)**

592.    Plaintiffs reallege the allegations above.

593.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Oregon.

594.    Every person who directly or indirectly controls a seller liable under the Oregon Securities Act for unlawfully selling unregistered securities, as well as every "partner, limited liability company manager, including a member who is a manager, officer or director of such seller", "every person occupying a similar status or performing similar functions," and "every person who participated or materially aids in the sale" is liable for unlawfully selling unregistered securities, unless that non-seller "sustains the burden of proof that the non-seller did not know, and, in the exercise of reasonable care could not have known, of the existence of facts on which the liability is based." O.R.S. § 59:115 (3).

595.    When issued, the CVC tokens were securities within the meaning of O.R.S.§ 59.015 (19). Civic sold the CVC tokens to members of the Class in Oregon. The CVC tokens were neither registered as required under the Oregon Securities Act nor subject to any exemption from registration.

128

596.    The CVC tokens were sold in the State of Oregon, including without limitation through solicitations directed by Civic to Oregon and received in Oregon.

597.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.   Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

598.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Oregon Securities Act through Civic's sale of unregistered securities.

599.    On information and belief, no Class member who owns the CVC tokens has received a written offer to refund the consideration paid for the CVC tokens together with interest from the date of payment equal to the greater of the rate of interest specified in ORS 82.010 for judgments for the payment of money or the rate provided in the security if the security is an interest-bearing obligation, less any amount received on the security, nor failed to accept the offer within 30 days of its receipt.   On information and belief, no Class member received such an offer at a time when they did not own the security nor failed to accept the offer in writing within 30 days of its receipt.

600.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing three years prior to the initiation of this action plus interest from the date of payment equal to the greater of the rate of interest specified in ORS 82.010 for judgments for the

payment of money or the rate provided in the security if the security is an interest-bearing obligation, less any amount received on the security, and all other remedies available to them.

601.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing three years prior to the initiation of this action, in the amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and less interest on such value at the rate of interest specified in ORS 82.010 for judgments for the payment of money from the date of disposition, and all other remedies available to them.

**FIFTY-THIRD CAUSE OF ACTION**
**(PUERTO RICO LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**P.R. Laws Ann Tit. 10, § 890**
**(Civic)**

602.    Plaintiffs reallege the allegations above.

603.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in Puerto Rico.

604.    The Uniform Securities Act of Puerto Rico forbids the offer or sale of unregistered securities.  P.R. Ann tit. 10 § 871.  Any person who unlawfully sells an unregistered security "is liable to the person who buys the security" who "may file suit to recover the price paid for the security, in addition to the interest at the rate applicable to judicial awards as provided by the regulations as provided for in P.R. Laws Ann tit. 7, starting on the date in which the payment, costs and reasonable Attorneys' fees were made less the sum of any income received on, upon the tender of the security, or for damages if he no longer owns the security."  *Id.* § 890 (a)(2).

605.    When issued, the CVC tokens were securities within the meaning of P.R. Ann tit. 10 § 881(l).  Civic sold the CVC tokens to members of the Class in Puerto Rico.  The CVC tokens

130

were neither registered as required under the Uniform Securities Act of Puerto Rico nor subject to any exemption from registration.

606.   The CVC tokens were offered or sold in Puerto Rico, including without limitation through solicitations directed by Civic to Puerto Rico and received in Puerto Rico.

607.   Accordingly, Civic has violated the Puerto Rico Securities Act through Civic's sale of unregistered securities.

608.   On information and belief, no Class member who owns the CVC tokens has received a written offer to refund the consideration paid for the CVC tokens together with interest at the rate applicable to judicial awards, as provided for in P.R. Laws Ann tit. 7, as of the date the payment was made, less the amount of any income earned on the security, nor failed to accept the offer within 30 days of its receipt.  On information and belief, no Class member received such an offer at a time when they did not own the security, nor failed to reject the offer in writing within 30 days of its receipt.

609.   Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action, in addition to the interest at the rate applicable to judicial awards as provided for in P.R. Laws Ann tit. 7, starting on the date in which the payment, costs and reasonable attorneys' fees were made less the sum of any income received on, upon the tender of the security and all other remedies available to them.

610.   Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount that would be recoverable upon returning the security, less its price when the buyer disposed of it

plus interest at the rate applicable to judicial awards as provided for in P.R. Laws Ann tit. 7, as of the date such security was disposed of, and all other remedies available to them.

**FIFTY-FOURTH CAUSE OF ACTION**
**(PUERTO RICO LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Offer and Sale of Securities**
**P.R. Laws Ann Tit. 10, § 890**
**(Lingham and Smith)**

611.     Plaintiffs reallege the allegations above.

612.     This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in Puerto Rico.

613.     Every person who directly or indirectly controls a seller liable under the Uniform Securities Act of Puerto Rico for unlawfully selling unregistered securities, as well as "every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale" is liable "unless the non-seller who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist."  P.R. Laws Ann. tit. 10 § 890 (a)(2).

614.     When issued, the CVC tokens were securities within the meaning of P.R. Laws Ann. tit. 10, § 881(l). Civic sold or solicited purchases of the CVC tokens to members of the Class in Puerto Rico.  The CVC tokens were neither registered as required under the Puerto Rico Securities Act nor subject to any exemption from registration.

615.     The CVC tokens were offered or sold in Puerto Rico, including without limitation through solicitations directed by Civic to Puerto Rico and received in Puerto Rico.

616.     Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged

herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

617.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Uniform Securities Act of Puerto Rico through Civic's sale of unregistered securities.

618.    On information and belief,  no Class member has received a written offer to refund the consideration paid for the CVC tokens together with interest at the rate applicable to judicial awards, as provided by the regulations approved to such effects by the Financing Board created by§§ 2001 et seq. of Title 7, as of the date the payment was made, less the amount of any income earned on the security, nor failed to accept the offer within 30 days of its receipt.  On information and belief, no Class member received such an offer at a time when they did not own the security, nor failed to reject the offer in writing within 30 days of its receipt.

