**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DAVID CHUA and JOEL DEUTSCH,
individually and on behalf of all others similarly
situated,

                         *Plaintiff,*

      -against-

CIVIC TECHNOLOGIES, INC., VINNY
LINGHAM, and JONATHAN SMITH

                   *Defendants.*

Case No.: 1:20-cv-02811-AT

Honorable Analisa Torres

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION OR DISMISS THE COMPLAINT**

QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue
New York, New York 10010
212-849-7000 (voice)
212-849-7100 (fax)

*Attorneys for Defendants Civic Technologies,*
*Inc., Vinny Lingham & Jonathan Smith*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................1

FACTUAL BACKGROUND ...............................................................................2

PROCEDURAL HISTORY ..................................................................................5

LEGAL STANDARD ...........................................................................................5

ARGUMENT .........................................................................................................6

I.    THIS COURT SHOULD DISMISS PLAINTIFF CHUA FROM THIS CASE BECAUSE HIS CLAIMS ARE SUBJECT TO A VALID ARBITRATION CLAUSE ...............................................................................................................6

    A.    Plaintiff Chua Agreed To Arbitrate This Dispute ...................................7

II.    ALL OF PLAINTIFFS' CLAIMS ARE UNTIMELY ...............................10

    A.    The Statute Of Limitations Has Run On Plaintiffs' Claims. ................10

        1.    Plaintiffs' Federal Claims Are Barred By The Relevant Statute Of Limitations. ..................................................................10

        2.    Plaintiff Chua's California Blue Sky Claims Are Barred By The Relevant Statute Of Limitations.......................................14

        3.    Plaintiff Deutsch's Florida Blue Sky Claims Are Barred By The Relevant Statute Of Limitations.......................................15

    B.    The Statute Of Repose Has Run On Plaintiffs' Federal Claims. ..........16

III.    CIVIC IS NOT LIABLE UNDER SECTION 12(A)(1) OR THE RELEVANT BLUE SKY LAWS...........................................................................................17

    A.    Defendants Were Not "Statutory Sellers" Under Section 12(a)(1) .......18

    B.    Defendants Were Not "Statutory Sellers" Under The Florida Blue Sky Law .....................................................................................................20

    C.    Plaintiffs Cannot Pursue The Remaining Blue Sky Claims..................20

CONCLUSION....................................................................................................22

# TABLE OF AUTHORITIES

**Page**

## Cases

*Allen v. Credit Suisse Sec. (USA) LLC*,
  895 F.3d 214 (2d Cir. 2018)..................................................................................... 6

*Applebaum v. Lyft, Inc.*,
  263 F. Supp. 3d 454 (S.D.N.Y. 2017)...................................................................... 9

*Arshad v. Transp. Sys., Inc.*,
  183 F. Supp. 3d 442 (S.D.N.Y. 2016)...................................................................... 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 554 (2007).................................................................................................. 6

*Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  916 F. Supp. 1343 (D.N.J. 1996) ....................................................................... 13, 16

*Bowden v. Robinson*,
  67 Cal. App. 3d 705 (1977) ..................................................................................... 20

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
  137 S. Ct. 2042 (2017)............................................................................................. 17

*Camilo v. Lyft, Inc.*,
  384 F. Supp. 3d 435 (S.D.N.Y. 2019)...................................................................... 9

*Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.*,
  117 F.3d 655 (2d Cir. 1997)................................................................................... 6, 9

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)..................................................................................... 6

*Collins & Aikman Prods. Co. v. Building Sys., Inc.*,
  58 F.3d 16 (2d Cir. 1995)......................................................................................... 9

*Credit Suisse First Boston Corp. v. ARM Fin. Grp., Inc.*,
  2001 WL 300733 (S.D.N.Y. Mar. 28, 2001) ......................................................... 18

*Crypto Asset Fund, LLC v. MedCredits, Inc.*,
  2020 WL 1506220 (S.D. Cal. Mar. 30, 2020) ........................................................ 9

*CTS Corp. v. Waldburger*,
    573 U.S. 1 (2014) ........................................................................................................ 16

*De Vito v. Liquid Holdings Grp., Inc.*,
    2018 WL 6891832 (D.N.J. Dec. 31, 2018) ............................................................... 17

*In re Deutsche Telekom AG Sec. Litig.*,
    2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) ............................................................. 18

*E.F. Hutton & Co. v. Rousseff*,
    537 So.2d 978 (Fla. 1989) ........................................................................................ 20

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*,
    873 F.3d 85 (2d Cir. 2017) ....................................................................................... 21

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ........................................................................ 7

*Gerstner v. Sebig, LLC*,
    2010 WL 11545762 (W.D. Mo. Sept. 30, 2010) ..................................................... 16

*GLK, L.P. v. Four Seasons Hotel Ltd.*,
    22 So. 3d 635 (Fla. Dist. Ct. App. 2009) ........................................................... 15, 16

*Glob. Network Commc'ns, Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006) ................................................................................... 3, 7

*Griffin v. PaineWebber, Inc.*,
    2001 WL 740764 (S.D.N.Y. June 29, 2001) ........................................................... 19

*Hilliard v. Black*,
    125 F. Supp. 2d 1071 (N.D. Fla. 2000) .................................................................... 20

*IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*,
    783 F.3d 383 (2d Cir. 2015) ..................................................................................... 14

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004) ....................................................................................... 9

*Katz v. Amos Treat & Co.*,
    411 F.2d 1046 (2d Cir. 1969) ................................................................................... 12

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
    897 F.3d 88 (2d Cir. 2018) ....................................................................................... 21

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
    323 F.R.D. 145 (S.D.N.Y. 2017) .............................................................................. 17

*In re Lehman Bros. Sec. & Erisa Litig.*,
　　800 F. Supp. 2d 477 (S.D.N.Y. 2011) ................................................................. 17

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*,
　　902 F. Supp. 2d 329 (S.D.N.Y. 2012) ................................................................. 14

*In re Med. Capital Sec. Litig.*,
　　2010 WL 11508331 (C.D. Cal. Aug. 11, 2010) ................................................. 11

*In re Merrill Lynch Auction Rate Sec. Litig.*,
　　2012 WL 1994707 (S.D.N.Y. June 4, 2012) ...................................................... 11

*Meyer v. Uber Techs., Inc.*,
　　868 F.3d 66 (2d Cir. 2017) ........................................................................... 7, 10

*Milan v. Wertheimer*,
　　808 F.3d 961 (2d Cir. 2015) ............................................................................... 6

*In re Morgan Stanley Info. Fund Sec. Litig.*,
　　592 F.3d 347 (2d Cir. 2010) ............................................................................. 18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
　　460 U.S. 1 (1983) ................................................................................................ 6

*Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Techs. Inc.*,
　　420 F. Supp. 2d 253 (S.D.N.Y. 2006) ............................................................... 12

*Nolfi v. Ohio Kentucky Oil Corp.*,
　　675 F.3d 538 (6th Cir. 2012) ............................................................................ 10