619.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action, in addition to the interest at the rate applicable to judicial awards as provided by the regulations approved to such effects the Financing Board created by §§ 2001 et seq. of Title 7, starting on the date in which the payment, costs and reasonable attorneys' fees were made less the sum of any income received on, upon the tender of the security, and all other remedies available to them.

620.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount

that would be recoverable upon returning the security, less its price when the buyer disposed of it plus interest at the rate applicable to judicial awards as provided through regulations approved to such effects by the Financing Board created by §§ 2001 et seq. of Title 7, as of the date such security was disposed of, and all other remedies available.

### FIFTY-FIFTH CAUSE OF ACTION
### (PENNSYLVANIA STATE LAW – PRIMARY LIABILITY)
### Unregistered Offer and Sale of Securities
### 70 P.S. § 1-502
### (Civic)

621.     Plaintiffs reallege the allegations above.

622.     This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the Commonwealth of Pennsylvania.

623.     The Pennsylvania Securities Act of 1972 forbids the offer or sale of unregistered securities.  70 P.S.§ 1-201.  Any person who unlawfully offers or sells an unregistered security is liable "to the person purchasing the security" who "may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment, less the amount of any income or distributions, in cash or in kind, received on the security, upon the tender of the security, or for damages if he no longer owns the security."  *Id.* § 1-502.

624.     When issued, the CVC tokens were securities within the meaning of 70 P.S. § 102 (t).  Civic sold the CVC tokens to members of the Class in Pennsylvania.  The CVC tokens were neither registered as required under the Pennsylvania Securities Act of 1972 nor subject to any exemption from registration.

625.     The CVC tokens were offered or sold in the Commonwealth of Pennsylvania, including without limitation through solicitations directed by Civic to Pennsylvania and received in Pennsylvania.

626.    Accordingly, Civic has violated the Pennsylvania Securities Act of 1972 through Civic's offer and sale of unregistered securities.

627.    On information and belief, no Class member who owns the CVC tokens has received a written offer to repurchase the security for cash, equal to the consideration paid for the CVC tokens, together with interest at the legal rate from the date of payment, less the amount of income or distributions, in cash or kind, received upon payment of the consideration received for the CVC tokens, nor failed to accept the offer in writing within 30 days of its receipt.

628.    On information and belief, no Class member who no longer owns the CVC tokens has received a written offer to pay an amount in cash equal to the damages computed in accordance with section 501 (a), nor failed to accept the offer in writing within 30 days of its receipt.

629.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action, which commenced within the earliest of one year after the discovery of Civic's violation of Pennsylvania law, one year after such discovery should have been made by exercise of reasonable diligence, or two years after Civic's violations, and seek the consideration paid for any CVC tokens purchased, together with interest at the legal rate from the date of payment, less the amount of any income or distributions, in cash or in kind, received on the security, upon the tender of the security and all other remedies available to them.

630.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens together with the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it and interest at the legal rate from the date of disposition of, and all other remedies available to them.  This action was initiated within the earliest of one year after the discovery of Civic's violation of Pennsylvania law, one year after such

discovery should have been made by exercise of reasonable diligence, or two years after Civic's violations.

**FIFTY-SIXTH CAUSE OF ACTION**
**(PENNSYLVANIA STATE LAW – ADDITIONAL LIABILITY)**
**Joint and Several Liability for Unregistered Offer and Sale of Securities**
**70 P.S. § 1-503**
**(Lingham and Smith)**

631.    Plaintiffs reallege the allegations above.

632.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the Commonwealth of Pennsylvania.

633.    Every "affiliate of a person liable," every "partner, principal executive officer or director of such person, every person occupying a similar status or performing similar functions, every employee who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation" is liable "unless the person liable hereunder proves that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist."  70 P.S. § 1-503 (a).

634.    When issued, the CVC tokens were securities within the meaning of 70 P.S. § 102 (t).  Civic sold or solicited purchases of the CVC tokens to members of the Class in Pennsylvania.  The CVC tokens were neither registered as required under the Pennsylvania Securities Act of 1972, nor subject to any exemption from registration.

635.    The CVC tokens were offered or sold in the Commonwealth of Pennsylvania, including without limitation through solicitations directed by Civic to Pennsylvania and received in Pennsylvania.

636.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged

herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

637.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Pennsylvania Securities Act of 1972 through Civic's offer for sale or sale of unregistered securities.

638.    On information and belief, no Class member who owns the CVC tokens has received a written offer to repurchase the security for cash, equal to the consideration paid for the CVC tokens, together with interest at the legal rate from the date of payment, less the amount of income or distributions, in cash or kind, received upon payment of the consideration received for the CVC tokens, nor failed to accept the offer in writing within 30 days of its receipt.

639.    On information and belief, no Class member who no longer owns the CVC tokens has received a written rescission offer offering to pay an amount in cash equal to the damages computed in accordance with section 501(a), nor failed to accept the offer in writing within 30 days of its receipt.

640.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action, which commenced within the earliest of one year after the discovery of Civic's violation of Pennsylvania law, one year after such discovery should have been made by exercise of reasonable diligence, or two years after Civic's violations, and seek the consideration paid for any CVC tokens purchased, together with interest at the legal rate from the date of payment, less the amount of any income or distributions, in cash or in kind, received on the security, upon the tender of the security and all other remedies available to them.

641.   Class members who no longer own CVC tokens seek damages for purchases of CVC tokens together with the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it and interest at the legal rate from the date of disposition of, and all other remedies available to them.  This action was initiated within the earliest of one year after the discovery of Civic's violation of Pennsylvania law, one year after such discovery should have been made by exercise of reasonable diligence, or two years after Civic's violations.