*P. Stolz Family P'ship L.P. v. Daum*,
　　355 F.3d 92 (2d Cir. 2004) ................................................................................ 16

*Pinter v. Dahl*,
　　486 U.S. 622 (1988) .............................................................................. 18, 19, 20

*Rayner v. E*TRADE Fin. Corp.*,
　　248 F. Supp. 3d 497 (S.D.N.Y. 2017) .................................................................. 6

*Register.com, Inc. v. Verio, Inc.*,
　　356 F.3d 393 (2d Cir. 2004) ................................................................................ 7

*Rensel v. Centra Tech, Inc.*,
　　2019 WL 2085839 (S.D. Fla. May 13, 2019) ................................................... 19

*Richards v. Direct Energy Servs., LLC*,
　　915 F.3d 88 (2d Cir. 2019) ................................................................................ 21

*Salameh v. Tarsadia Hotels*,
    2010 WL 2839013 (S.D. Cal. July 20, 2010) ...................................................... 14

*Starke v. Gilt Groupe, Inc.*,
    2014 WL 1652225 (S.D.N.Y. Apr. 24, 2015) ......................................................... 8

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*,
    2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001) ...................................................... 18

*Teva Pharm. Indus. Ltd. v. Deutsche Bank Sec. Inc.*,
    2010 WL 6864006 (S.D.N.Y. Dec. 14, 2010) ................................................. 10, 12

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    464 F. Supp. 3d 634, 641-44 (S.D.N.Y. 2020) ...................................................... 7

*Walsh v. WORD Radio*,
    531 F. Supp. 2d 623 (S.D.N.Y. 2008) ..................................................................... 8

*Zakinov v. Ripple Labs, Inc.*,
    2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ......................................................... 20

## Statutory Authorities

10 L.P.R.A. § 890(e) ..................................................................................................... 15

15 U.S.C. § 77m .................................................................................................... 10, 16

Ala. Code § 8-6-19(f) .................................................................................................. 15

A.R.S § 44-2004 .......................................................................................................... 15

Cal. Corp. Code § 25503 .............................................................................................. 20

Cal. Corp. Code § 25507(a) ......................................................................................... 14

Colo. Rev. Stat. § 11-51-604(8) .................................................................................. 15

D.C. Code Ann. § 31-5606.05 (f)(2)(A) ..................................................................... 15

Fla. Stat. § 517.211 ...................................................................................................... 20

Ga. Code. Ann. § 10-5-58(j)(1) ................................................................................... 15

HRS § 485A-509(j)(1) ................................................................................................. 15

I.C. § 30-14-509(j)(1) .................................................................................................. 15

I.C.A. § 502.509(10) .................................................................................................... 15

Kan. Sta. Ann. § 17-12a509(j)(1) ................................................................................ 15

La. Stat. Ann. § 51:714(C)(1) ...................................................................................... 15

Me. Rev. Stat. tit. 32 § 16509(10) ............................................................................... 15

Md. Code Ann. Corps. & Ass'ns § 11-703(f)(2)(i) ..................................................... 15

v

Mich. Comp. Laws Ann. § 451.2509 ........................................................................... 15

Minn. Stat § 80A.76(j)(2) ............................................................................................. 15

Miss. Code Ann. § 75-71-509(j)(1) .............................................................................. 15

Mo. Rev. Stat. § 409.5-509(j)(1) .................................................................................. 15

Mont. Code Ann. §30-10-307(5) ................................................................................... 15

N.C. Gen. Stat. Ann. § 78A-56(f) ................................................................................. 15

Okla. Sta. Ann. tit. 71 § 1-509(J) ................................................................................. 15

SDCL § 47-31B-509(j) .................................................................................................. 15

Vt. Sta. Ann. tit. 9 § 5509 ............................................................................................. 15

Wis. Stat. Ann. § 551.509(10) ...................................................................................... 15

Wyo. Sta. Ann. § 17-4-122(e) ...................................................................................... 15

## **Rules and Regulations**

Fed. R. Civ. P. 9(b) ...................................................................................................... 12

Fed. R. Civ. P. 12(b)(1) .................................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 5, 8

## **Additional Authorities**

Bill Hinman and Valerie Szczepanik, *Statement on "Framework for 'Investment Contract' Analysis of Digital Assets"* (April 3, 2019), available at https://www.sec.gov/news/public-statement/statement-framework-investment-contract-analysis-digital-assets ................................................................................... 12

The DAO, *Exchange Act Release No. 81207* (July 25, 2017) ...................................... 11

Defendants Vinny Lingham, Jonathan Smith (the "Individual Defendants"), and Civic Technologies, Inc. (collectively with the Individual Defendants, "Civic" or "Defendants") respectfully submit this memorandum of law in support of their motion to compel arbitration or, in the alternative, dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

This case is time-barred. Plaintiffs David Chua and Joel Deutsch allege that their last purchases of CVC tokens occurred in June and December of 2017, respectively. But this action was first filed in April of 2020, and the applicable statutes of limitations require that claims be filed no later than one or two years after tokens were purchased. Plaintiffs also allege that Civic's initial token sale occurred in June of 2017. But the two lead Plaintiffs first appeared in this action in July of 2020, and the applicable statutes of repose require plaintiffs to file claims within three years of an initial offering. Thus, Plaintiffs are barred from pursuing this suit twice over.

Plaintiffs attempt to conjure either a discovery rule or a variant of equitable estoppel to save their claims. But neither is available to Plaintiffs under their federal, California, or Florida claims. It is black-letter law that the at-issue federal and California statutes do not permit the use of a discovery rule. And Florida's Blue Sky statute applies a discovery rule only when plaintiffs allege discovery of necessary facts that were concealed from them. Plaintiffs allege no such facts here. Rather, they claim that they could not have learned that CVC were securities until staff at the Securities and Exchange Commission ("SEC") released a "Framework" in April 2019 that discussed possible factors to consider in applying the Supreme Court's seminal 1946 *Howey* decision to cryptotokens. But this "Framework" was merely staff guidance on how to analyze an existing legal standard. Having never been adopted by the SEC itself, let alone a court, the Framework was not even a change in the ***law***, and it certainly provided Plaintiffs no new ***facts*** relevant to their claims.

Similarly, as to equitable estoppel, Plaintiffs do not allege that Defendants fraudulently concealed pertinent facts, such as CVC's lack of registration with the SEC. To the contrary, Plaintiffs admit that Civic was always open about its view that CVC was not a security and did not need to be registered. While application of the *Howey* factors to CVC would show it is not a security requiring registration, the Court need not reach that question to dispose of Plaintiffs' claims in this case.

Plaintiffs' claims are also substantively infirm. Plaintiff Chua is written out of the Class proposed by the Second Amended Complaint because he is "subject to [an] enforceable arbitration clause," as was every buyer in CVC's initial token sale. And Plaintiff Deutsch cannot establish that Defendants were "statutory sellers" under Section 12(a)(1) of the Securities Act (or the parallel Florida Blue Sky law) because he concedes that Defendants never sold CVC to him directly, and never alleges that they successfully solicited his purchase of CVC.