**FIFTY-SEVENTH CAUSE OF ACTION**
**(RHODE ISLAND STATE LAW – PRIMARY LIABILITY)**
**Unregistered Sale of Securities**
**RI Gen L § 7-11-605**
**(Civic)**

642.   Plaintiffs reallege the allegations above.

643.   This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Rhode Island.

644.   The Rhode Island Uniform Securities Act forbids the offer or sale of unregistered securities.  RI Gen L § 7-11-301.  Any person who unlawfully sells an unregistered security "is liable to the purchaser," who "may recover the consideration paid for the security, and interest at the legal rate of this state from the date of payment, costs, and reasonable attorneys' fees as determined by the court, less the amount of income received on the security."  If the purchaser no longer owns the security the purchaser "may recover damages" in the "amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, plus interest at the legal rate of this state from the date of disposition of the security, costs, and reasonable attorneys' fees as determined by the court."  *Id.* § 7-11-605(a).

645.   When issued, the CVC tokens were securities within the meaning of RI Gen L § 7-11-101(22).  Civic sold the CVC tokens to members of the Class in Rhode Island.  The CVC tokens

were neither registered as required under the Rhode Island Uniform Securities Act nor subject to any exemption from registration.

646.   The CVC tokens were offered or sold in the State of Rhode Island, including without limitation through solicitations directed by Civic to Rhode Island and received in Rhode Island.

647.   Accordingly, Civic has violated the Rhode Island Uniform Securities Act through Civic's sale of unregistered securities.

648.   On information and belief, no Class member who owns the CVC tokens has received a written offer to repurchase the CVC tokens for cash, payable on delivery of the security, equal to the consideration paid for the CVC tokens, plus interest at the legal rate of this state from the date of payment, less income received on the security, nor failed to accept the offer in writing within the time period specified in the offer.

649.   On information and belief, no Class member who no longer owns the CVC tokens has received a written offer to pay the purchaser upon acceptance of the offer an amount in cash equal to the damages computed under § 7-11-605(a), nor failed to accept the offer in withing within the time period specified in the offer.

650.   Class members who currently own CVC tokens have made any necessary tender at the initiation of this action, which commenced within the earliest of one year after discovery of Civic's violation of Rhode Island law, one year after discovery should have been made by the exercise of reasonable care, or three years after Civic's violations, and seek the consideration paid for any CVC tokens purchased, plus interest thereon at the legal rate of this state from the date of payment, less the amount of any income received on the CVC tokens, costs, and reasonable attorneys' fees as determined by the court, and all other remedies available to them.

651.     Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest at the legal rate of interest from the date of purchase, costs, and reasonable attorneys' fees determined by the court, and all other remedies available to them.  This action was initiated within the earliest of one year after discovery of Civic's violation of Rhode Island law, one year after discovery should have been made by the exercise of reasonable care, or three years after Civic's violations.

**FIFTY-EIGHTH CAUSE OF ACTION**
**(RHODE ISLAND STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Sale of Securities**
**RI Gen L § 7-11—605(d)**
**(Lingham and Smith)**

652.     Plaintiffs reallege the allegations above.

653.     This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Rhode Island.

654.     Every person who directly or indirectly controls a seller liable under the Rhode Island Uniform Securities Act for unlawfully selling unregistered securities, as well as every "partner, officer, or director of the person liable," "a person occupying a similar status or performing similar functions, an employee of the person liable if the employee materially aids in the act, omission or transaction constituting the violation, and a broker dealer or sales representative who materially aids in the act, omission, or transaction constituting the violation" is jointly and severally liable with and to the same extent as the seller, unless that person "did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by which the liability is alleged to exist."  RI Gen L § 7-11-605 (d).

655.     When issued, the CVC tokens were securities within the meaning of RI Gen L § 7-11-101(22).  Civic sold the CVC tokens to members of the Class in Rhode Island.  The CVC tokens

were neither registered as required under the Rhode Island Uniform Securities Act nor subject to any exemption from registration.

656.    The CVC tokens were sold in the State of Rhode Island, including without limitation through solicitations directed by Civic to Rhode Island and received in Rhode Island.

657.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful offer for sale or sales of unregistered securities as described herein.

658.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Rhode Island Securities Act through Civic's sale or sale of unregistered securities.

659.    On information and belief, no Class member who owns the CVC tokens has received a written offer to repurchase the CVC tokens for cash, payable on delivery of the security, equal to the consideration paid for the CVC tokens, plus interest at Rhode Island's legal rate from the date of payment, less income received on the security, nor failed to accept the offer within the time period specified in the offer.

660.    On information and belief, no Class member who no longer owns the CVC tokens has received a written offer to pay the purchaser upon acceptance of the offer an amount in cash equal to the damages computed under § 7-11-605(a), nor failed to accept the offer nor failed to accept the offer in withing within the time period specified in the offer.

661.     Class members who currently own CVC tokens have made any necessary tender at the initiation of this action, which commenced within the earliest of one year after discovery of Civic's violation of Rhode Island law, one year after discovery should have been made by the exercise of reasonable care, or three years after Civic's violations, and seek the consideration paid for any CVC tokens purchased, plus interest thereon at the legal rate of this state from the date of payment, less the amount of any income received on the CVC tokens, costs, and reasonable attorneys' fees as determined by the court, and all other remedies available to them.

662.     Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest at the legal rate of interest from the date of purchase, costs, and reasonable attorneys' fees determined by the court, and all other remedies available to them.  This action was initiated within the earliest of one year after discovery of Civic's violation of Rhode Island law, one year after discovery should have been made by the exercise of reasonable care, or three years after Civic's violations.