For all of these reasons, this Court should compel arbitration or, in the alternative, dismiss.

## **FACTUAL BACKGROUND**

Civic is a California-based technology company that offers products and services related to personal identification using blockchain technology. *See* Dkt. No. 39 ("Compl.") ¶¶ 18, 57. In May of 2017, Civic announced that it would issue a cryptocurrency token called CVC. *Id.* at ¶ 56. The next month, Civic released a "Civic Whitepaper" that described CVC as a token "designed to facilitate on-demand, secure and low-cost access to identity verification ('IDV') services via the blockchain, such that background and personal information verification checks will no longer need to be undertaken from the ground up every time." *Id.* at ¶ 57. On June 20 and 21, 2017, Civic sold a portion of its CVC tokens. *Id.* at ¶¶ 49 & 113.

To purchase CVC from Civic directly, putative purchasers had to agree to the Civic Technologies, Inc. Crowdsale Terms ("Crowdsale Terms"), by actively clicking "I Agree" in order

to advance to the purchasing stage.  *See* Declaration of Vinny Lingham ("Lingham Decl.") at ¶ 3.[1]
The Crowdsale Terms included an express agreement that anyone purchasing CVC from Civic
would arbitrate any dispute "arising from or related to these Terms."  *Id.* at Ex. 1 ("Crowdsale
Terms") § 18(a).  The Crowdsale Terms also included an express agreement that "[a]ny Dispute
arising out of or relating to these Terms is personal to you . . . and will not be brought as a class
arbitration, class action or any other type of representative proceeding."  Crowdsale Terms § 18(b).
It was impossible to purchase CVC from Civic in the June 20-21, 2017 initial token sale without
agreeing to the Crowdsale Terms.  Lingham Decl. at ¶ 3.  Plaintiffs appear to be aware of and in
possession of a copy of the Crowdsale Terms, as they directly cite and quote from the Crowdsale
Terms in their Complaint.  Compl. ¶¶ 10, 105.

On June 21, 2017, Plaintiff Chua, while residing in Singapore, purportedly used Ether tokens
to purchase 10,000 CVC tokens directly from Civic for the equivalent of $1,000.  Dkt. #23-4;
Compl. ¶ 16.  Mr. Chua still held these CVC tokens as of June 8, 2020 and seeks rescission from
Defendants.  *Id.*

The Complaint does not allege that Civic sold any tokens after its two-day June 2017 token
sale.  *Id.* at ¶¶ 59 & 60.  Rather, the only allegedly objectionable actions Civic purportedly took after
June 2017 were to make a number of statements on Twitter, in a single blog post, and on Civic's
website.  These purportedly problematic statements were that CVC had high trading volumes, that
the token sale had been successful, that there was demand to purchase CVC tokens, that it was

---

[1]    The Court can consider these materials on a motion to dismiss because the Terms  are "a
contract or other legal document containing obligations upon which the plaintiff's complaint stands
or falls."  *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).
The Complaint's allegation that "[t]he [proposed] Class excludes individuals subject to any
enforceable arbitration clause contained in any of the purchase agreements executed in connection
with their purchase of CVC," Compl. ¶ 114, suggests that Plaintiffs are aware of the arbitration
clause in the Terms.

possible CVC could rise in value, and that Civic was making progress on its technology offerings. *Id.* at ¶¶ 63-65, 84-85, 95.  The Complaint also alleges, without further detail, that "[i]n 2017 and 2018, CVC representatives, including Vinny Lingham and Jonathan Smith, attended and spoke at conferences in which they touted CVC."  *Id.* at ¶ 67.

Between July 19, 2017 and December 1, 2017, Plaintiff Deutsch purportedly purchased a total of 10,500.61 CVC tokens from sellers on the Bittrex exchange, while residing in Florida.  Dkt. 23-4, Compl. ¶ 17.  Deutsch nowhere alleges that Civic sold these CVC to him directly.  Nor does Deutsch anywhere allege that he ever read, heard, or otherwise encountered a single statement that Civic allegedly made about CVC tokens, let alone that he was induced to purchase CVC tokens by the Civic statements the Complaint alleges were problematic.  Between September 19, 2017 and March 2, 2018, Deutsch purportedly sold his CVC tokens, incurring a loss of $1,063.74. Dkt. 23-4; Dkt. 34-1.

Finally, the Complaint alleges "CONCEALMENT" in Section V, but fails to allege any facts relevant to Plaintiffs' claims that Defendants purportedly concealed and then later revealed.  To the contrary, the Complaint alleges that all of the facts Plaintiffs needed to make their claims were readily apparent when Plaintiffs Chua and Deutsch purchased their tokens.  For example, the Complaint alleges that Civic "prominently promoted . . . on its token sale page" that  "Ecosystem development" would begin after the initial token sale and that "[t]he CVC token was sold to investors prior to a network or 'ecosystem' on which it could be used being fully developed." *Id.* ¶¶ 78 & 80.  The Complaint similarly alleges that Civic's website linked to a webpage "that predicted the increase in value of CVC tokens." *Id.* ¶ 84.  And the Complaint alleges that the Crowdsale Terms explicitly stated that CVC tokens "are not intended to be a . . . security," and therefore

purchasers were on notice that Civic did not intend to register the tokens with the SEC.  *Id.* ¶ 105; *see also id.* ¶¶ 102 & 104.

## PROCEDURAL HISTORY

William Zhang filed this case on April 3, 2020.  Dkt. 1.  On the same date, counsel for Plaintiff Zhang filed ten other actions against cryptotoken issuers and exchanges, all of which made allegations similar to those in the Complaint.[2]  Current lead Plaintiffs Chua and Deutsch moved to be appointed lead Plaintiffs on June 8, 2020.  Zhang did not so move.  Dkt. 21.  On July 17, 2020, the Court appointed Chua and Deutsch as lead plaintiffs.  Dkt. 32.

Plaintiffs filed the First Amended Complaint on July 21, 2020.  Dkt. 34.  On August 31, 2020, Plaintiffs filed the Second Amended Complaint.  Dkt. 39.  Although this Complaint purports to pursue ***one hundred Blue Sky causes of action***, Compl. ¶¶ 139-990, it offers no allegations suggesting that Plaintiffs Chua and Deutsch personally have standing to pursue claims under any Blue Sky laws except for those of California, which are purportedly applicable for Chua because he purchased CVC from Civic in California, and Florida, which are purportedly applicable for Deutsch because he purchased CVC from unknown sellers while residing in Florida.