### FIFTY-NINTH CAUSE OF ACTION
### (SOUTH CAROLINA STATE LAW – PRIMARY LIABILITY)
### Unregistered Sale of Securities
### S.C. Code Ann. § 35-1-509
### (Civic)

663.     Plaintiffs reallege the allegations above.

664.     This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of South Carolina.

665.     The South Carolina Uniform Securities Act of 2005 forbids the offer or sale of unregistered securities.  S.C. Code § 35-1-301.  Any person who unlawfully sells an unregistered security "is liable to the purchaser," who "may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at the

legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees determined by the Court, upon the tender of the security, or for actual damages." *Id.* § 35-1-509(b).

666.    When issued, the CVC tokens were securities within the meaning of S.C. Code § 35-1-102(29).  Civic sold the CVC tokens to members of the Class in South Carolina.  The CVC tokens were neither registered as required under the South Carolina Uniform Securities Act of 2005 nor subject to any exemption from registration.

667.    The CVC tokens were sold in the State of South Carolina, including without limitation through solicitations directed by Civic to South Carolina and received in South Carolina.

668.    Accordingly, Civic has violated the South Carolina Uniform Securities Act of 2005 through Civic's sale of unregistered securities.

669.    On information and belief, no Class member who owns the CVC tokens has received an offer to refund the consideration paid for the CVC tokens together with all commissions and fees, and interest at the legal rate of interest from the date of the purchase, less the amount of any income received on the security nor failed to accept the offer within the time period specified in the offer.

670.    On information and belief, no Class member who no longer owns the CVC tokens has received an offer to pay damages in an amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it, and interest at the legal rate of interest from the date of the purchase in cash equal to the damages computed in the manner provided in the South Carolina Uniform Securities Act of 2005, nor failed to accept the offer within the time period specified in the offer.

671.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the

period commencing three years prior to the initiation of this action, less the amount of any income received on such tokens, and interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees determined by the Court; and all other remedies available to them.

672.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens from Civic in the period commencing three years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest at the legal rate of interest from the date of the purchase, costs, and reasonable attorneys' fees determined by the Court, and all other remedies available to them.

**SIXTIETH CAUSE OF ACTION**
**(SOUTH CAROLINA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Sale of Securities**
**S.C. Code Ann. § 35-1-509**
**(Lingham and Smith)**

673.    Plaintiffs reallege the allegations above.

674.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of South Carolina.

675.    Every person who directly or indirectly controls a seller liable under the South Carolina Uniform Securities Act of 2005 for unlawfully selling unregistered securities, as well as every "individual who is a managing partner, executive officer, or director" or "who is an employee, or a person occupying a similar status or performing a similar function" of a seller liable for unlawfully selling unregistered securities, as well as every "person that is a broker-dealer, agent, investment adviser, or investment adviser representative that materially aids the conduct giving rise to the liability," is jointly and severally liable with and to the same extent as the seller, unless that person or individual "sustains the burden of proof that the person did not know, and in

144

the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist."  S.C. Code Ann. § 35-1-509(g)(1)-(4).

676.   When issued, the CVC tokens were securities within the meaning of S.C. Code § 35-1-102(29).  Civic sold the CVC tokens to members of the Class in South Carolina.  The CVC tokens were neither registered as required under the South Carolina Uniform Securities Act of 2005 nor subject to any exemption from registration.

677.   The CVC tokens were sold in the State of South Carolina, including without limitation through solicitations directed by Civic to South Carolina and received in South Carolina.

678.   Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

679.   Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the South Carolina Uniform Securities Act of 2005 through Civic's sale of unregistered securities.

680.   On information and belief, no Class member who owns the CVC tokens has received a written offer to refund the consideration paid for the CVC tokens together with all commissions and fees, and interest at the legal rate of interest from the date of purchase, less the amount of any income received on the security, nor failed to accept the offer within the time period specified in the offer.

681.    On information and belief, no Class member who no longer owns the CVC tokens has received an offer to pay damages in an amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it, and interest at the legal rate of interest from the date of the purchase in cash equal to the damages computed in the manner provided in the South Carolina Uniform Securities Act of 2005, nor failed to accept the offer within the time period specified in the offer.

682.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing three years prior to the initiation of this action plus interest thereon at the legal rate from the date of payment, less the amount of any income received on  the CVC tokens, costs, and reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances; and all other remedies available to them.

683.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing three years prior to the initiation of this action, in the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest at the legal rate of interest from the date of purchase, costs, and reasonable attorneys' fees determined by the Court, and all other remedies available to them.

### SIXTY-FIRST CAUSE OF ACTION
### (TEXAS STATE LAW – PRIMARY LIABILITY)
### Unregistered Offer and Sale of Securities
### Tex. Rev. Civ. Stat. art. 581-33
### (Civic)

684.    Plaintiffs reallege the allegations above.

685.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Texas.

686.    The Texas Securities Act forbids the offer or sale of unregistered securities.  Tex. Rev. Civ. Stat. art. 581-7(A)(1).  Any person who unlawfully offers or sells an unregistered security "is liable to the person buying the security from him, who may sue either at law or in equity for rescission or for damages if the buyer no longer owns the security."  *Id.* art. 581-33(A)(1).

687.    When issued, the CVC tokens were securities within the meaning of Tex. Rev. Civ. Stat. art. 581-4(A).  Civic sold or solicited purchases of the CVC tokens to members of the Class in Texas.  The CVC tokens were neither registered as required under the Texas Securities Act nor subject to any exemption from registration.

688.    The CVC tokens were offered or sold in the State of Texas, including without limitation through solicitations directed by Civic to Texas and received in Texas.

689.    Accordingly, Civic has violated the Texas Securities Act through Civic's sale of unregistered securities.

690.    On information and belief,  no Class member has received a rescission offer to refund the consideration paid for the CVC tokens that also meets the requirements of Tex. Rev. Civ. Stat. Ann. art. 581-33(I).

691.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing three years prior to the initiation of this action plus interest thereon at the legal rate from the date of payment, less the amount of any income received on the CVC tokens, costs, and reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances; together with all other remedies available to them.