## LEGAL STANDARD

A complaint fails under Federal Rule of Civil Procedure 12(b)(6) if it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

---

[2]  The ten other actions are: *Lee, et al. v. Binance, et al.*, 1:20-cv-02803-ALC (S.D.N.Y.); *Clifford, et al. v. Tron Foundation, et al.*, No. 1:20-cv-02804-VSB (S.D.N.Y); *Williams, et al. v. HDR Global Trading Limited, et al.*, No. 1:20-cv-02805-ALC (S.D.N.Y.); *Williams v. KuCoin, et al.*, No. 1:20-cv-02806-GBD (S.D.N.Y.); *In re Bibox Group Holdings Limited Securities Litigation*, No. 1-20-cv-2807-DLC (S.D.N.Y.); *Williams, et al. v. Block.One et al.*, 1-20-cv-02809-LAK; *Holsworth v. BProtocol Foundation, et al.*, No. 1-20-cv-02810-AKH (S.D.N.Y.); *Clifford v. KayDex Pte. Ltd., et al.*, No. 1:20-cv-02812-RA (S.D.N.Y.); *Williams et al.v. Quantstamp*, 1:20-cv-02813-LAP (S.D.N.Y.); and *Clifford v. Status Research & Development GmbH, et al.*, No. 1:20-cv-02815-NRB (S.D.N.Y.).

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  On a motion to dismiss, a court "need not accept conclusory allegations or legal conclusions couched as factual [] allegations."  *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (quotation marks omitted).  Accordingly, "bald assertions and conclusions of law will not suffice to avoid dismissal, nor will factual allegations that are wholly conclusory."  *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 222 (2d Cir. 2018) (internal citation and quotation marks omitted).  A court "may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken" in deciding a motion to dismiss.  *Rayner v. E*TRADE Fin. Corp.*, 248 F. Supp. 3d 497, 500 (S.D.N.Y. 2017) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)), *aff'd*, 899 F.3d 117 (2d Cir. 2018).

## ARGUMENT

### I.    THIS COURT SHOULD DISMISS PLAINTIFF CHUA FROM THIS CASE BECAUSE HIS CLAIMS ARE SUBJECT TO A VALID ARBITRATION CLAUSE

This Court need not address ***any*** of Plaintiff Chua's claims on the merits as they are subject to mandatory arbitration.  The Federal Arbitration Act establishes a strong national policy in favor of arbitration and imposes a presumption of arbitrability in which "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  When analyzing whether a claim is subject to arbitration, a court "engage[s] in a two-step process: first, it must determine whether the parties agreed to arbitrate, and second, it must determine whether the scope of the agreement encompasses the claims asserted."  *Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.*, 117 F.3d 655, 666 (2d Cir. 1997).

When purchasing CVC directly from Civic in June 2017, Plaintiff Chua necessarily executed a "clickwrap" agreement that included an arbitration clause. Lingham Decl. at ¶ 3. As this clause is enforceable, and covers all of Chua's claims in the Complaint, the Court need not engage with Chua's claims any further.

### A.      Plaintiff Chua Agreed To Arbitrate This Dispute

All purchasers of CVC during the June 20-21, 2017 token sale, including Chua, executed an agreement which required them to click "I agree" to various "Crowdsale Terms." Lingham Decl. at ¶ 3. These agreements are often referred to as "clickwrap agreements." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) ("A clickwrap agreement 'presents the [offeree] with a message on his or her computer screen, requiring that the user manifest his or her assent to the terms of the . . . agreement by clicking on an icon.'" (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 429 (2d Cir. 2004)). "Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (applying California law); *cf. Fteja*, 841 F. Supp. 2d at 837 (collecting cases "enforc[ing] forum selection clauses in clickwrap agreements"). Thus, by clicking "I agree," Chua "affirmatively assented" to the Crowdsale Terms, including its arbitration provision.

The Court can consider the Crowdsale Terms on this Motion, even though Plaintiffs declined to attach them to the Complaint. *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 638, 641-44 (S.D.N.Y. 2020) (considering clickwrap agreement provided to the court by defendant's declaration and granting motion to dismiss); *see also Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the

document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint.  The exception thus prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting.") (citation omitted).  The Crowdsale Terms created Chua's purported cause of action by providing him with the opportunity to purchase CVC.  Those Terms contain an arbitration clause that defeats his ability to bring his claims in this Court.  Crowdsale Terms § 18(a).  Moreover, they are apparently known to Plaintiffs.  *See* Compl. ¶¶ 10, 105.  Therefore, the Court is entitled to consider the Crowdsale Terms in deciding whether to dismiss Chua from the action.  *See Walsh v. WORD Radio*, 531 F. Supp. 2d 623, 626 n. 3 (S.D.N.Y. 2008) (considering agreement to arbitrate not attached to complaint and granting motion to dismiss); *Starke v. Gilt Groupe, Inc.*, 2014 WL 1652225, at *1, *4 (S.D.N.Y. Apr. 24, 2015) (granting motion to dismiss pursuant to arbitration clause provided to court via defendant's declaration).

There can be no doubt that Chua's claims in this case are subject to the terms of the arbitration clause.  Section 18 of the Crowdsale Terms provides:

> (a) **Binding Arbitration.**  . . .  [Y]ou and the Company (i) waive your and the Company's respective rights to have any and all Disputes arising from or related to these Terms resolved in a court, and (ii) waive your and the Company's respective rights to a jury trial.  Instead, you and the Company will arbitrate Disputes through binding arbitration (which is the referral of a Dispute to one or more persons charged with reviewing the Dispute and making a final and binding determination to resolve it instead of having the Dispute decided by a judge or jury in court).

Crowdsale Terms § 18.  Furthermore, this arbitration provision was highlighted at the very beginning of the Terms, which state:   "PLEASE READ THESE CROWDSALE TERMS CAREFULLY. NOTE THAT SECTION 18 CONTAINS A BINDING ARBITRATION CLAUSE AND CLASS ACTION WAIVER, WHICH AFFECT YOUR LEGAL RIGHTS. IF YOU DO NOT AGREE TO THESE TERMS, DO NOT PURCHASE TOKENS."   Crowdsale Terms at 1. (capitalization in original).

Courts have acknowledged that language such as the arbitration provision here "is the paradigm of a broad [arbitration] clause." *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995); *see also JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004) (collecting cases where similar language was "characterized as 'broad'"). Indeed, all of Chua's claims in the Complaint "aris[e] from or relat[e] to" the terms under which Chua purchased his CVC, and, in particular, Civic's alleged failure to register the CVC tokens as securities before selling them. *See, e.g.*, Compl. ¶ 6 ("Although CVC was a security, Civic did not register it as a security with the SEC and did not qualify for an exemption from registration requirements."). Thus Chua's claims are subject to arbitration. *See Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 440 (S.D.N.Y. 2019) (mandating arbitration for claims "'arising of or relating to' Lyft's [clickwrap] Terms of Services").