692.     Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing three years prior to the initiation of this action, in the amount of the consideration the buyer paid for the CVC tokens plus interest thereon at the legal rate from the date of payment by the buyer, less the greater of: (i) the value of the CVC tokens at the time the buyer disposed of them plus the amount of any income the buyer received on the CVC tokens; or (ii) the actual consideration received for the CVC tokens at the time the buyer disposed of them plus the amount of any income the buyer received on the CVC tokens; together with costs, reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances, and all other remedies available to them.

## SIXTY-SECOND CAUSE OF ACTION
## (TEXAS STATE LAW – ADDITIONAL LIABILITY)
### Control Person Liability for Unregistered Offer and Sale of Securities
### Tex. Rev. Civ. Stat. art. 581-33
### (Lingham and Smith)

693.     Plaintiffs reallege the allegations above.

694.     This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Texas.

695.     Every person who directly or indirectly controls a seller liable under the Texas Securities Act for unlawfully selling unregistered securities is jointly and severally liable with and to the same extent as the seller, unless the controlling person "sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." Tex. Rev. Civ. Stat. art. 581-33(F).

696.     When issued, the CVC tokens were securities within the meaning of Tex. Rev. Civ. Stat. art. 581-4(A).  Civic sold or solicited purchases of the CVC tokens to members of the Class in Texas.  The CVC tokens were neither registered as required under the Texas Securities Act nor subject to any exemption from registration.

697.    The CVC tokens were offered or sold in the State of Texas, including without limitation through solicitations directed by Civic to Texas and received in Texas.

698.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

699.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Texas Securities Act through Civic's sale of unregistered securities.

700.    On information and belief,  no Class member has received a rescission offer to refund the consideration paid for the CVC tokens that also meets the requirements of Tex. Rev. Civ. Stat. Ann. art. 581-33(I).

701.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing three years prior to the initiation of this action plus interest thereon at the legal rate from the date of payment, less the amount of any income received on the CVC tokens, costs, and reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances; together with all other remedies available to them.

702.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing three years prior to the initiation of this action, in the amount of the consideration the buyer paid for the CVC tokens plus interest thereon at the legal

rate from the date of payment by the buyer, less the greater of: (i) the value of the CVC tokens at the time the buyer disposed of them plus the amount of any income the buyer received on the CVC tokens; or (ii) the actual consideration received for the CVC tokens at the time the buyer disposed of them plus the amount of any income the buyer received on the CVC tokens; together with costs, reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances, and all other remedies available to them.

### SIXTY-THIRD CAUSE OF ACTION
### (TENNESSEE STATE LAW – PRIMARY LIABILITY)
### Unregistered Sale of Securities
### Tenn. Code Ann. § 48-1-122
### (Civic)

703.    Plaintiffs reallege the allegations above.

704.    This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Tennessee.

705.    The Tennessee Securities Act of 1980 forbids the sale of unregistered securities. Tenn. Code Ann. § 48-1-104.  Any person who unlawfully sells an unregistered security "shall be liable to the person purchasing the security from the seller to recover the consideration paid for the security, together with interest at the legal rate from the date of payment, less the amount of any income received on the security, upon the tender of the security, or, if the purchaser no longer owns the security, the amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and interest at the legal rate from the date of disposition." *Id.* § 48-1-122(a)(1).

706.    When issued, the CVC tokens were securities within the meaning of Tenn. Code Ann. § 48-1-102(20)(A).  Civic sold the CVC tokens to members of the Class in Tennessee.  The CVC tokens were neither registered as required under the Tennessee Securities Act of 1980 nor subject to any exemption from registration.

707.     The CVC tokens were sold in the State of Tennessee, including without limitation through solicitations directed by Civic to Tennessee and received in Tennessee.

708.     Accordingly, Civic has violated the Tennessee Securities Act of 1980 through Civic's sale of unregistered securities.

709.     Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action plus interest thereon at the legal rate from the date of payment, less the amount of any income received on the CVC tokens, and costs; together with all other remedies available to them.

710.     Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount that would be recoverable upon a tender, less the value of the CVC Tokens when the purchaser disposed of them and interest at the legal rate from the date of disposition; together with costs, and all other remedies available to them.

**SIXTY-FOURTH CAUSE OF ACTION**
**(TENNESSEE STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Sale of Securities**
**Tenn. Code Ann. § 48-1-122**
**(Lingham and Smith)**

711.     Plaintiffs reallege the allegations above.

712.     This Cause of Action is brought on behalf of Class members who purchased CVC tokens in the State of Tennessee.

713.     Every person who directly or indirectly controls a person liable under the Tennessee Securities Act of 1980 for unlawfully selling unregistered securities is jointly and severally liable with and to the same extent as the seller, unless the controlling person "proves that the person who would be liable did not know, and in the exercise of reasonable care could not have known, of the

existence of the facts by reason of which the liability is alleged to exist."  Tenn. Code Ann. § 48-1-122(g).

714.    When issued, the CVC tokens were securities within the meaning of Tenn. Code Ann. § 48-1-102(20)(A).  Civic sold the CVC tokens to members of the Class in Tennessee.  The CVC tokens were neither registered as required under the Tennessee Securities Act of 1980 nor subject to any exemption from registration.

715.    The CVC tokens were sold in the State of Tennessee, including without limitation through solicitations directed by Civic to Tennessee and received in Tennessee.

716.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

717.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Tennessee Securities Act of 1980 through Civic's sale of unregistered securities.

718.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action plus interest thereon at the legal rate from the date of payment, less the amount of any income received on the CVC tokens, and costs; together with all other remedies available to them.

719.     Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount that would be recoverable upon a tender, less the value of the CVC Tokens when the purchaser disposed of them and interest at the legal rate from the date of disposition; together with costs and all other remedies available to them.