Courts routinely compel arbitration in these circumstances. In *Crypto Asset Fund, LLC v. MedCredits, Inc.*, 2020 WL 1506220 (S.D. Cal. Mar. 30, 2020), for instance, the plaintiff purchased tokens through a token sale that included a clickwrap agreement. *Id.* at *2. The clickwrap agreement in that case similarly "contain[ed] a broad arbitration provision requiring that any disputes 'arising from or related to' the Agreement be arbitrated." *Id.* The court thus referred the plaintiffs' claims to arbitration. *Id.* at *6; *see also, e.g.*, *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 469-70 (S.D.N.Y. 2017) (enforcing an arbitration clause contained in Lyft's clickwrap terms and conditions).

Chua's claims against the Individual Defendants are also subject to arbitration, because the Individual Defendants are employees of Civic Technologies, Inc. and so are entitled to the protection of the Crowdsale Terms. *Campaniello Imports*, 117 F.3d at 668 ("Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration

agreement are protected by that agreement."); *see also Meyer*, 868 F.3d at 80 n.11 ("Although Kalanick is not a party to the Terms and Conditions between Uber and Meyer, he is nonetheless protected by them."); *Arshad v. Transp. Sys., Inc.*, 183 F. Supp. 3d 442, 444, 448 (S.D.N.Y. 2016) (granting motion to compel arbitration of individual defendants, who were managers and owners of the corporate defendant). Thus, all of Plaintiff Chua's claims are subject to mandatory arbitration and should be dismissed.[3]

## II.    ALL OF PLAINTIFFS' CLAIMS ARE UNTIMELY

There is also no named Plaintiff with timely surviving claims as both Plaintiffs' claims are untimely under the applicable statutes of limitation and repose.

### A.    The Statute Of Limitations Has Run On Plaintiffs' Claims.

1.    Plaintiffs' Federal Claims Are Barred By The Relevant Statute Of Limitations.

The Securities Act provides that Plaintiffs' federal 12(a)(1) securities claim is untimely "unless brought within one year after the violation upon which it is based." 15 U.S.C. § 77m. Unlike Section 12(a)(2) of the Securities Act, which governs misstatements in connection with prospectuses, Section 12(a)(1)'s statute of limitations is not subject to a "discovery rule." *See, e.g.*, *Teva Pharm. Indus. Ltd. v. Deutsche Bank Sec. Inc.*, 2010 WL 6864006, at *2 (S.D.N.Y. Dec. 14, 2010) ("As the text demonstrates, § 12(a)(1) is not subject to a discovery rule."); *Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 553 (6th Cir. 2012) ("[T]he fact that the statute plainly fails to include a discovery rule for § 12(a)(1)—when juxtaposed with a provision within the same sentence specifically allowing it for § 12(a)(2)—shows that Congress intended to negate equitable tolling in

---

[3]    Moreover, this issue is easily addressed by the Court even without an order compelling arbitration of Chua's claims. The Second Amended Complaint itself defines Chua out of the proposed class: "The Class excludes individuals subject to any enforceable arbitration clause contained in any of the purchase agreements executed in connection with their purchase of CVC." Compl. ¶ 114. Consequently, no purchasers like Chua who bought CVC directly from Civic

this context."); *In re Med. Capital Sec. Litig.*, 2010 WL 11508331, at *3 (C.D. Cal. Aug. 11, 2010) ("The plain reading of Section 77m as a whole suggests, and numerous courts have found, that while the statute of limitations for Section 12(a)(2) tolls from the date of the discovery, the statute of limitations for Section 12(a)(1) tolls from the date of the violation."). Thus, regardless of when an investor "discovered" his or her claim, an action under Section 12(a)(1) is untimely if brought "more than one year after the purchase of the securities at issue." *In re Merrill Lynch Auction Rate Sec. Litig.*, 2012 WL 1994707, at *4 (S.D.N.Y. June 4, 2012).

Here, Plaintiffs Chua and Deutsch allege that their last purchases were on June 21, 2017 and December 1, 2017, respectively. Dkt 34-1; Dkt. 34-2. The initial complaint in this action was not filed until April 3, 2020—well more than a year after Plaintiffs' last purchases. Accordingly, Plaintiffs' federal claims are untimely.

In their pre-motion letter, Plaintiffs suggested that their action is not untimely because (i) they did not "discover" this action until SEC staff issued "Framework" guidance in 2019 and (ii) Civic "fraudulently concealed" information about CVC. Dkt. No. 44 at 2. Both of these arguments are meritless. First, as explained above, Section 12(a)(1) claims are not subject to a discovery rule, so anything Plaintiffs "discovered" more than one year after their purchases is irrelevant. But even if there was a discovery rule, and even if it somehow applied to a discovery of law rather than facts, the *Howey* test—the very test Plaintiffs argue demonstrates CVC is a security (which it is not) has been the operative legal test for whether an instrument is an investment contract since 1946, *Securities and Exchange Commission v. W. J. Howey Co.*, 328 U.S. 293 (1946), and has been considered the relevant test for cryptotokens since mid-2017 at the latest. *See, e.g.*, SEC, Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO, *Exchange Act Release*

on June 20-21, 2017 are within the proposed class.

No. 81207 (July 25, 2017) (applying *Howey* to DAO tokens and stating generally that cryptocurrencies may be securities). Moreover, SEC staff specifically stated upon the 2019 release of their "Framework" that the Commission itself had not approved of its content and that the Framework did not even constitute "legal advice," let alone an actual change in the law.[4]

Second, to invoke the doctrine of "fraudulent concealment," Plaintiffs must establish the following three elements: "(1) wrongful concealment by defendants, (2) which prevented plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim." *Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 265 (S.D.N.Y. 2006). These elements must be pled with particularity under FRCP 9(b). *Id.* Plaintiffs do not come close to meeting this standard. Plaintiffs do not, for example, allege that Civic ever suggested it would register CVC with the SEC, which is the rare circumstance that has been deemed appropriate to invoke equitable estoppel against the clear text of the Securities Act. *Compare Katz v. Amos Treat & Co.*, 411 F.2d 1046, 1055 (2d Cir. 1969) (applying equitable tolling where defendant falsely "assured [plaintiff] that registration was going forward") *with Teva Pharm. Indus. Ltd.* 2010 WL 6864006, at *2 (holding *Katz* inapplicable where defendant allegedly "did not disclose that [it] would sell ARS to entities that did not qualify as QIBs," which rendered registration necessary). Instead, Plaintiffs claim that the facts necessary to determine that CVC qualified as a

---

[4] Bill Hinman and Valerie Szczepanik, *Statement on "Framework for 'Investment Contract' Analysis of Digital Assets"* (April 3, 2019), available at https://www.sec.gov/news/public-statement/statement-framework-investment-contract-analysis-digital-assets ("This framework represents Staff views and is not a rule, regulation, or statement of the Commission. The Commission has neither approved nor disapproved its content. This framework, like other Staff guidance, is not binding on the Divisions or the Commission. It does not constitute legal advice, for which you should consult with your own attorney. It does not modify or replace any existing applicable laws, regulations, or rules.").

security were fraudulently concealed.[5]  However,  a review of Plaintiffs' allegations supporting their argument that CVC is a security reveals that there was no "fraudulent concealment," and that Plaintiffs have been aware of the facts they believe are sufficient to make out their purported 12(a)(1) claim since their purchases.  *See, e.g.*, Compl. *Id.* ¶¶ 74-75, 77-78, 80, 83-85, 89 (alleging facts Plaintiffs appear to believe to be sufficient to show that CVC satisfies the *Howey* test, all of which were apparent at CVC's issuance).  In fact, far from "concealing" the facts Plaintiffs purport to rely upon for their claim, Plaintiffs actually allege that Defendants disclosed those very facts at the time of sale.