**SIXTY-FIFTH CAUSE OF ACTION**
**(UTAH STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Utah Code Ann. § 61-1-22**
**(Civic)**

720.     Plaintiffs reallege the allegations above.

721.     This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Utah.

722.     The Utah Uniform Securities Act forbids the offer or sale of unregistered securities. Utah Code Ann. § 61-1-7.  Any person who unlawfully offers or sells an unregistered security "is liable to the purchaser for the consideration paid for the security, together with interest at 12% per year from the date of payment, costs, and reasonable attorney fees, less the amount of income received on the security, upon the tender of the security or for damages if the person no longer owns the security." *Id.* § 61-1-22(1)(b).

723.     When issued, the CVC tokens were securities within the meaning of Utah Code Ann. § 61-1-13(1)(ee).  Civic sold or solicited purchases of the CVC tokens to members of the Class in Utah.  The CVC tokens were neither registered as required under the Utah Uniform Securities Act nor subject to any exemption from registration.

724.     The CVC tokens were offered or sold in the State of Utah, including without limitation through solicitations directed by Civic to Utah and received in Utah.

725.     Accordingly, Civic has violated the Utah Uniform Securities Act through Civic's sale of unregistered securities.

726.     On information and belief,  no Class member has received a rescission offer to refund the consideration paid for the CVC tokens together with interest at 12 percent per year from the date of payment, less the amount of any income received on the security, under Utah Code Ann. § 61-1-22(7)(b)(i-ii), nor have they failed to accept such an offer within 30 days of its receipt.

727.     Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action plus interest thereon at 12 percent per year from the date of payment, less the amount of any income received on the CVC tokens, costs, and reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances; together with all other remedies available to them.

728.     Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount of the consideration the buyer paid for the CVC tokens plus interest thereon at 12 percent per year from the date of purchase by the buyer to date of disposition, and after that period 12 percent per year on the amount lost at disposition less the value of the CVC tokens at the time the buyer disposed; together with costs, reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances, and all other remedies available to them.

**SIXTY-SIXTH CAUSE OF ACTION**
**(UTAH STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Offer and Sale of Securities**
**Utah Code Ann. § 61-1-22**
**(Lingham and Smith)**

729.     Plaintiffs reallege the allegations above.

154

730.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Utah.

731.    Every person who directly or indirectly controls a seller liable under the Utah Uniform Securities Act for unlawfully selling unregistered securities is jointly and severally liable with and to the same extent as the seller, unless the controlling person "sustains the burden of proof that the non-seller or nonpurchaser did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." Utah Code Ann. § 61-1-22(4)(a).

732.    When issued, the CVC tokens were securities within the meaning of Utah Code Ann. § 61-1-13(1)(ee).  Civic sold or solicited purchases of the CVC tokens to members of the Class in Utah.  The CVC tokens were neither registered as required under the Utah Uniform Securities Act nor subject to any exemption from registration.

733.    The CVC tokens were offered or sold in the State of Utah, including without limitation through solicitations directed by Civic to Utah and received in Utah.

734.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

735.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Utah Uniform Securities Act through Civic's sale of unregistered securities.

736.   On information and belief,  no Class member has received a rescission offer to refund the consideration paid for the CVC tokens together with interest at 12 percent per year from the date of payment, less the amount of any income received on the security, under Utah Code Ann. § 61-1-22(7)(b)(i-ii), nor have they failed to accept such an offer within 30 days of its receipt.

737.   Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action plus interest thereon at 12 percent per year from the date of payment, less the amount of any income received on the CVC tokens, costs, and reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances; together with all other remedies available to them.

738.   Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action, in the amount of the consideration the buyer paid for the CVC tokens plus interest thereon at 12 percent per year from the date of purchase by the buyer to date of disposition, and after that period 12 percent per year on the amount lost at disposition less the value of the CVC tokens at the time the buyer disposed; together with costs, reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances, and all other remedies available to them.

### SIXTY-SEVENTH CAUSE OF ACTION
### (VIRGINIA STATE LAW – PRIMARY LIABILITY)
### Unregistered Offer and Sale of Securities
### VA ST § 13.1-522
### (Civic)

739.   Plaintiffs reallege the allegations above.

740.   This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the Commonwealth of Virginia.

741. The Virginia Securities Act forbids the offer or sale of unregistered securities. Va. Code Ann. § 13.1-507. Any person who unlawfully offers or sells an unregistered security "shall be liable to the person purchasing such security from him who may sue either at law or in equity to recover the consideration paid for such security, together with interest thereon at the annual rate of six percent, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of such security, or for the substantial equivalent in damages if he no longer owns the security" *Id.* § 13.1-522(A).

742. When issued, the CVC tokens were securities within the meaning of Va. Code Ann. § 13.1-501. Civic sold or solicited purchases of the CVC tokens to members of the Class in Virginia. The CVC tokens were neither registered as required under the Virginia Securities Act nor subject to any exemption from registration.

743. The CVC tokens were offered or sold in the Commonwealth of Virginia, including without limitation through solicitations directed by Civic to Virginia and received in Virginia.

744. Accordingly, Civic has violated the Virginia Securities Act through Civic's sale of unregistered securities.

745. On information and belief, no Class member has received a rescission offer to refund the consideration paid, together with interest thereon at the annual rate of six percent, less the amount of any income received on the CVC Tokens, or to pay damages if the purchaser no longer owns the security under Va. Code Ann. § 13.1-522(D), nor have they failed to accept such offer within thirty days of its receipt

746. Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action plus interest thereon at the annual

rate of six percent from the date of payment, less the amount of any income received on the CVC tokens, costs, and reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances; together with all other remedies available to them.

747.    Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action; together with costs, reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances, and all other remedies available to them.