    For example, Plaintiffs allege that their reliance on the managerial efforts of Civic "was not apparent at issuance."  Compl. ¶ 90.  However, in order to plead that Plaintiffs invested in the efforts of management, which is necessary to plead that CVC is a security, Plaintiffs simultaneously allege that "***Civic represented*** that it would provide significant managerial efforts to achieve [Civic's] objectives and make CVC a success."  Compl. ¶ 96 (emphasis added).  Similarly, Plaintiffs claim that investors were misled into believing that "CVC was not an investment in a common enterprise run by Defendants."  Compl. ¶ 108.  However, Plaintiffs simultaneously rely on the allegation that "Civic ***prominently promoted its team*** on its token sale page" in order to plead that "investors in CVC participated in a common enterprise by purchasing CVC tokens."  Compl. ¶ 78 (emphasis added).  Plaintiffs also claim that Defendants fraudulently concealed that unlike Bitcoin and Ethereum, which only sold "a tiny fraction of the underlying crypto-assets," "Civic issued a substantial percentage of the CVC tokens at issuance."  Compl. ¶¶ 109, 110.  But, in order to plead

---

[5]    Plaintiffs also suggest that Defendants fraudulently concealed the nature of CVC by suggesting that the tokens were "not intended" to constitute securities.  Compl. ¶ 105.  But that is plainly insufficient to constitute concealment.  *See, e.g., Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 916 F. Supp. 1343, 1353 (D.N.J. 1996) (holding that it is not concealment to state that "registration is not required").

that Civic retained a portion of the CVC, Plaintiffs simultaneously allege that the token sale terms disclosed that 33% of the total token supply was issued in the token sale. Compl. ¶ 59. Plaintiffs cannot have it both ways. They cannot claim that Defendants "fraudulently concealed" the nature of CVC and simultaneously allege that Defendants' ***own statements*** from the time of the CVC token offering prove that CVC is a security.

Finally, even if Plaintiffs had adequately alleged "fraudulent concealment"—they do not— Plaintiffs do not allege when the "truth" regarding CVC's structure came to light, and therefore Plaintiffs fail to affirmatively plead compliance with the statute of limitations, as they are required to do. *See Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp.*, PLC, 902 F. Supp. 2d 329, 346 (S.D.N.Y. 2012) ("The burden is on Plaintiffs to affirmatively plead compliance with the [Securities Act's] statute of limitations because it is a substantive element of the cause of action."), *aff'd sub nom. IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp.*, PLC, 783 F.3d 383 (2d Cir. 2015). Plaintiffs' federal claims are untimely and must be dismissed.

2.   Plaintiff Chua's California Blue Sky Claims Are Barred By The Relevant Statute Of Limitations.

Like Section 12(a)(1) of the Securities Act, a claim under Section 25503 of the California Blue Sky law is untimely "unless brought before the expiration of two years after the violation upon which it is based." Cal. Corp. Code § 25507(a). "[T]he two-year statute of limitations set forth in section 25507 is ***absolute and not subject to equitable tolling***. Thus, the longest possible limitations period for Plaintiffs' claim is two years from the date of violation." *Salameh v. Tarsadia Hotels*, 2010 WL 2839013, at *7 (S.D. Cal. July 20, 2010) (emphasis added) (internal citation omitted).[6]

---

[6]   In addition to the two-year statute of limitation, the California Blue Sky law also provides that no action may be brought more than "one year after the discovery by the plaintiff of the facts constituting such violation," but the statute expressly provides that "whichever [period] shall first expire" governs. Cal. Corp. Code § 25507(a).

As noted above, Plaintiff Chua's purchase from California-based Civic occurred on June 21, 2017. The initial complaint in this action was not filed until April 3, 2020—over two years after Plaintiffs Chua's purchase. Accordingly, Plaintiff Chua's California Blue Sky claims are untimely.[7]

   3. Plaintiff Deutsch's Florida Blue Sky Claims Are Barred By The Relevant Statute Of Limitations.

Although, unlike the federal or California Blue Sky claims, the statute of limitations for a claim under Section 517.211 of the Florida Blue Sky law is two years from "the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence," Florida courts have recognized that "[a] seller of securities cannot conceal the fact that the securities he sells are not registered." *GLK, L.P. v. Four Seasons Hotel Ltd.*, 22 So. 3d 635, 637-

---

[7] Like Plaintiff Chua's California Blue Sky claims, numerous other Blue Sky claims have a non-discovery based statute of limitation of fewer than two years. *See, e.g.*, Ala. Code § 8-6-19(f) (within two years from sale under Alabama Blue Sky laws), A.R.S § 44-2004A (within one year after the violation under Arizona Blue Sky laws); Colo. Rev. Stat. § 11-51-604(8) (within two years after the sale under Colorado Blue Sky laws); D.C. Code. Ann. § 31-5606.05 (f)(2)(A) (within one year after the violation under District of Columbia Blue Sky laws); Ga. Code. Ann. § 10-5-58(j)(1) (within two years after the violation under Georgia Blue Sky laws); HRS § 485A-509(j)(1) (within one year after the violation under Hawaii Blue Sky laws); I.C. § 30-14-509(j)(1) (within one year after the violation under Idaho Blue Sky laws); I.C.A. § 502.509(10) (within one year after the violation under Iowa Blue Sky laws); Kan. Sta. Ann. § 17-12a509(j)(1) (within one year after the violation under Kansas Blue Sky laws); La. Stat. Ann. § 51:714(C)(1) (within two years after the sale under Louisiana Blue Sky laws); Me. Rev. Stat. tit. 32 § 16509(10) (within two years after the violation under Maine Blue Sky laws); Md. Code Ann. Corps. & Ass'ns § 11-703(f)(2)(i) (within one year after the violation, or within three years after sales, *whichever is earlier*, under Maryland Blue Sky laws); Mich. Comp. Laws Ann. § 451.2509 (within one year after the violation under Michigan Blue Sky laws); Minn. Stat § 80A.76(j)(2) (within one year after the violation under Minnesota Blue Sky laws); Miss. Code Ann. § 75-71-509(j)(1) (within one year after the violation under Mississippi Blue Sky laws); Mo. Rev. Stat. § 409.5-509(j)(1) (within one year after the violation under Missouri Blue Sky laws); Mont. Code Ann. §30-10-307(5) (within two years after the violation under Montana Blue Sky laws); N.C. Gen. Stat. Ann. § 78A-56(f) (within two years after the sale under North Carolina Blue Sky LAWS); Okla. Sta. Ann. tit. 71 § 1-509(J) (within one year after the violation under Oklahoma Blue Sky laws); 10 L.P.R.A. § 890(e) (within two years after the sale under Puerto Rico Blue Sky laws); SDCL § 47-31B-509(j) (within one year after the violation under South Dakota Blue Sky laws); Vt. Sta. Ann. tit. 9 § 5509 (within one year after the violation under Vermont Blue Sky laws); Wis. Stat. Ann. § 551.509(10) (within one year after the