**SIXTY-EIGHTH CAUSE OF ACTION**
**(VIRGINIA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Offer and Sale of Securities**
**Va. Code Ann. § 13.1-522**
**(Lingham and Smith)**

748.    Plaintiffs reallege the allegations above.

749.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the Commonwealth of Virginia.

750.    Every person who directly or indirectly controls a seller liable under the Virginia Securities Act for unlawfully selling unregistered securities is jointly and severally liable with and to the same extent as the seller, unless the controlling person is "able to sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist."  Va. Code Ann. § 13.1-522(C).

751.    When issued, the CVC tokens were securities within the meaning of Va. Code Ann. § 13.1-501.  Civic sold or solicited purchases of the CVC tokens to members of the Class in Virginia.  The CVC tokens were neither registered as required under the Virginia Securities Act nor subject to any exemption from registration.

752.    The CVC tokens were offered or sold in the Commonwealth of Virginia, including without limitation through solicitations directed by Civic to Virginia and received in Virginia.

753.   Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.   Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

754.   Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Virginia Securities Act through Civic's sale of unregistered securities.

755.   On information and belief,  no Class member has received a rescission offer to refund the consideration paid, together with interest thereon at the annual rate of six percent, less the amount of any income received on the CVC Tokens, or to pay damages if the purchaser no longer owns the security under Va. Code Ann. § 13.1-522(D), nor have they failed to accept such offer within thirty days of its receipt

756.   Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing two years prior to the initiation of this action plus interest thereon at annual rate of six percent from the date of payment, less the amount of any income received on the CVC tokens, costs, and reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances; together with all other remedies available to them.

757.   Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing two years prior to the initiation of this action; together with

costs, reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances, and all other remedies available to them.

**SIXTY-NINTH CAUSE OF ACTION**
**(WASHINGTON STATE LAW – PRIMARY LIABILITY)**
**Unregistered Offer and Sale of Securities**
**Wash. Rev. Code § 21.20.430**
**(Civic)**

758.    Plaintiffs reallege the allegations above.

759.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Washington.

760.    The Securities Act of Washington forbids the offer or sale of unregistered securities.  Wash. Rev. Code Ann. § 21.20.140.  Any person who unlawfully offers or sells an unregistered security "is liable to the person buying the security from him or her, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he or she no longer owns the security.  Damages are the amount that would be recoverable upon a tender less (a) the value of the security when the buyer disposed of it and (b) interest at eight percent per annum from the date of disposition."  *Id.* § 21.20.430(1).

761.    When issued, the CVC tokens were securities within the meaning of Wash. Rev. Code Ann. § 21.20.005(17)(a).  Civic sold or solicited purchases of the CVC tokens to members of the Class in Washington.  The CVC tokens were neither registered as required under the Securities Act of Washington nor subject to any exemption from registration.

762.    The CVC tokens were offered or sold in the State of Washington, including without limitation through solicitations directed by Civic to Washington and received in Washington.

763.     Accordingly, Civic has violated the Securities Act of Washington through Civic's sale of unregistered securities.

764.     On information and belief,  no Class member has received a rescission offer which has been passed upon by the director before suit and at a time when he or she owned the CVC Tokens, to refund the consideration paid together with interest at eight percent per annum from the date of payment, less the amount of any income received on the CVC Tokens under Wash. Rev. Code Ann. § 21.20.430(4)(b).

765.     Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing three years prior to the initiation of this action plus interest thereon at eight percent per annum from the date of payment, less the amount of any income received on the CVC tokens, costs, and reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances; together with all other remedies available to them.

766.     Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing three years prior to the initiation of this action, the amount that would be recoverable upon a tender less (a) the value of the CVC Tokens when the buyer disposed of it and (b) interest at eight percent per annum from the date of disposition.; together with costs, reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances, and all other remedies available to them.

### SEVENTIETH CAUSE OF ACTION
### (WASHINGTON STATE LAW – ADDITIONAL LIABILITY)
**Control Person Liability for Unregistered Offer and Sale of Securities
Wash. Rev. Code Ann. § 21.20.430
(Lingham and Smith)**

767.     Plaintiffs reallege the allegations above.

768.    This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of Washington.

769.    Every person who directly or indirectly controls a seller liable under the Securities Act of Washington for unlawfully selling unregistered securities is jointly and severally liable with and to the same extent as the seller, unless the controlling person "sustains the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist."  Wash. Rev. Code Ann. § 21.20.430(3).

770.    When issued, the CVC tokens were securities within the meaning of Wash. Rev. Code Ann. § 21.20.005(17)(a).  Civic sold or solicited purchases of the CVC tokens members of the Class in Washington.  The CVC tokens were neither registered as required under the Securities Act of Washington nor subject to any exemption from registration.

771.    The CVC tokens were offered or sold in the State of Washington, including without limitation through solicitations directed by Civic to Washington and received in Washington.

772.    Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

773.    Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the Securities Act of Washington through Civic's sale of unregistered securities.

162

774.     On information and belief,  no Class member has received a rescission offer which has been passed upon by the director before suit and at a time when he or she owned the CVC Tokens, to refund the consideration paid together with interest at eight percent per annum from the date of payment, less the amount of any income received on the CVC Tokens under Wash. Rev. Code Ann. § 21.20.430(4)(b).

775.     Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing three years prior to the initiation of this action plus interest thereon at eight percent per annum from the date of payment, less the amount of any income received on the CVC tokens, costs, and reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances; together with all other remedies available to them.

776.     Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing three years prior to the initiation of this action, the amount that would be recoverable upon a tender less (a) the value of the CVC Tokens when the buyer disposed of it and (b) interest at eight percent per annum from the date of disposition.; together with costs, reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances, and all other remedies available to them.