38 (Fla. Dist. Ct. App. 2009). Therefore, Florida courts have found that "the discovery rule has little justification in the nonregistration setting," as the "discovery" of the cause of action and the date of purchase are the same. *Id.* at 638.[8] Thus, even under Florida's "discovery" rule, the statute of limitation runs, at the latest, from Plaintiff Deutsch's final purchase.[9]

Here, Plaintiff Deutsch's final purchase occurred on December 1, 2017, more than two years prior to the initiation of this action. Accordingly, Plaintiff Deutsch's Florida Blue Sky claims are untimely.

### B.   The Statute Of Repose Has Run On Plaintiffs' Federal Claims.

In addition to the one-year statute of limitations, the Securities Act contains a three-year statute of repose that applies to Plaintiffs' 12(a)(1) claims. 15 U.S.C. § 77m ("In no event shall any such action be brought to enforce a liability created under section . . . 77l(a)(1) of this title more than three years after the security was bona fide offered to the public . . . ."). In the context of allegedly unregistered securities, the statute of repose runs from when the alleged security is "first-offered" to the public. *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 106 (2d Cir. 2004).

A statute of repose is an absolute outer limit on liability. *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014). Therefore, the Supreme Court has "repeatedly [] stated in broad terms that statutes of

---

violation under Wisconsin Blue Sky laws); Wyo. Sta. Ann. § 17-4-122(e) (within two years after the sale under Wyoming Blue Sky laws). All of those claims should be dismissed for the same reason.

[8]   *See also Gerstner v. Sebig, LLC*, 2010 WL 11545762, at *2 (W.D. Mo. Sept. 30, 2010), *aff'd*, 426 F. App'x 470 (8th Cir. 2011) ("[T]he policy behind tolling does not apply to nonregistration claims because a defendant cannot prevent a purchaser from discovering the registration status of a security."); *Blatt*, 916 F. Supp. at 1353 ("[T]here is little justification for application of the discovery rule" in the context of non-registration claims because such claims "are easily uncovered, *i.e.,* the seller of securities cannot conceal the fact that the securities he sells are not registered. While he may misrepresent that the securities are properly registered, or that registration is not required, he cannot prevent the purchaser from discovering the true facts.").

[9]   Further, Plaintiffs have not identified which of the facts they rely upon to allege that CVC is a security were unavailable to Plaintiffs as of the date of their purchases.

repose are not subject to equitable tolling." *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2051 (2017) (citing cases).   "In consequence, as a number of courts have stated, the Rule 15(c) relation back doctrine does not apply to statutes of repose." *In re Lehman Bros. Sec. & Erisa Litig.*, 800 F. Supp. 2d 477, 483 (S.D.N.Y. 2011).

Given the strict nature of statutes of repose, a class representative must file his action within the statute of repose period to be timely.   This is true even where a prior plaintiff filed an initial complaint within the class period.   *See, e.g.*, *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 153–54 (S.D.N.Y. 2017) ("Because Harris was time-barred from raising any individual claims at the time of her entry into this case . . . she should not have been permitted to serve as a lead plaintiff."); *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *22 (D.N.J. Dec. 31, 2018) (holding named plaintiff's claim untimely where "[i]t was only after the expiration of the statute of repose, . . . that the [] Plaintiff was added by amendment").

Here, although a different purported CVC purchaser—who did not move to be appointed lead plaintiff—arguably filed a complaint within the statute of repose period, Plaintiffs did not file their first complaint in this action until July 21, 2020.  Dkt. 34.  Because "CVC tokens . . . were first sold on or about June 20, 2017," Compl. at ¶ 113, Plaintiffs' Securities Act claims were brought more than three years after CVC's first offering, are untimely under the statute of repose, and must be dismissed.

## III.   CIVIC IS NOT LIABLE UNDER SECTION 12(A)(1) OR THE RELEVANT BLUE SKY LAWS.

As detailed in Section I, Plaintiff Chua's claims are subject to a binding arbitration agreement.  Thus, even absent the blatant timeliness problems addressed in Section II, only Plaintiff Deutsch can even pursue claims here, and Deutsch fails to state a claim under federal law or any of the applicable Blue Sky laws.  Specifically, Deutsch fails to adequately allege that Civic falls within

17

the specific and narrow set of participants in securities transactions that are regulated by Section 12(a)(1) of the Securities Act. Further, he has no basis to pursue the vast majority of the Blue Sky claims because he alleges no connection whatsoever to those states' laws.

A.    **Defendants Were Not "Statutory Sellers" Under Section 12(a)(1)**

Liability under Section 12(a)(1) is limited to "statutory sellers." *Pinter v. Dahl*, 486 U.S. 622, 643–47 & n. 21 (1988). A defendant qualifies as a "statutory seller" "if he: (1) 'passed title, or other interest in the security, to the buyer for value,' or (2) 'successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities['] owner.'" *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (quoting *Pinter*, 486 U.S. at 642, 647).

To plead that a defendant "passed title" sufficiently to satisfy the first prong of the *Pinter* test, a plaintiff must allege that he was in privity with the defendant and actually purchased his shares directly from the defendant. *Pinter*, 486 U.S. at 644 n.21; *see also Credit Suisse First Boston Corp. v. ARM Fin. Grp., Inc.*, 2001 WL 300733, at *10 (S.D.N.Y. Mar. 28, 2001) ("[P]laintiffs here did not purchase directly from [defendant] and thus lack standing under the first prong of *Pinter*."); *Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001) ("As plaintiff has alleged only that NACC was 'part of the chain of title' and not that NACC directly sold the Certificates to it, plaintiff cannot satisfy the first prong of *Pinter*."). To adequately plead the second, "successfully solicited," prong of the *Pinter* test, a plaintiff must adequately allege some "direct contact" with the defendant. *In re Deutsche Telekom AG Sec. Litig.*, 2002 WL 244597, at *5 (S.D.N.Y. Feb. 20, 2002). Further, a plaintiff "must allege not only that [Defendants] actively solicited investors, but that [he] purchased the securities as a result of [Defendants'] solicitation." *Steed Fin. LDC*, 2001 WL 1111508, at *7.