### SEVENTY-FIRST CAUSE OF ACTION
### (WEST VIRGINIA STATE LAW – PRIMARY LIABILITY)
### Unregistered Offer and Sale of Securities
### W. Va. Code Ann. § 32-4-410
### (Civic)

777.     Plaintiffs reallege the allegations above.

778.     This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of West Virginia.

779.    The West Virginia Uniform Securities Act forbids the offer or sale of unregistered securities.   W. Va. Code Ann. § 32-3-301. Any person who unlawfully offers or sells an unregistered security "is liable to the person buying the security from him, who may assert a claim in a civil action to recover the consideration paid for the security, together with interest at nine percent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security.  Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at nine percent per year from the date of disposition." *Id.* § 32-4-410(a)(1-2).

780.    When issued, the CVC tokens were securities within the meaning of W. Va. Code Ann. § 32-4-401(n).  Civic sold or solicited purchases of the CVC tokens to members of the Class in West Virginia.  The CVC tokens were neither registered as required under the West Virginia Uniform Securities Act nor subject to any exemption from registration.

781.    The CVC tokens were offered or sold in the State of West Virginia, including without limitation through solicitations directed by Civic to West Virginia and received in West Virginia.

782.    Accordingly, Civic has violated the West Virginia Uniform Securities Act through Civic's sale of unregistered securities.

783.    Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing three years prior to the initiation of this action plus interest thereon nine percent per year from the date of payment, less the amount of any income received on the CVC

tokens, costs, and reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances; together with all other remedies available to them.

784. Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing three years prior to the initiation of this action, the amount that would be recoverable upon a tender less the value of the CVC Token when the buyer disposed of it and interest at nine percent per year from the date of disposition; together with costs, reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances, and all other remedies available to them.

**SEVENTY-SECOND CAUSE OF ACTION**
**(WEST VIRGINIA STATE LAW – ADDITIONAL LIABILITY)**
**Control Person Liability for Unregistered Offer and Sale of Securities**
**W. Va. Code Ann. § 32-4-410**
**(Lingham and Smith)**

785. Plaintiffs reallege the allegations above.

786. This Cause of Action is brought on behalf of Class members who purchased or were offered CVC tokens in the State of West Virginia.

787. Every person who directly or indirectly controls a seller liable under the West Virginia Uniform Securities Act for unlawfully selling unregistered securities is jointly and severally liable with and to the same extent as the seller, unless the controlling person "unless the non-seller who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." W. Va. Code Ann. § 32-4-410(b).

788. When issued, the CVC tokens were securities within the meaning of W. Va. Code Ann. § 32-4-401(n). Civic sold or solicited purchases of the CVC tokens to members of the Class in West Virginia. The CVC tokens were neither registered as required under the West Virginia Uniform Securities Act nor subject to any exemption from registration.

789.   The CVC tokens were offered or sold in the State of West Virginia, including without limitation through solicitations directed by Civic to West Virginia and received in West Virginia.

790.   Each of the Individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had, at the time of the wrongs alleged herein, and as set forth herein, the power and authority to directly or indirectly control the management and activities of Civic and its employees, and to cause Civic to engage in the wrongful conduct complained of herein.  Each Individual Defendant had and exercised the power and influence to cause the unlawful sales of unregistered securities as described herein.

791.   Accordingly, the Individual Defendants, as persons who indirectly or directly controlled Civic, have violated the West Virginia Uniform Securities Act through Civic's sale of unregistered securities.

792.   Class members who currently own CVC tokens have made any necessary tender at the initiation of this action and seek the consideration paid for any CVC tokens purchased in the period commencing three years prior to the initiation of this action plus interest thereon at nine percent per year from the date of payment, less the amount of any income received on the CVC tokens, costs, and reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances; together with all other remedies available to them.

793.   Class members who no longer own CVC tokens seek damages for purchases of CVC tokens in the period commencing three years prior to the initiation of this action, the amount that would be recoverable upon a tender less the value of the CVC Token when the buyer disposed of it and interest at nine percent per year from the date of disposition; together with costs,

reasonable attorneys' fees if the Court finds that the recovery would be equitable in the circumstances, and all other remedies available to them.

## **PRAYER FOR RELIEF**

794.   On behalf of themselves and the Class, Plaintiffs request relief as follows:

(a) That the Court determines that this action may be maintained as a class action, that Plaintiffs be named as Class Representatives of the Class, that the undersigned be named as Lead Class Counsel of the Class, and direct that notice of this action be given to Class members;

(b) That the Court enter an order declaring that Defendants' actions, as set forth in this Complaint, violate the federal and state laws set forth above;

(c) That the Court award Plaintiffs and the Class damages in an amount to be determined at trial;

(d) That the Court issue appropriate equitable and any other relief against Defendants to which Plaintiffs and the Class are entitled;

(e) That the Court award Plaintiffs and the Class pre- and post-judgment interest (including pursuant to statutory rates of interest set under State law);

(f) That the Court award Plaintiffs and the Class their reasonable attorneys' fees and costs of suit; and

(g) That the Court award any and all other such relief as the Court may deem just and proper under the circumstances.

## **JURY TRIAL**

795.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs respectfully demand a trial by jury for all claims.

Dated:     July 21, 2020
           New York, New York

                                        Respectfully submitted,

/s/ Philippe Z. Selendy                 /s/ Kyle W. Roche
Philippe Z. Selendy                     Kyle W. Roche
Jordan A. Goldstein                     Edward Normand
Spencer Gottlieb                        Velvel (Devin) Freedman (admitted *pro hac*
David Coon                              *vice*)
SELENDY & GAY, PLLC                     Alex T. Potter
1290 Sixth Avenue, 17th Floor           ROCHE CYRULNIK
New York, NY 10104                          FREEDMAN LLP
pselendy@selendygay.com                 99 Park Avenue, 19th Floor
jgoldstein@selendygay.com               New York, NY 10016
sgottlieb@selendygay.com                kyle@rcfllp.com
dcoon@selendygay.com                    tnormand@rcfllp.com
                                        vel@rcfllp.com
                                        apotter@rcfllp.com