18

Here, Deutsch fails to adequately plead either prong of *Pinter*.  First, he does not allege, even in conclusory fashion, that any Defendant passed title to him.  Nor could he make such an allegation, seeing as he alleges that Civic sold CVC only on June 20-21, 2017, Compl. ¶¶ 49, 113, and states that he did not make his first purchase of CVC until July 19, 2017, through a secondary market exchange, Dkt. 23-1 at 7, Dkt 34-1; Compl. ¶ 17.  Because Deutsch's transaction was not made directly with Civic, he does not satisfy the first prong of *Pinter*.

Second, Deutsch does not adequately allege that any Defendant solicited his purchase.  The 183-page complaint contains only sparse and conclusory allegations regarding any purported "solicitation" of investors, and Deutsch never alleges that he was "direct[ly]" solicited by Civic and that these solicitations resulted in his purchase.  *In re Deutsche Telekom*, 2002 WL 244597, at *5; *Griffin v. PaineWebber, Inc.*, 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001) (dismissing Section 12 claim because although plaintiff "describes solicitation activities by [defendant] as they affected other putative plaintiffs, [] he does not allege that [defendant] was directly involved in the actual solicitation of ***his purchase***") (emphasis added).  In fact, Deutsch does not allege he read, heard, or even was aware of any of Civic's alleged solicitations at the time he purchased CVC, let alone that Civic's solicitations were the reason for his purchase.  *Rensel v. Centra Tech, Inc.*, 2019 WL 2085839, at *4 (S.D. Fla. May 13, 2019) (dismissing a Section 12(a)(1) claim that a sale of CTR tokens was unlawful where there were no allegations that the purported "solicitation" of CTR on

19

Twitter "was a *successful* solicitation . . . or that Plaintiffs even saw the posts").[10]  Accordingly, Deutsch also fails to satisfy the second prong of *Pinter*.

### B.   Defendants Were Not "Statutory Sellers" Under The Florida Blue Sky Law

Like Section 12(a)(1), Florida's Blue Sky law has adopted the "*Pinter*" test.  *See, e.g., Hilliard v. Black*, 125 F. Supp. 2d 1071, 1083 (N.D. Fla. 2000) (ruling the *Pinter* test applicable to claims under Fla. Stat. § 517.211); *see also E.F. Hutton & Co. v. Rousseff*, 537 So.2d 978 (Fla.) *answer to certified question conformed to* 867 F.2d 1281 (11th Cir. 1989) (effect of § 517.211 is similar to that of Section 12 of the Securities Act).  Thus, under Florida law, Deutsch must demonstrate that Civic either passed title to him or successfully solicited his purchase.  For the reasons described above, he fails to do so.  Accordingly, Deutsch has failed to state a claim under Florida's Blue Sky law.[11]

### C.   Plaintiffs Cannot Pursue The Remaining Blue Sky Claims

As explained above, any potential claims under the Securities Act, Florida Blue Sky law, and California Blue Sky law are barred by the relevant statutes of limitations or repose.  Further, Plaintiff

---

[10]   In their pre-motion letter, Plaintiffs relied on *Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815, at *12 (N.D. Cal. Feb. 26, 2020) for the proposition that general solicitations can be sufficient.  Dkt. No. 44 at 3-4.  But Plaintiffs miss the point.  The question is not whether a tweet could theoretically constitute a solicitation, it is whether Deutsch has adequately alleged that *he* was solicited by a tweet (or any other purported solicitation).  *Zakinov* avoided dismissal by specifically alleging that "***Lead Plaintiff was motivated to purchase XRP by the promotional activities*** of Defendants described [within the complaint].  Lead Plaintiff ***saw and relied on Defendants' repeated representations*** that adoption of XRP by financial institutions and banks would drive demand for XRP."  *In re Ripple Labs Inc. Litig.*, Case No. 18-cv-06753-PJH (N.D. Cal.), Dkt. No. 63 at ¶ 13 (emphases added).  As there is no comparable allegation here, *Zakinov* is inapposite.

[11]   To the extent Deutsch argues that he can bring California Blue Sky claims despite failing to allege that his purchase of CVC occurred in California, his claim would fail because California's seller requirement requires direct privity and is therefore stricter than federal or Florida law.  In other words, under California's Blue Sky law, solicitation, even if successful, is insufficient.  *Bowden v. Robinson*, 67 Cal. App. 3d 705, 712 (1977) (requiring direct privity for liability under Cal. Corp. Code § 25503).  Thus, even if Deutsch adequately alleged solicitation—he does not—that would not save any potential California Blue Sky claim.

Deutsch, the sole Plaintiff not subject to the binding arbitration clause, fails to adequately allege that Defendants are statutory sellers under the Securities Act or Florida's Blue Sky law.

Plaintiffs also cannot pursue any of the remaining Blue Sky claims in the Complaint because they do not—and cannot—allege that their purchases (or the corresponding sales) occurred in any state other than Florida and California.  To the extent that Plaintiffs Deutsch and Chua purport to personally invoke the Blue Sky laws of states other than Florida and California, they fail to adequately do so.  Neither Plaintiff has pled that he purchased tokens in or from any state other than Florida and California.  This dooms any extraterritorial claims they seek to support because, under both the Dormant Commerce Clause and the relevant Blue Sky statutes, the Blue Sky laws apply solely to transactions that occur within their own respective states.  *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 156 (2d Cir. 2017) ("[B]lue-sky laws . . . only regulate[] transactions occurring within the regulating States.") (citations omitted); *see also Richards v. Direct Energy Servs., LLC*, 915 F.3d 88, 106 (2d Cir. 2019) ("[T]he United States Constitution would also bar Massachusetts from regulating, via consumer protection law, the rates that Direct Energy charged consumers in Connecticut.").  Moreover, although Plaintiffs have suggested in their pre-motion letter that they have "class standing" to pursue the non-Florida and non-California Blue Sky claims, it is well-established that Plaintiffs can only allege "class standing" if they personally have a viable cause of action as to a Defendant.  *See, e.g.*, *Richards*, 915 F.3d at 106 (affirming decision that question regarding ability to assert "class standing" moot where "[plaintiff] no longer had any viable claims"); *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 96 n.3 (2d Cir. 2018) (recognizing that in order to have "class standing," "a district court [must] first determine that the [named] plaintiff was actually injured by each of the named

defendants"). Here, as demonstrated above, Plaintiffs have no viable causes of action as to any Defendant. Accordingly, the remaining Blue Sky claims must be dismissed.

## **CONCLUSION**

The Complaint should be dismissed with prejudice or, in the alternative, stayed pending arbitration.

Dated: December 2, 2020
New York, New York

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: /s/ *Alex Spiro*
Alex Spiro
Jesse Bernstein
Justin Giles
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

Tyler Whitmer
1300 I St. NW #900
Washington, DC 200005
(202) 538-8000

Emily Kapur (*pro hac vice*)
555 Twin Dolphin Drive #560
Redwood City, CA 94065
(650) 801-5000

*Attorneys for Defendants Civic Technologies,*
*Inc., Vinny Lingham & Jonathan Smith*